ELECTRONICALLY FILED
2015 Jul 30 PM 3:00
CLERK OF COURT - CHANCERY

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS\*\*** | DOCKET NUMBER CH-_15-1009 Part II_ |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| 6111 RIDGEWAY GROUP LLC | PHILADELPHIA INDEMNITY INSURANCE CO., et al |

| TO:   (NAME AND ADDRESS OF DEFENDANT) | Method of Service: |
|---|---|
| CUNNINGHAM LINDSEY U.S. INC. | ☐ Shelby County Sheriff |
| through its Registered Agent for Service of Process | ■ Private Process Server |
| Corporation Service Company | ☐ Out of County Sheriff\* ☐ Secretary of State\* |
| 2908 Poston Avenue | ☐ Comm. Of Insurance\* ☐ Certified Mail |
| Nashville, Tennessee 37203 | ☐ Other     \*Attach Required Fees |

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the Complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| Attorney for Plaintiff or Plaintiff if filing Pro Se: (Name, address & telephone number) | ISSUED _____ of _July_____, 20_15_____ |
|---|---|
| S. Joshua Kahane (#23726) | |
| GLANKLER BROWN, PLLC | **Donna L Russell, Clerk and Master** |
| 6000 Poplar Ave, Ste 400, Memphis TN 38119 | By: _____ |
| (901) 576-1701     jkahane@glankler.com | Deputy Clerk & Master |
| | 140 Adams, Room 308   Memphis, TN 38103 |

| TO THE SHERIFF: | Came to hand |
|---|---|
| _____ | _____ day of _____, 20 _____ |
| _____ | **Sheriff** |

| CERTIFICATION (IF APPLICABLE) | |
|---|---|
| I, Donna L. Russell, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | **Donna L. Russell, Clerk & Master** By: _____ D. C. & M. |

\*\*Submit one original and one copy for each defendant to be served.

↻ If you need assistance or accommodations because of a disability, please call the ADA Coordinator at (901)222-2341.

**Notice of Personal Property Exemption:**
TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the _____ day of _____, 20_____ at _____ am/pm a copy of the

summons and a copy of the Complaint to the following Defendant _____

at _____

_____     By: _____
Signature of person accepting service                              Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant _____ because _____

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):_____ _____.

This _____ day of _____, 20 _____

                                                                          By: _____
                                                                               Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt

mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____ to the

defendant _____. On the _____ day of _____, 20_____, I

received the return receipt, which had been signed by _____ on the _____ day of _____,

20 _____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| **Sworn to and subscribed before me on this _____ day of** | |
|---|---|
| _____, 20_____. | Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process. |
| Signature of _____Notary Public or _____Deputy Court Clerk: | |
| _____ | _____ |
| My Commission Expires: | |

**ATTACH RETURN**

**RECEIPT HERE**

**(IF APPLICABLE)**



**The Shelby County, Tennessee Chancery Court**

**Case Style:** 6111 RIDGEWAY GROUP LLC V PHILADELPHIA INDEMNITY

**Case Number:** CH-15-1009

**Type:** Summons issued other

JENNIFER HALL, DC

Electronically signed on 07/30/2015 03:44:46 PM

ELECTRONICALLY FILED
2015 Jul 30 PM 3:00
CLERK OF COURT - CHANCERY

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| **6111 RIDGEWAY GROUP LLC** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | No. **CH-15-1009 Part II** |
| ) | |
| ) | |
| ) | |
| **PHILADELPHIA INDEMNITY** ) | |
| **INSURANCE COMPANY also doing** ) | |
| **business as PHILADELPHIA** ) | |
| **INSURANCE COMPANIES,** ) | |
| **and CUNNINGHAM  LINDSEY** ) | |
| **U.S. INC.** ) | |
| ) | |
| **Defendants.** ) | |

## VERIFIED COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION, FRAUD, CONSPIRACY TO COMMIT FRAUD, VIOLATION OF T.C.A. §56-8-105 AND §56-A-103, VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT, AND BREACH OF COMMON LAW DUTY OF FAIR DEALING

**TO THE HONORABLE CHANCELLORS OF THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE:**

**COMES NOW**, 6111 Ridgeway Group LLC (hereinafter "Plaintiff"), by and through its attorney of record, S. Joshua Kahane, Esq. of Glankler Brown, PLLC, and submits this Verified Complaint against Defendants, Philadelphia Indemnity Insurance Company also doing business as Philadelphia Insurance Companies and Cunningham Lindsey U.S. Inc.

1

## I. **PARTIES**

1.      Plaintiff is a Tennessee limited liability company organized under the laws of the State of Tennessee and has an insurable interest in the property located at 2155 Sycamore View, Memphis, Tennessee (referred to hereinafter as "Deerfield Apartments").

2.      Upon information and belief, Defendant Philadelphia Indemnity Insurance Company also doing business as Philadelphia Insurance Companies ("Defendant Philadelphia Insurance"), is a Pennsylvania for profit corporation, duly authorized to conduct business in the State of Tennessee.  Defendant Philadelphia Insurance may be served with process, pursuant to T.C.A. §56-2-103, through the Commissioner of the Tennessee Department of Commerce and Insurance, Attn: Service of Process, 500 James Robertson Parkway, Nashville, Tennessee 37243-1131.  A copy of said Verified Complaint has also been sent to James J. Maguire, Chairman and CEO, and Sean S. Sweeney, President, at Defendant Philadelphia Insurance's Corporate Headquarters located at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004, via USPS Certified Mail Return Receipt Requested.

3.      Defendant, Cunningham Lindsey U.S. Inc. ("Defendant Cunningham Lindsey"), is an independent adjusting firm which maintains a place of business in the State of Tennessee.  Defendant Cunningham Lindsey may be served through its Registered Agent for Service of Process, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203, or wherever the company may be found.

## II. **JURISDICTION AND VENUE**

4.      Jurisdiction and venue are proper in this case pursuant to Tennessee Code

2

Annotated § 20-4-107.

## III. <u>FACTUAL BACKGROUND</u>

5.      Upon information and belief, Defendant Philadelphia Insurance designs, markets, and underwrites commercial property/casualty and professional liability insurance products, to policy holders nationwide.

6.      Plaintiff owns the multi-family apartment complex located at 2155 Sycamore View in Memphis, Tennessee, and known municipally as Deerfield Apartments.

7.      Plaintiff maintains a valid policy with Defendant Philadelphia Insurance which is to cover Deerfield Apartments under Policy No. PHPK1112446.  A copy of the subject policy is attached hereto and incorporated herein as **Exhibit A**.

8.      Defendant Philadelphia Insurance represented to Plaintiff, directly and through its agents, that it would conduct itself in accordance with Tennessee law and would fully and faithfully investigate and pay claims.   Plaintiff relied on said representations.

9.      On or about October 2, 2014, no fewer than ten (10) buildings at the Deerfield Apartments were severely damaged as a direct result of a windstorm/hailstorm event.

10.     These buildings were insured by Plaintiff under the subject insurance policy with Defendant Philadelphia Insurance.

11.     Plaintiff timely and properly submitted the claims to Defendant Philadelphia Insurance for the property damage incurred due to the windstorm/hailstorms.

3

12.     Defendant Philadelphia Insurance assigned Defendant Cunningham Lindsey to properly investigate and evaluate the claim and to perform a complete and unbiased investigation of Plaintiff's damages.

13.     On or about January 28, 2015, however, Defendant Cunningham Lindsey, on behalf of Defendant Philadelphia Insurance, inspected the roof damage of only two (2) of the ten (10) damaged buildings at Deerfield Apartments.

14.     Defendant Cunningham Lindsey and Defendant Philadelphia Insurance, confirmed that the cause of Plaintiff's property damage claims were due to windstorm/hailstorms and that the losses were covered under the terms and conditions of Plaintiff's insurance policy with Defendant Philadelphia Insurance.

15.     As a result, Defendant Philadelphia Insurance assigned the damage claim at Deerfield Apartments, Philadelphia Insurance Claim Number 866279.

16.     Based upon only the two (2) buildings which were inspected by Defendant Cunningham Lindsey alone, Defendant Cunningham Lindsey found damage with a net replacement cost value at $34,265.74. A copy of Defendant Cunningham Lindsey damage and replacement report is attached hereto and incorporated herein as **Exhibit B**.

17.     On or about February 18, 2015, Plaintiff retained Rickey Eubank, who inspected the roof damage on all ten (10) of the damaged buildings at Deerfield Apartments.

18.     Based upon that inspection, Mr. Eubank found damage with a net replacement cost value at $169,785.56. A copy of Mr. Eubank's damage and replacement report is attached hereto and incorporated herein as **Exhibit C**.

4

19.     Plaintiff provided a copy of Mr. Eubank's inspection to Defendant Philadelphia Insurance but no agent of Defendant Philadelphia Insurance responded.

20.     Defendant Cunningham Lindsey's report and Mr. Eubank's were wholly consistent in their per building replacement valuations; the only difference being that Defendant Cunningham Lindsey inspected only two (2) buildings and Mr. Eubanks inspected all ten (10).

21.     On or about March 19, 2015, Brian Haden of Insurance Claims Specialists, the licensed public adjuster on Defendant Philadelphia Insurance's file, sent a letter to Defendant Cunningham Lindsey "demand[ing] appraisal of the loss" and identifying Toby Johnson of Cornerstone Public Adjuster Consulting as designated appraiser for Plaintiff.

22.     The demand for impartial appraisal of the loss is a remedy provided for in Defendant Philadelphia Insurance's policy and is standard industry practice.

23.     Over a month later, Defendant Philadelphia Insurance responded, and indicated that based upon a new report it garnered by Robert Aynett of Rimkus Consulting, Defendant Cunningham Lindsey's net replacement cost valuation of $34,265.74 was being reduced to $21,627.68.

24.     In addition, Defendant Philadelphia Insurance agreed to the demand for appriasal but designated Defendant Cunningham Lindsay as the appraiser for Defendant Philadelphia Insurance.

25.     Defendant Cunningham Lindsay initially performed the inspection for Defendant Philadelphia Insurance and Defendant Philadelphia Insurance designated the same Defendant Cunningham Lindsay as the impartial appraiser.

26.    Defendant Philadelphia Insurance failed to act in good faith by agreeing to the appraisal process as per industry standard but then limiting the appraisal in scope and seeking to deisgnate Defendant Cunningham Lindsay once again.

27.    On June 23, 2015, Plaintiff sent a letter directly to Defendant Phialdlephia Insurance *again* demanded a full appraisal be undertaken of the damage to the roofs of all ten (10) buildings at the Deerfield Apartments.

28.    In addition, Plaintiff objected to Defendant Philadelphia Insurance's designation of Defendant Cunnignham Lindsey as the designated appraiser as such a designation violates both protocal and standard industry practice.

29.    Defendant Philadelphia Insurance continues its failure to act in good faith by limiting the appraisal in scope and refusing to deisgnate an alternate apprasier other than Defendant Cunningham Lindsay.

30.    Defendant Philadelphia Insurance has failed and refused to respond to Plaintiff, appoint an alternate apprasier, or set  a date for the appraisal to be undertaken.

31.    Plaintiff has provided substantial information to the Defendants documenting and supporting its claim. Defendant Philadelphia Insurance, however, ignored this information and instead has chosen to hide behind the palpably incorrect opinions of its retained consultants and the outcome-oriented investigation performed.

32.    Defendants Philadelphia Insurance and Cunnigham Lindsey, failed to conduct a full and complete investigation of all the facts and circumstances of the claim and ignored significant information that supports Plaintiff's claim for benefits under the policy.

33.    Defendant Philadelphia Insurance, conducted an outcome-oriented

6

investigation by retaining consultants that it knew would minimize the amounts it was required to pay under the policy and/or would not contradict the opinion that no coverage existed under the policy.

34.     Defendant Philadelphia Insurance, failed and/or refused and continues to fail and/or refuses to pay covered claims on a timely basis as required by the insurance contract and as required by its duties of good faith and fair dealing.

35.     Defendant Philadelphia Insurance continues its failure to act in good faith by limiting the appraisal in scope and refusing to deisgnate an alternate apprasier other than Defendant Cunningham Lindsay.

36.     Instead, Defendant Philadelphia Insurance has wrongfully delayed or denied claims when liability for coverage under the policy was reasonably clear.

37.     Defendant Philadelphia Insurance persists in delaying or denying paying the full amounts due for Plaintiff's claim even though a person of ordinary prudence and care would have done otherwise.

38.     Defendants   Philadelphia   Insurance   and   Cunnigham   Lindsey, misrepresented to Plaintiff that they would and had performed a complete and unbiased investigation of the claim.

39.     Defendant Philadelphia Insurance failed to make an attempt to settle the claim in a fair manner.

40.     Defendant Philadelphia Insurance failed to explain to Plaintiff the reasons for the offer of an inadequate settlement. Specifically, Defendant Philadelphia Insurance, failed to offer Plaintiff adequate compensation, without any reasonable explanations why full payment was not being made.

7

41.     Defendants Philadelphia Insurance and Cunnigham Lindsey, refused and/or failed to properly evaluate the obvious damages to Plaintiff's property, forcing Plaintiff to hire its own experts and incur additional expenses.

42.     Defendants Philadelphia Insurance and Cunnigham Lindsey, did not adhere to the good faith principles set forth in the industry standards to inspect the structural damages to the property.

43.     After being provided substantial information supporting the claim, Defendant Philadelphia Insurance refused and/or failed to pay undisputed monies/funds owed to Plaintiff.

44.     Instead, Defendants Philadelphia Insurance and Cunnigham Lindsey intentionally concealed the true nature and scope of the damages and refused payment despite knowing that Plaintiff's property was significantly damaged and Plaintiff was in need of the money to repair the damages.

45.     Defendant Philadelphia Insurance failed to affirm or deny coverage of Plaintiff's claims within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, of the claims in writing from Defendant Philadelphia Insurance.

46.     Defendants Philadelphia Insurance and Cunnigham Lindsey failed to conduct a reasonable investigation.

47.     Defendants Philadelphia Insurance and Cunnigham Lindsey performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the property.

48.     Defendant Philadelphia Insurance failed to meet its obligations of good

8

faith and fair dealing inasmuch as it failed to gather all information reasonably necessary to investigate Plaintiff's claim within fifteen (15) days of receiving notice of Plaintiff's claim.

49.     As a result of Defendant Philadelphia Insurance's acts and omissions, Plaintiff was forced to retain the attorneys who represent it in this action.

50.     On information and belief, Plaintiff asserts its experience is not an isolated case. Upon information and belief, the acts and omissions committed by Defendant Philadelphia Insurance, in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant Philadelphia Insurance, with regard to handling these types of claims. Defendant Philadelphia Insurance, acted individually and in concert with its retained consultants to reach favorable outcomes for the company at the expense of similarly situated policyholders.

## IV.  **STATUTORY AUTHORITY**

51.     This suit is being brought, in part, under the Tennessee Unfair Settlement Practices Act, Tenn. Code Ann. §56-8-105; and the Tennessee Consumer Protection Act, Tenn. Code Ann. §56-A-103.

## V.  **FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

52.     Plaintiff adopts and incorporates by reference paragraphs 1 through 51 above as if fully plead herein, and for further claims against the Defendant Philadelphia Insurance, alleges as follows:

53.     Plaintiff entered into a contract for insurance with Defendant Philadelphia Insurance, to provide coverage for the dwelling and personal property.

9

54.    At all times material hereto, the policy of insurance, Policy No. PHPK1112446, was in full force and effect.

55.    Plaintiff provided timely and proper notice of its claims of property damage resultant from the October 2, 2014, wind/hailstorms.

56.    Plaintiff has complied with all terms and conditions precedent under the policy of insurance.

57.    This notwithstanding, Defendant Philadelphia Insurance has breached its contractual obligations under the terms and conditions of the insurance contract with Plaintiff by failing to pay Plaintiff all benefits owed.

58.    The conduct of Defendant Philadelphia Insurance constitutes a breach of contract with Plaintiff.

59.    The conduct of Defendant Philadelphia Insurance was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages.

## VI. <u>SECOND CAUSE OF ACTION: BAD FAITH</u>

60.    Plaintiff adopts and incorporates by reference paragraphs 1 through 59 above as if fully plead herein, and for further claims against Defendant Philadelphia Insurance as follows:

61.    Defendant Philadelphia Insurance, owed a duty to Plaintiff to deal fairly and act in good faith.

62.    Defendant Philadelphia Insurance breached its duty to deal fairly and act in good faith by engaging in the following acts and/or omissions:

a.    Failing to pay the full and fair amount for the property damage sustained

10

by Plaintiff during the October 2, 2014, wind/hailstorms in accordance with the terms and conditions of the insurance poilcy.

      b.      Failing to pay all additional coverages due and owing to Plaintiff under the terms and conditions of the insurance policy.

      c.      Reducing the fair amount of Plaintiff's claims unfairly and without a valid basis.

      d.      Violating the Unfair Claims Settlement Practices Act, Tenn. Code Ann. §56-8-105 by wrongfully, intentionally and repeatedly withholding benefits and coverages due and owing to the Plaintiff under the terms and conditions of the insurance policy.

      e.      Wrongfully, intentionally and repeatedly failing to communicate all coverages and benefits applicable to Plaintiff's claim.

      f.      Forcing Plaintiff to obtain legal counsel to recover insurance benefits entitled to under the terms and conditions of the insurance contract.

      g.      Failing to conduct a fair and objective investigation of the damage to Plaintiff's property.

      h.      Intentionally engaging in an outcome oriented investigation.

      i.      Intentionally engaging in a systematic scheme designed to save money otherwise due and owing to the Plaintiff and other similarly situated insureds as a cost-saving mechanism.

      63.      Defendant Philadelphia Insurance's obligations to the Plaintiff arise from both express written terms under the insurance policy and under the Tennessee Insurance Code as well as implied obligations under Tennessee law.

11

64.     Defendant Philadelphia Insurance's failure to implement and/or follow the statutory impositions under the Tennessee Insurance Code constitute bad faith.

65.     Defendant Philadelphia Insurance's conduct is a material breach of the terms and conditions of the insurance contract entered into with the Plaintiff and constitutes bad faith.

66.     As a direct and proximate result of Defendant Philadelphia Insurance's unfair claims handling conduct, Plaintiff's claim was unnecessarily delayed, inadequately investigated, and wronfgully not paid.  Said actions resulted in additional profits and a financial windfall to Defendant Philadelphia Insurance.

67.     The conduct of Defendant Philadelphia Insurance constitutes bad faith.

68.     The conduct of Defendant Philadelphia Insurance was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages.

69.     Plaintiff further alleges Defendant Philadelphia Insurance enjoyed increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the Plaintiff.

## VII. <u>THIRD CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY</u>

70.     Plaintiff adopts and incorporates by reference paragraphs 1 through 69 above as if fully plead herein, and for further claims against the Defendants Philadelphia Insurance and Cunnigham Lindsey alleges as follows:

71.     Due to the unequal bargaining power between Plaintiff and Defendants Philadelphia Insurance and Cunnigham Lindsey, the quasi-public nature of insurance, and

12

the potential for Defendants Philadelphia Insurance and Cunnigham Lindsey to unscrupiously exploit that power at a time when Plaintiff was most vulnerable, a special relationship akin to that of a fiduciary duty exists between Plaintff and Defendants Philadelphia Insurance and Cunnigham Lindsey.

72.     As a result of the special relationship, Defendants Philadelphia Insurance and Cunnigham Lindsey owed a fiduciary duty to their insured to act in a manner consistent with the best interests of their insureds.

73.     Given the specialized knowledge the Defendant Philadelphia Insurance possessed with regard to the terms and conditions of the insurance policy, Defendant Philadelphia Insurance's duty to act reasonably created such a special relationship so as to make the Defendant Philadelphia Insurance a fiduciary.

74.     Given the specialized knowledge the Defendant Cunnigham Lindsey possessed with regard to the damages to Plaintiff's property, Defendant Cunnigham Lindsey's duty to act reasonably created such a special relationship so as to make the Defendant Cunnigham Lindsey a fiduciary.

75.     Defendants Philadelphia Insurance and Cunnigham Lindsey breached their fiduciary duties owed to the Plaintiff.

76.     The conduct of Defendants Philadelphia Insurance and Cunnigham Lindsey constitute breaches of their fiduciary duties.

77.     The conduct of Defendants Philadelphia Insurance and Cunnigham Lindsey was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages.

13

## VIII. FOURTH CAUSE OF ACTION: CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION

78. Plaintiff adopts and incorporates by reference paragraphs 1 through 771 above as if fully plead herein, and for further claims against the Defendants alleges as follows:

79. Defendant Philadelphia Insurance had a duty to exercise reasonable diligence and skill in obtaining and providing Plaintiff with insurance coverage.

80. Defendant Philadelphia Insurance breached its duty to Plaintiff by misrepresenting to Plaintiff as follows:

a. That the insurance procured was truly one of "replacement."

b. That the amount of coverage procured, and for which premiums were paid, was equal to the estimated replacement cost of Plaintiff's property.

c. That the amount of coverage procured would provide the coverage necessary for Plaintiff to replace its property in the event it was destroyed by a covered event.

d. That the insurance policy procurred would comply with Plaintiff's reasonable expectations that the property would be restored to its pre-loss condition in the event of a covered loss.

81. That as a result of Defendant Philadelphia Insurance's breach of duty, Defendant Philadelphia Insurance gained an advantage to the prejudice and detriment of Plaintiff.

82. Defendant Philadelphia Insurance misrepresented the nature of the insurance policy procured for Plaintiff.

83. Defendant Philadelphia Insurance further misrepresented the nature and

14

extent of the damages Plaintiff suffered from a covered peril.

84.     Defendant Philadelphia Insurance misrepresented the policy as one which was necessary to provide appropriate and adequate coverage for Plaintiff's business property and personal property.

85.     Defendant Philadelphia Insurance misrepresented the policy as one which was in an amount necessary to replace Plaintiff's property in the event it was destroyed by a covered peril.

86.     Defendant Philadelphia Insurance misrepresentations constitute negligent misrepresentation and constructive fraud.

87.     Plaintiff was induced to accept and purchase the Defendant Philadelphia Insurance policy Defendant's negligent misrepresentations and constructive fraud.

88.     Plaintiff was misled by Defendant Philadelphia Insurance's negligent misrepresentations and constructive fraud.

89.     Plaintiff is further entitled to reformation of the insurance contract to provide coverage consistent with Defendant Philadelphia Insurance's misrepresentations.

90.     The conduct of Defendant Philadelphia Insurance was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and/or was grossly negligence, and is sufficiently egregious in nature to warrant the imposition of punitive damages.

## X.  FIFTH CAUSE OF ACTION: FRAUD

91.     Plaintiff adopts and incorporates by reference paragraphs 1 through 90 above as if fully plead herein, and for further claims against the Defendants alleges as follows:

15

92.     Defendants Philadelphia Insurance and Cunningham Lindsey knowingly and with reckless disregard for the Plaintiff in the course of the handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the actual damages resulting from the peril of windstorm/hailstorms, and Plaintiff having relied upon such fraudulent conduct, has been injured.

93.     Defendant Philadelphia Insurance knowingly and with reckless disregard for the Plaintiff in the course of the handling of the subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the rights, duties, and insurance benefits in the subject contract for insurance, and Plaintiff having relied upon such fraudulent conduct, has been injured. By way of example and not in exclusion of other instances, Plaintiff cites Defendant Philadelphia Insurance's failure to fairly calculate and pay Plaintiff as fraud by omission and commission.

94.     The conduct described above, was done intentionally and for the purpose of having Plaintiff rely on such fraudulent conduct thereby causing Plaintiff to suffer injury.

95.     The conduct of Defendants was intentional, willful, malicious, and in reckless disregard to the rights of Plaintiff, and said conduct is sufficiently egregious in nature to warrant the imposition of punitive damages.

## XI. SIXTH CAUSE OF ACTION: CONSPIRACY TO COMMIT FRAUD

96.     Plaintiff adopts and incorporates by reference paragraphs 1 through 95 above as if fully plead herein, and for further claims against the Defendants alleges as

16

follows:

97.    Defendants Philadelphia Insurance and Cunningham Lindsey were members of a combination of two or more persons whose object was to accomplish fraud upon the Plaintiff. Defendants Philadelphia Insurance and Cunningham Lindsey, by and through their agents, reached a meeting of the minds and acted in such a manner as to further the conspiracy to commit fraud by knowingly and with reckless disregard for the Plaintiff in the course of the handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the actual damages resulting from the peril of wind, and Plaintiff having relied upon such fraudulent conduct, has been injured.

98.    Defendants Philadelphia Insurance and Cunningham Lindsey, by and through its agents, reached a meeting of the minds and acted in such a manner as to further the conspiracy to commit fraud by knowingly and with reckless disregard for the Plaintiff in the course of the handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the rights, duties, and insurance benefits in the subject contract for insurance, and Plaintiff having relied upon such fraudulent conduct, had been injured.

99.    The conduct described above, was done intentionally and for the purpose of having Plaintiff rely on such fraudulent conduct thereby causing Plaintiff to suffer injury.

## XII. SEVENTH CAUSE OF ACTION: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT

100.    Plaintiff adopts and incorporates by reference paragraphs 1 through 99

17

above as if fully plead herein, and for further claims against the Defendants alleges as follows:

101.    Plaintiff brings forth each and every cause of action alleged above under the Tennessee Consumer Protection Act pursuant to its tie-in provision.

102.    At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant Philadelphia Insurance.

103.    Defendant has violated the Tennessee Consumer Protection Act in the manners including, but not limited to, the following:

(1)    Representing that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

(2)    Failing to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed;

(3)    Engaging in an unconscionable course of conduct.

(4)    At all material times hereto, Plaintiff was a consumer of insurance services or products of Defendant Philadelphia Insurance, and Plaintiff would show that Defendant Philadelphia Insurance's violations as set forth above, constitute a violation of the Tennessee Consumer Protection Act, causing Plaintiff damages.

(5)    By accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, Defendant Philadelphia Insurance. has engaged in an unconscionable action or course of action as prohibited by the Tennessee Consumer Protection Act, in that Defendant Philadelphia Insurance took advantage of Plaintiff's

18

lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received.

104.    Plaintiff's seek treble damages.

## XIII. EIGHTH CAUSE OF ACTION - BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

105.    Plaintiff adopts and incorporates by reference paragraphs 1 through 104 above as if fully plead herein, and for further claims against the Defendants alleges as follows:

106.    The conduct of Defendants Philadelphia Insurance and Cunningham Lindsey, as described above, constitutes a breach of the common law duty of good faith and fair dealing owed to it's insured pursuant to the insurance contract.

107.    Defendants Philadelphia Insurance and Cunningham Lindseys' conduct, as described above, was in direct contradiction of the applicable industry standards of good faith and fair dealing.

108.    Defendants Philadelphia Insurance and Cunningham Lindseys' failure, as described above, to adequately and reasonable investigate, evaluate, and pay the benefits owed under the insurance contract, knowing full well through the exercise of reasonable diligence that its liability was reasonably clear, resulted in a breach of the duty of good faith and fair dealing.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, the Plaintiff prays for judgment against against Defendants, Philadelphia Indemnity Insurance Company also doing business as

19

Phialdlephia Insurance Companies and Cunningham Lindsey U.S. Inc. for:

a.      Payment of all contractual benefits for all coverages afforded to Plaintiff under the subject policy of insurance for damage to its dwelling and personal property caused by the Ocober 2, 2014, wind/hail storms, together with interest on all amounts due;

b.      Disgorgement of the incureased financial benefits derived by Defendants as a direct result of Defendants' wrongful or intentional, willful, malicious and/or reckless conduct;

c.      Reimbursment of all costs associated with the hire of repair estimators, adjusters, and appraisers.

d.      Actual, punitive, and treble damages; and

e.      Attorneys' fees, costs and interest, including pre-judgment and post-judgment interest.

Respectfully submitted,

GLANKLER BROWN, PLLC

By: _____

S. Joshua Kahane (#23726)
Attorneys for Plaintiff
6000 Poplar Ave., Suite 400
Memphis, TN  38119
Phone:  (901) 576-1701
Facsimile:  (901) 525-2389
JKahane@Glankler.com

20

**VERIFICATION**

STATE OF NEW YORK,     )
COUNTY OF Rockland     )

JEFFREY WEISKOPFF, first being duly sworn says:

      1.     I am over eighteen years of age of sound mind and if called at trial to testify I have personal knowledge of the following matters:

      2.     I am a Member of 6111 Ridgeway Group LLC and am personally familiar with the circumstances that form the basis of this Verified Complaint.

      3.     I have reviewed the preceding Verified Complaint.

      4.     The facts stated therein are true and correct to the best of my personal knowledge and information.

_____
JEFFREY WEISKOPF

Subscribed and sworn to me this 30th day of July, 2015.

RENEE LEVINE
Notary Public, State of New York
No. 02LE6127285
Qualified in Rockland County
Commission Expires May 23, 2017

_____
NOTARY PUBLIC

My Commission Expires:

21

# EXHIBIT A



**PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# Philadelphia Indemnity Insurance Company

# Commercial Lines Policy

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS
– ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
• ONE OR MORE COVERAGE FORMS
• APPLICABLE FORMS AND ENDORSEMENTS

BJP-190-1 (12-98)

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless signed by our authorized representative.

President & CEO                                          Secretary

PP 07 13 (07/13)

# PRIVACY POLICY NOTICE

### Philadelphia Indemnity Insurance Company

The Philadelphia Indemnity Insurance Company (or "We") value(s) your privacy and we are committed to protecting personal information that we collect during the course of our business relationship with you.

The collection, use and disclosure of certain nonpublic personal information are regulated by law.

This notice is for your information only and requires no action on your part. It will inform you about the types of information that we collect and how it may be disclosed. This does not reflect a change in the way we do business or handle your information.

**Information We Collect:**

We collect personal information about you from the following sources:
- Applications or other forms such as claims forms or underwriting questionnaires completed by you;
- Information about your transactions with us, our affiliates or others; and
- Depending on the type of transaction you are conducting with us, information may be collected from consumer reporting agencies, health care providers, employers and other third parties.

**Information We Disclose:**

We will only disclose the information described above to our affiliates and non-affiliated third parties, as permitted by law, and when necessary to conduct our normal business activities.

For example, we may make disclosures to the following types of third parties:
- Your agent or broker (producer);
- Parties who perform a business, professional or insurance functions for our company, including our reinsurance companies;
- Independent claims adjusters, investigators, attorneys, other insurers or medical care providers who need information to investigate, defend or settle a claim involving you;
- Regulatory agencies in connection with the regulation of our business; and
- Lienholders, mortgagees, lessors or other persons shown on our records as having a legal or beneficial interest in your policy.

We do not sell your information to others for marketing purposes. We do not disclose the personal information of persons who have ceased to be our customers.

**Protection of Information:**

Philadelphia Indemnity Insurance Company maintains physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of your personal information. We also limit employee access to personally identifiable information to those with a business reason for knowing such information.

**Use of Cookies:**

We may place electronic "cookies" in the browser files of your computer when you access this website. Cookies are text files placed on your computer to enable our systems to recognize your browser and to tailor the information on our website to your interests. We or our third party service providers or business partners may place cookies on your computer's hard drive to enable us to match personal information that we maintain about you so that we are able to pre-populate on-line forms with your information. We also use cookies to help us analyze use of our website to understand which areas of our site are most useful to you. You may refuse the use of cookies by selecting the appropriate settings on your browser. Please note that if you do this, you may not be able to use the full functionality of the website.

**How to Contact Us:**  Philadelphia Indemnity Insurance Company, One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004
Attention:  Chief Privacy Officer                                                                   07192013



# PHILADELPHIA
## INSURANCE COMPANIES
#### A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## Philadelphia Indemnity Insurance Company
## COMMON POLICY DECLARATIONS

**Policy Number:** PHPK1274724

**Named Insured and Mailing Address:**
6111 Ridgeway Group LLC
12 College Rd
C/O White Eagle Property Group
Monsey, NY 10952-2821

**Producer:** 21141
Fairmont Insurance Brokers
1600 60th Street
Brooklyn, NY 11204

**Policy Period From:** 12/28/2014  **To:** 12/28/2015    at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:** Apartment Package

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | 28,572.00 |
| Commercial Crime Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | |
| Businessowners | |
| Workers Compensation | |
| UltimateCover Property Coverage Part | 94,105.00 |
| **Total** | **$ 122,677.00** |
| Total Includes Federal Terrorism Risk Insurance Act Coverage | **2,828.00** |

## FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE
### Refer To Forms Schedule

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations

CPD- PIIC (01/07)

_____
Countersignature Date

Rober eO H

Authorized Representative

# Philadelphia Indemnity Insurance Company

## Form Schedule – Policy

**Policy Number:** PHPK1274724

## Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| Recurring Payment Flyer | 1212 | Recurring Payment Flyer |
| CSNotice-1 | 0813 | Making Things Easier |
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| PP0713 | 0713 | Privacy Policy Notice |
| CPD-PIIC | 0107 | Common Policy Declarations |
| Location Schedule | 0100 | Location Schedule |
| Mortgagee Schedule | 0100 | Mortgagee Schedule |
| Loss Payee Schedule | 0100 | Loss Payee Schedule |
| Additional Insured Schedule | 0100 | Additional Insured Schedule |
| Named Insured Sched | 0100 | Named Insured Schedule |
| PI-BELL-1 | 1109 | Bell Endorsement |
| PI-CME-1 | 1009 | Crisis Management Enhancement Endorsement |
| IL0017 | 1198 | Common Policy Conditions |
| IL0021 | 0908 | Nuclear Energy Liability Exclusion Endorsement |
| IL0250 | 0908 | Tennessee Changes - Cancellation and Nonrenewal |
| IL0985 | 0108 | Disclosure Pursuant to Terrorism Risk Insurance Act |

# Philadelphia Indemnity Insurance Company

## Locations Schedule

**Policy Number:** PHPK1274724

| Prems.<br>No. | Bldg.<br>No. | Address |
|---|---|---|
| 0001 | 0001 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0002 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0003 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0004 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0005 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0006 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0007 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0008 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0009 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0010 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0011 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0012 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0013 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0014 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0015 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0016 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |

# Philadelphia Indemnity Insurance Company

## Locations Schedule

**Policy Number:** PHPK1274724

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 0001 | 0017 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0018 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0019 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0020 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0021 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0022 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0023 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0024 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0025 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0026 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0027 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0028 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0029 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0030 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0031 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0032 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |

# Philadelphia Indemnity Insurance Company

## Locations Schedule

**Policy Number:**  PHPK1274724

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 0001 | 0033 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0034 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0035 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0036 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0037 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0038 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0039 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0040 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0041 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0042 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0043 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0044 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0045 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0046 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0047 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0048 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |

# Philadelphia Indemnity Insurance Company

## Locations Schedule

**Policy Number:** PHPK1274724

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 0001 | 0049 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0050 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0051 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0052 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0053 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0054 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0055 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0056 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0057 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0058 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0059 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0060 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0061 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0062 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0063 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0064 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |

# Philadelphia Indemnity Insurance Company

## Locations Schedule

**Policy Number:** PHPK1274724

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 0001 | 0065 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0066 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0067 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0068 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0069 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0070 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0071 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0072 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0073 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0074 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |
| 0001 | 0075 | 6111 Ridgeway Blvd<br>Clubhouse<br>Memphis, TN 38115-5289 |
| 0002 | 0001 | 2155 Deercrest Ln &<br>2155 Sycamore View Rd<br>Memphis, TN 38134-8917 |
| 0002 | 0002 | 2155 Deercrest Ln &<br>2155 Sycamore View Rd<br>Memphis, TN 38134-8917 |
| 0002 | 0003 | 2155 Deercrest Ln &<br>2155 Sycamore View Rd<br>Memphis, TN 38134-8917 |

## Philadelphia Indemnity Insurance Company

## Locations Schedule

**Policy Number:** PHPK1274724

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 0002 | 0004 | 2155 Deercrest Ln & 2155 Sycamore View Rd Memphis, TN 38134-8917 |
| 0002 | 0005 | 2155 Deercrest Ln & 2155 Sycamore View Rd Memphis, TN 38134-8917 |
| 0002 | 0006 | 2155 Deercrest Ln & 2155 Sycamore View Rd Memphis, TN 38134-8917 |
| 0002 | 0007 | 2155 Deercrest Ln & 2155 Sycamore View Rd Memphis, TN 38134-8917 |
| 0002 | 0008 | 2155 Deercrest Ln & 2155 Sycamore View Rd Memphis, TN 38134-8917 |
| 0002 | 0009 | 2155 Deercrest Ln & 2155 Sycamore View Rd Memphis, TN 38134-8917 |
| 0002 | 0010 | 2155 Deercrest Ln & 2155 Sycamore View Rd Memphis, TN 38134-8917 |

# Philadelphia Indemnity Insurance Company

## Mortgagee Schedule

**Policy Number:** PHPK1274724

Mortgagee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #1 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #2 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #3 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #4 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #5 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #6 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #7 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #8 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #9 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #10 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #11 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #12 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #13 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #14 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #15 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #16 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #17 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #18 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #19 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #20 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #21 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #22 - BUILDING (APARTMENTS)

## Philadelphia Indemnity Insurance Company

## Mortgagee Schedule

**Policy Number:** PHPK1274724

Mortgagee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #23 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #24 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #25 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #26 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #27 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #28 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #29 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #30 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #31 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #32 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #33 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #34 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #35 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #36 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #37 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #38 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #39 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #40 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #41 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #42 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #43 - BUILDING (APARTMENTS)

# Philadelphia Indemnity Insurance Company

## Mortgagee Schedule

**Policy Number:** PHPK1274724

Mortgagee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #44 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #45 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #46 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #47 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #48 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #49 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #50 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #51 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #52 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #53 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #54 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #55 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #56 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #57 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #58 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #59 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #60 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #61 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #62 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #63 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #64 - BUILDING (APARTMENTS)

## Philadelphia Indemnity Insurance Company

### Mortgagee Schedule

**Policy Number:** PHPK1274724

Mortgagee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #65 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #66 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #67 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #68 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #69 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #70 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #71 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #72 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #73 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #74 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #1 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #2 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #3 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #4 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #5 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #6 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #7 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #8 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #9 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #10 - BUILDING (APARTMENTS)

# Philadelphia Indemnity Insurance Company

## Loss Payee Schedule

**Policy Number:** PHPK1274724

Loss Payee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #1 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #2 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #3 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #4 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #5 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #6 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #7 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #8 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #9 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #10 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #11 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #12 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #13 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #14 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #15 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #16 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #17 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #18 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #19 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #20 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #21 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #22 - BUILDING (APARTMENTS)

Philadelphia Indemnity Insurance Company

## Loss Payee Schedule

**Policy Number:** PHPK1274724

Loss Payee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #23 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #24 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #25 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #26 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #27 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #28 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #29 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #30 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #31 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #32 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #33 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #34 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #35 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #36 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #37 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #38 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #39 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #40 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #41 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #42 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #43 - BUILDING (APARTMENTS)

## Philadelphia Indemnity Insurance Company

## Loss Payee Schedule

**Policy Number:** PHPK1274724

Loss Payee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #44 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #45 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #46 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #47 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #48 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #49 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #50 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #51 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #52 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #53 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #54 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #55 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #56 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #57 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #58 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #59 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #60 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #61 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #62 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #63 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #64 - BUILDING (APARTMENTS)

# Philadelphia Indemnity Insurance Company

## Loss Payee Schedule

**Policy Number:** PHPK1274724

Loss Payee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #1 - Bld #65 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #66 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #67 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #68 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #69 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #70 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #71 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #72 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #73 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #74 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #75 - BUILDING (APARTMENTS)

TN - Loc #1 - Bld #75 - BUSINESS PERSONAL PROPERTY (APARTMENTS)

TN - Loc #2 - Bld #1 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #2 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #3 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #4 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #5 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #6 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #7 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #8 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #9 - BUILDING (APARTMENTS)

Philadelphia Indemnity Insurance Company

## Loss Payee Schedule

**Policy Number:** PHPK1274724

Loss Payee

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

TN - Loc #2 - Bld #10 - BUILDING (APARTMENTS)

TN - Loc #2 - Bld #10 - BUSINESS PERSONAL PROPERTY (APARTMENTS)

## Philadelphia Indemnity Insurance Company

## Additional Insured Schedule

**Policy Number:** PHPK1274724

Additional Insured

Key Bank National Association
See Manuscript form for Full Name
11501 Outlook St Ste 300
Overland Park, KS 66211-1807

CG2018 - TN - Loc #1 - 334 (APARTMENT BUILDING-NOC)

CG2018 - TN - Loc #2 - 334 (APARTMENT BUILDING-NOC)

Additional Insured

The City of Memphis, its officials,
agents
2714 Union Avenue Ext Ste 200
Memphis, TN 38112-4437

CG2026 - General Liability
Only as respects to unit rental by the city

## Philadelphia Indemnity Insurance Company

## Named Insured Schedule

**Policy Number:** PHPK1274724

Deerfield Group LLC

6111 Group LLC

COMMERCIAL GENERAL LIABILITY
CG P 011 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION ENDORSEMENT ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), **the provisions of the policy (including its endorsements) shall prevail.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement, which applies to your renewal policy being issued by us:

**Recording And Distribution Of Material Or Information In Violation Of Law Exclusion Endorsement CG 00 68 05 09**

This endorsement replaces the current Distribution Of Material In Violation Of Statutes Exclusion in your policy with a revised exclusion, newly titled Recording And Distribution Of Material Or Information In Violation Of Law Exclusion. The revised exclusion contains language that elaborates on the intent of the Distribution Of Material In Violation Of Statutes Exclusion to reflect that, in addition to the TCPA and CAN-SPAM Act of 2003, the exclusion will more explicitly exclude liability coverage for bodily injury, property damage or personal and advertising injury arising out of any action or omission that violates, or is alleged to violate, the Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA) and any other similar federal, state or local statute, ordinance or regulation concerning disposal and dissemination of personal information.

COMMERCIAL GENERAL LIABILITY
CG P 016 05 14

# GENERAL LIABILITY ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSIONS

# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsements, which applies to your renewal policy being issued by us:

**CG 21 06 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – With Limited Bodily Injury Exception (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

- Under Coverage **B** – Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 21 07 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage. However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

- Under Coverage **B** – Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 21 08 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information (Coverage B Only) (For Use With The Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 04 37 – Electronic Data Liability (For Use With The Commercial General Liability Coverage Part)**

With respect to damages arising out of access or disclosure of confidential or personal information, when this endorsement is attached to your policy:

- Under Coverage **A** – Bodily Injury And Property Damage Liability, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.
- Under Coverage **B** – Personal And Advertising Injury Liability, coverage is excluded for personal and advertising injury arising out of any access to or disclosure of confidential or personal information. To the extent that any access or disclosure of confidential or personal information results in an oral or written publication that violates a person's right of privacy, this may result in a reduction in coverage.

**CG 33 53 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – With Limited Bodily Injury Exception (For Use With The Owners And Contractors Protective Liability Coverage Part and Products/Completed Operations Coverage Part)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

**CG 33 59 05 14 – Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability – Limited Bodily Injury Exception Not Included (For Use With The Owners And Contractors Protective Liability and Products/Completed Operations Liability Coverage Parts)**

When this endorsement is attached to your policy, coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

However, when this endorsement is attached, it will result in a reduction of coverage due to the deletion of an exception with respect to damages because of bodily injury arising out of loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

**CG 33 63 – Exclusion – Access, Disclosure Or Unauthorized Use Of Electronic Data (For Use With The Electronic Data Liability Coverage Part)**

With respect to damages arising out of access or disclosure of confidential or personal information, when this endorsement is attached to your policy coverage is excluded for damages arising out of any access to or disclosure of confidential or personal information. This is a reinforcement of coverage.

However, to the extent that damages arising out of theft or unauthorized viewing, copying, use, corruption, manipulation or deletion, of electronic data by any Named Insured, past or present employee, temporary worker or volunteer worker of the Named Insured may extend beyond loss of electronic data arising out of such theft or the other listed items, this revision may be considered a reduction in coverage.

    © Insurance Services Office, Inc., 2013    **CG P 016 05 14**

## Philadelphia Indemnity Insurance Company

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: PHPK1274724

Agent # 21141

☒ See Supplemental Schedule

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| $ | 2,000,000 | General Aggregate Limit (Other Than Products – Completed Operations) |
| $ | 2,000,000 | Products/Completed Operations Aggregate Limit (Any One Person Or Organization) |
| $ | 1,000,000 | Personal and Advertising Injury Limit |
| $ | 1,000,000 | Each Occurrence Limit |
| $ | 100,000 | Rented To You Limit |
| $ | 5,000 | Medical Expense Limit (Any One Person) |

**FORM OF BUSINESS:** ASSOCIATION

Business Description: Apartment Package

Location of All Premises You Own, Rent or Occupy:     **SEE SCHEDULE ATTACHED**

**AUDIT PERIOD, ANNUAL, UNLESS OTHERWISE STATED:** This policy is not subject to premium audit.

| | | | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| Classifications | Code No. | Premium Basis | Prem./ Ops. | Prod./ Comp. Ops | Prem./ Ops. | Prod./ Comp. Ops. |
| **SEE SCHEDULE ATTACHED** | | | | | | |
| **TOTAL PREMIUM FOR THIS COVERAGE PART:** | | | | | $  28,572.00 | $ |

**RETROACTIVE DATE (CG 00 02 ONLY)**
This insurance does not apply to "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" which occurs before the retroactive date, if any, shown below.

Retroactive Date: _____

**FORM (S) AND ENDORSEMENT (S) APPLICABLE TO THIS COVERAGE PART: <u>Refer To Forms Schedule</u>**

_____    _____

Countersignature Date          Authorized Representative

Philadelphia Indemnity Insurance Company

Form Schedule – General Liability

**Policy Number:** PHPK1274724

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| CGP011 | 0509 | Recording and Distribution of Material or Information |
| CGP016 | 0514 | General Liability Advisory Notice To Policyholders |
| Gen Liab Dec | 1004 | Commercial General Liability Coverage Part Declaration |
| Gen Liab Schedule | 0100 | General Liability Schedule |
| CG0001 | 0413 | Commercial General Liability Coverage Form |
| CG2002 | 1185 | Additional Insured - Club Members |
| CG2018 | 0413 | Additional Insured - Mortgagee, Assignee or Receiver |
| CG2026 | 0413 | Additional Insured - Designated Person Or Organization |
| CG2106 | 0514 | Excl-Access/Disclosure-With Ltd Bodily Injury Except |
| CG2146 | 0798 | Abuse Or Molestation Exclusion |
| CG2147 | 1207 | Employment-Related Practices Exclusion |
| CG2167 | 1204 | Fungi or Bacteria Exclusion |
| CG2184 | 0108 | Exclusion of Certified Nuclear, Biological, Chemical |
| CG2402 | 1204 | Binding Arbitration |
| CG2404 | 0509 | Waiver of Transfer of Rights of Recovery Against Other |
| CG2416 | 1207 | Canoes Or Rowboats |
| PI-GL-001 | 0894 | Exclusion - Lead Liability |
| PI-GL-002 | 0894 | Exclusion - Asbestos Liability |

# Philadelphia Indemnity Insurance Company
## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL SCHEDULE

Policy Number:  PHPK1274724

Agent #  21141

| Classifications | Code No. | Premium Basis | | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|---|
| | | | | Prem./ Ops. | Prod./ Comp. Ops. | Prem./ Ops. | Prod./ Comp. Ops. |
| TN      PREM NO. 001 APARTMENT BUILDING-NOC  PROD/COMP OP SUBJ TO GEN AGG LIMIT | 60010 | 584 UNIT | | 37.825 | INCL | 22,141 | INCL |
| TN      PREM NO. 001 SWIMMING POOL-NOC  PROD/COMP OP SUBJ TO GEN AGG LIMIT | 48925 | 1 POOL | | 358.193 | INCL | 359 | INCL |
| TN      PREM NO. 001 CLUB-CIVIC-BLDG OWN/LEASE-FP  PROD/COMP OP SUBJ TO GEN AGG LIMIT | 41667 | 1,975 AREA | | 123.183 | INCL | 244 | INCL |
| TN      PREM NO. 001 TENNIS COURTS  PROD/COMP OP SUBJ TO GEN AGG LIMIT | 46671 | 2 EACH | | 174.798 | INCL | 351 | INCL |
| TN      PREM NO. 002 APARTMENT BUILDING-NOC  PROD/COMP OP SUBJ TO GEN AGG LIMIT | 60010 | 135 UNIT | | 37.825 | INCL | 5,118 | INCL |
| TN      PREM NO. 002 SWIMMING POOL-NOC  PROD/COMP OP SUBJ TO GEN AGG LIMIT | 48925 | 1 POOL | | 358.193 | INCL | 359 | INCL |

**COMMERCIAL PROPERTY**
**CP P 003 07 06**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement, which applies to your new or renewal policy being issued by us:

### Exclusion Of Loss Due To Virus Or Bacteria Endorsement CP 01 40 07 06

This endorsement makes an explicit statement regarding a risk that is not covered under your Commercial Property insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your Commercial Property insurance, including (if any) property damage and business income coverages.

PI-ULTD-002 11.98

# ULTIMATECOVER
## PROPERTY COVERAGE PART DECLARATIONS

| | |
|---|---|
| **Policy Number**  PHPK1274724 | **Effective Date:** 12/28/2014 |
| | **Expiration Date:** 12/28/2015 |
| | **12:01 a.m., Standard Time** |
| | |
| | ☒ Extension of Declarations is attached |

### Business Description

Apartment Package

### Description of Premises

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0001 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0002 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0003 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0004 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0005 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0006 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

### Limits of Insurance

Insurance applies only for coverage for which a Limit of Insurance is shown.

#### Property at Specified Premises

| Prem.<br>No. | Bldg.<br>No. | Your Business<br>Personal Property | Personal Property<br>of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0001 | | | BKT #1 |
| 0001 | 0002 | | | BKT #1 |
| 0001 | 0003 | | | BKT #1 |
| 0001 | 0004 | | | BKT #1 |
| 0001 | 0005 | | | BKT #1 |
| 0001 | 0006 | | | BKT #1 |

PI-ULTD-002 11.98

Personal Property at Location not Specifically Identified: $100,000, unless a higher limit is shown on the Additional Coverage Summary Declarations.

Personal Property in Transit: $50,000, unless a higher limit is shown on the Additional Coverage Summary Declarations.

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

## Applications of Limits

☐ Specific          ☒ Blanket - See Form PI-ULTD-006
☐ Exceptions:

## Deductibles

Building  $                Business Personal Property  $                Transit  $        15,000
SEE MULTIPLE DEDUCTIBLE FORM(S)

## Coinsurance

☐  80%          ☐  90%          ☒  100%          ☒  Agreed Value

## Mortgage Holders

**Prem. No.**      **Bldg. No.**      **Mortgage Holder Name and Address**

**SEE SCHEDULE ATTACHED**

## Forms and Endorsement

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

See Schedule of Forms and Endorsements attached.

## Premium

Premium for this Coverage Part $      94,105.00

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|-----------|-----------|--------------------------------------|---|
| 0001 | 0007 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0008 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0009 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0010 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0011 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0012 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem.<br>No. | Bldg.<br>No. | Your Business<br>Personal Property | Personal Property<br>of Others | Buildings |
|------|------|------|------|------|
| 0001 | 0007 | | | BKT #1 |
| 0001 | 0008 | | | BKT #1 |
| 0001 | 0009 | | | BKT #1 |
| 0001 | 0010 | | | BKT #1 |
| 0001 | 0011 | | | BKT #1 |
| 0001 | 0012 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|-----------|-----------|----------------------------------|

   SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page  1  of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

## Description of Premises

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0013 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0014 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0015 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0016 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0017 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0018 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

## Limits of Insurance

Insurance applies only for coverages for which a Limit of Insurance is shown.

### Property at Specified Premises

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0013 | | | BKT #1 |
| 0001 | 0014 | | | BKT #1 |
| 0001 | 0015 | | | BKT #1 |
| 0001 | 0016 | | | BKT #1 |
| 0001 | 0017 | | | BKT #1 |
| 0001 | 0018 | | | BKT #1 |

## Mortgage Holders

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page  2  of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

## Description of Premises

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0019 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0020 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0021 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0022 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0023 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0024 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

## Limits of Insurance

Insurance applies only for coverages for which a Limit of Insurance is shown.

### Property at Specified Premises

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0019 | | | BKT #1 |
| 0001 | 0020 | | | BKT #1 |
| 0001 | 0021 | | | BKT #1 |
| 0001 | 0022 | | | BKT #1 |
| 0001 | 0023 | | | BKT #1 |
| 0001 | 0024 | | | BKT #1 |

## Mortgage Holders

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 3 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0025 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0026 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0027 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0028 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0029 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0030 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0025 | | | BKT #1 |
| 0001 | 0026 | | | BKT #1 |
| 0001 | 0027 | | | BKT #1 |
| 0001 | 0028 | | | BKT #1 |
| 0001 | 0029 | | | BKT #1 |
| 0001 | 0030 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|
| | | SEE SCHEDULE ATTACHED |

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page  4  of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0031 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0032 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0033 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0034 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0035 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0036 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0031 | | | BKT #1 |
| 0001 | 0032 | | | BKT #1 |
| 0001 | 0033 | | | BKT #1 |
| 0001 | 0034 | | | BKT #1 |
| 0001 | 0035 | | | BKT #1 |
| 0001 | 0036 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|
| | | SEE SCHEDULE ATTACHED |

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 5 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0037 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0038 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0039 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0040 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0041 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0042 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0037 | | | BKT #1 |
| 0001 | 0038 | | | BKT #1 |
| 0001 | 0039 | | | BKT #1 |
| 0001 | 0040 | | | BKT #1 |
| 0001 | 0041 | | | BKT #1 |
| 0001 | 0042 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 6 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|-----------|-----------|--------------------------------------|--|
| 0001 | 0043 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0044 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0045 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0046 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0047 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0048 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem.<br>No. | Bldg.<br>No. | Your Business<br>Personal Property | Personal Property<br>of Others | Buildings |
|--------------|--------------|-----------------------------------|--------------------------------|-----------|
| 0001 | 0043 | | | BKT #1 |
| 0001 | 0044 | | | BKT #1 |
| 0001 | 0045 | | | BKT #1 |
| 0001 | 0046 | | | BKT #1 |
| 0001 | 0047 | | | BKT #1 |
| 0001 | 0048 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|-----------|-----------|----------------------------------|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page  7  of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**   PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|-----------|-----------|-------------------------------------|---|
| 0001 | 0049 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0050 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0051 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0052 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0053 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0054 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|-----------|-----------|--------------------------------|----------------------------|-----------|
| 0001 | 0049 | | | BKT #1 |
| 0001 | 0050 | | | BKT #1 |
| 0001 | 0051 | | | BKT #1 |
| 0001 | 0052 | | | BKT #1 |
| 0001 | 0053 | | | BKT #1 |
| 0001 | 0054 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|-----------|-----------|----------------------------------|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 8 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number** PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0055 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0056 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0057 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0058 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0059 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0060 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0055 | | | BKT #1 |
| 0001 | 0056 | | | BKT #1 |
| 0001 | 0057 | | | BKT #1 |
| 0001 | 0058 | | | BKT #1 |
| 0001 | 0059 | | | BKT #1 |
| 0001 | 0060 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 9 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number** PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0061 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0062 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0063 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0064 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0065 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0066 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0061 | | | BKT #1 |
| 0001 | 0062 | | | BKT #1 |
| 0001 | 0063 | | | BKT #1 |
| 0001 | 0064 | | | BKT #1 |
| 0001 | 0065 | | | BKT #1 |
| 0001 | 0066 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|

SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 10 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0001 | 0067 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0068 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0069 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0070 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0071 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0072 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0001 | 0067 | | | BKT #1 |
| 0001 | 0068 | | | BKT #1 |
| 0001 | 0069 | | | BKT #1 |
| 0001 | 0070 | | | BKT #1 |
| 0001 | 0071 | | | BKT #1 |
| 0001 | 0072 | | | BKT #1 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|
| | | SEE SCHEDULE ATTACHED |

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 11 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

## Description of Premises

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|-----------|-----------|--------------------------------------|---|
| 0001 | 0073 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0074 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>APARTMENTS | FRAME |
| 0001 | 0075 | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289<br>Clubhouse | FRAME |
| 0002 | 0001 | 2155 Deercrest Ln &<br>Memphis, TN 38134-8917<br>APARTMENTS | FRAME |
| 0002 | 0002 | 2155 Deercrest Ln &<br>Memphis, TN 38134-8917<br>APARTMENTS | FRAME |
| 0002 | 0003 | 2155 Deercrest Ln &<br>Memphis, TN 38134-8917<br>APARTMENTS | FRAME |

## Limits of Insurance

Insurance applies only for coverages for which a Limit of Insurance is shown.

### Property at Specified Premises

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|-----------|-----------|---------------------------------|-----------------------------|-----------|
| 0001 | 0073 | | | BKT #1 |
| 0001 | 0074 | | | BKT #1 |
| 0001 | 0075 | $      50,000 | | BKT #1 |
| 0002 | 0001 | | | BKT #3 |
| 0002 | 0002 | | | BKT #3 |
| 0002 | 0003 | | | BKT #3 |

## Mortgage Holders

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|-----------|-----------|----------------------------------|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 12 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number**  PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | |
|---|---|---|---|
| 0002 | 0004 | 2155 Deercrest Ln & Memphis, TN 38134-8917 APARTMENTS | FRAME |
| 0002 | 0005 | 2155 Deercrest Ln & Memphis, TN 38134-8917 APARTMENTS | FRAME |
| 0002 | 0006 | 2155 Deercrest Ln & Memphis, TN 38134-8917 APARTMENTS | FRAME |
| 0002 | 0007 | 2155 Deercrest Ln & Memphis, TN 38134-8917 APARTMENTS | FRAME |
| 0002 | 0008 | 2155 Deercrest Ln & Memphis, TN 38134-8917 APARTMENTS | FRAME |
| 0002 | 0009 | 2155 Deercrest Ln & Memphis, TN 38134-8917 APARTMENTS | FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0002 | 0004 | | | BKT #3 |
| 0002 | 0005 | | | BKT #3 |
| 0002 | 0006 | | | BKT #3 |
| 0002 | 0007 | | | BKT #3 |
| 0002 | 0008 | | | BKT #3 |
| 0002 | 0009 | | | BKT #3 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 13 of 14**

PI-ULTD-003 11.98

# PROPERTY COVERAGE PART EXTENSION OF DECLARATIONS

**Policy Number** PHPK1274724

**Description of Premises**

| Prem. No. | Bldg. No. | Location, Construction and Occupancy |
|---|---|---|
| 0002 | 0010 | 2155 Deercrest Ln & |
| | | Memphis, TN 38134-8917 |
| | | APARTMENTS                                    FRAME |

**Limits of Insurance**

Insurance applies only for coverages for which a Limit of Insurance is shown.

**Property at Specified Premises**

| Prem. No. | Bldg. No. | Your Business Personal Property | Personal Property of Others | Buildings |
|---|---|---|---|---|
| 0002 | 0010 | $      50,000 | | BKT #3 |

**Mortgage Holders**

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|

### SEE SCHEDULE ATTACHED

These declarations are part of the policy declarations containing the Name of the Insured and the policy period.

**Page 14 of 14**

PI-ULTD-005 (05/13)

# ADDITIONAL COVERAGE SUMMARY DECLARATIONS

**Policy Number**  PHPK1274724

As per the Property Coverage Part Declarations this Coverage Part provides the following Additional Coverages and Coverage Extensions, subject to the Limits of Insurance shown below.

|  | **Limits of Insurance** |
|---|---|
| Brands and Labels | Included in Policy Limits |
| Claim Expenses | $    10,000 |
| Contract Penalty Clause | $    25,000 |
| Computer Property | Included in Personal Property Limits |
| Excavation and Landscaping | $    25,000 |
| Fine Arts | $    25,000 |
| Fines for False Alarms | $      5,000 |
| Fire Department Service Charge | $    50,000 |
| Fire, Sprinkler or Burglar Alarm Upgrade | $    50,000 |
| Fish in Aquariums | $      1,000 |
| Glass | Included in Policy Limits, except when PI-ULT-030 applies |
| Guard Dogs | $      1,000 |
| Lost Key Replacement | $      2,500 |
| Newly Acquired Property | $1,000,000 Blanket Limit Real and Personal Property |
| New Construction | $  500,000 |
| Ordinance or Law – Undamaged Portion | Included in Building Limit |
| Ordinance or Law – Demolition | $  250,000 |
| Ordinance or Law – Increased Cost of Construction | $  250,000 |
| Personal Effects – Portable Electronic Equipment – Away from Premises | $      1,000 |
| Personal Effects - Premises | $    25,000 |
| Personal Effects – Spouses | $        500 |
| Personal Effects – Worldwide | $      1,000 |
| Pollutant Cleanup and Removal | $    25,000 |
| Precious Metals | $      2,500 |
| Signs | Included in Personal Property Limits |
| Theft Damage to Building | Included in Personal Property Limits |
| Utility Service | $    10,000 |
| Voluntary Parting | $    10,000 |

For the Additional Coverages and Coverage Extensions shown below, if a Superceding Limit of Insurance is shown, that Superceding Limit is the applicable Limit of Insurance.

|  | **Limits of Insurance** | **Superseding Limits** |
|---|---|---|
| Accounts Receivable | $  250,000 | $ _____ |
| Arson Reward | $    25,000 | $ _____ |
| Computer Virus Extraction Expense | $      2,500 | $ _____ |
| Consequential Damage | $    25,000 | $ _____ |
| Debris Removal | $  250,000 | $ _____ |
| Personal Property in Transit | $    50,000 | $ _____ |
| Personal Property at Locations not Specifically Identified | $  100,000 | $ _____ |
| Valuable Papers and Records – Cost of Research | $  250,000 | $ _____ |

## Philadelphia Indemnity Insurance Company

## Form Schedule – UltimateCover

**Policy Number:** PHPK1274724

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|---|---|---|
| CP P 003 | 0706 | Excl of Loss Due to Virus or Bacteria Advisory Notice |
| PI-ULTD-002 | 1198 | Property Coverage Part Declarations |
| PI-ULTD-003 | 1198 | Property Coverage Part Extension of Declarations |
| PI-ULTD-005 | 0513 | Additional Coverage Summary Declarations |
| PI-ULTD-006 | 1198 | UltimateCover Program Blanket Limits |
| CP0090 | 0788 | Commercial Property Conditions |
| CP0140 | 0706 | Exclusion of Loss Due to Virus or Bacteria |
| PI-ULT-007 | 1198 | Property Coverage Form |
| PI-ULT-008 | 1198 | Causes of Loss Form |
| PI-ULT-009 | 1198 | Crime Coverage Form |
| PI-ULT-010 | 1198 | Business Income with Extra Expense Coverage Form |
| ULT10COV | 1198 | Business Income with Extra Expense Coinsurance Sched |
| ULT10OPT | 1198 | Business Income with Extra Expense Optional Cov Sched |
| PI-ULT-015 | 1198 | Agreed Value Endorsement |
| PI-ULT-016 | 1198 | Loss Payable Provisions |
| PI-ULT-072 | 1010 | Limitations on Fungus, Wet Rot, Dry Rot and Bacteria |
| PI-ULT-83 | 0401 | Loss of Income due to Workplace Violence |
| PI-ULT-088 | 0204 | Changes - Electronic Data |
| PI-ULT-089 | 0605 | Multiple Deductible Form |
| PI-ULT-142 | 0813 | Collapse - Exclusion And Additional Coverage Re-Stated |
| PI-ULT-NBC-1 | 0108 | Excl of Certified Acts of Terrorism Involving Nuclear |
| PI-MANU-1 | 0100 | Mtgee/Loss Payee/Addl Ins-Key Bank National Association |

# UltimateCover Program
# Blanket Limits

Policy Number: PHPK1274724

Agent # 21141

## ULTIMATECOVER PROPERTY – BLANKET STATEMENT OF VALUES

| Blanket No. | Coverage | Limit of Insurance | | Co-Insurance |
|---|---|---|---|---|
| 1 | Building | $ | 33,215,000 | 100% |
| 2 | Bus Income-Ext | $ | 3,603,430 | 100% |
| 3 | Building | $ | 8,661,000 | 100% |
| 4 | Bus Income-Ext | $ | 963,495 | 100% |

These declarations are part of the policy declarations containing the name of the insured and the policy period.

PI-BELL-1 (11/09)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BELL ENDORSEMENT

 **PHILADELPHIA**
**INSURANCE COMPANIES**

A Member of the Tokio Marine Group

One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

### I.   SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS

The following is a summary of Limits of Liability or Limits of Insurance and/or additional coverages provided by this endorsement.  This endorsement is subject to the provisions of the policy to which it is attached.

| COVERAGE | LIMITS OF INSURANCE |
|---|---|
| Business Travel Accident Benefit | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Assurance | $50,000 |
| Emergency Real Estate Consulting Fee | $50,000 |
| Fundraising Event Blackout | $25,000 |
| Identity Theft Expense | $50,000 |
| Image Restoration and Counseling | $50,000 |
| Key Individual Replacement Expenses | $50,000 |
| Kidnap Expense | $50,000 |
| Political Unrest | $5,000 per employee:<br>$25,000 policy limit |
| Temporary Meeting Space Reimbursement | $25,000 |
| Terrorism Travel Reimbursement | $50,000 |
| Travel Delay Reimbursement | $1,500 |
| Workplace Violence Counseling | $50,000 |

© 2009 Philadelphia Insurance Companies

## II.   CONDITIONS

### A.  Applicability of Coverage

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable.

### B.  Limits of Liability or Limits of Insurance

1.   When coverage is provided by this endorsement and another coverage form or endorsement attached to this policy, the greater limits of liability or limits of insurance will apply.  In no instance will multiple limits apply to coverages which may be duplicated within this policy.  Additionally, if this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same occurrence, offense, wrongful act, accident or loss, the maximum limits of liability or limits of insurance under all such coverage parts or policies combined shall not exceed the highest applicable limits of liability or limits of insurance under any one coverage part or policy.

2.   Limits of liability or limits of insurance identified in Section **I. SCHEDULE OF ADDITIONAL COVERAGES AND LIMITS** above are not excess of, but are in addition to the applicable Limits of Liability or Limits of Insurance stated in the Declarations.

### C.  Claim Expenses

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

## III.   ADDITIONAL COVERAGES

### A.  Business Travel Accident Benefit

We will pay a Business Travel Accident Benefit to the insured if a director or officer suffers injury or death while traveling on a common carrier for your business during the policy period.

For the purpose of Business Travel Accident Benefit coverage, injury means:

1.   Physical damage to the body caused by violence, fracture, or an accident that results in loss of life not later than one hundred eighty (180) days after the policy expiration, the date of cancellation or the date of non-renewal;

2.   Accidental loss of limbs or multiple fingers;

3.   Total loss of sight, speech or hearing.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

The Business Travel Accident Benefit shall not be payable if the cause of the injury was:

1.   An intentional act by the insured;

2.   An act of suicide or attempted suicide;

3.   An act of war; or

4.   A disease process.

© 2009 Philadelphia Insurance Companies

**B. Conference Cancellation**

We will reimburse the insured for any business-related conference expenses, paid by the insured and not otherwise reimbursed, for a canceled conference that an employee was scheduled to attend. The cancellation must be due directly to a "natural catastrophe" or a "communicable disease" outbreak that forces the cancellation of the conference.

With respect to a conference cancellation claim, it is further agreed as follows:

1. The insured employee must have registered for the conference at least thirty (30) days prior to the cancellation; and

2. The cancellation must be ordered by a local, state or federal Board of Health or other governmental authority having jurisdiction over the location of the conference.

The limit of insurance for this coverage is $25,000 per policy period for all insureds combined. No deductible applies to this coverage.

**C. Donation Assurance**

If the insured is a 501(c)(3) status non-profit organization as defined in the United States Internal Revenue Code, we will reimburse the insured for "failed donation claim(s)."

With respect to any "failed donation claim," it is further agreed as follows:

1. The donor must not have been in bankruptcy, nor have filed for bankruptcy or reorganization in the past seven (7) years prior to the time said pledge was made to the insured;

2. For non-cash donations, our payment of a "failed donation claim" shall be based on the fair market value of said non-cash donation at the time of the "failed donation claim";

3. In the case of unemployment or incapacitation of a natural person donor and as a condition of payment of the "failed donation claim":

   **a.** Neither the natural person donor nor the insured shall have had reason to believe the donor would become unemployed or incapacitated subsequent to the donation date; and

   **b.** The donor shall be unemployed for at least sixty (60) days prior to a claim being submitted by the insured;

4. No coverage shall be afforded for a written pledge of funds or other measurable, tangible property to the insured dated prior to the policy period; and

5. A donation amount which is to be collected by the insured over more than a twelve (12) month period shall be deemed a single donation.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**D. Emergency Real Estate Consulting Fee**

We will reimburse the insured any realtor's fee or real estate consultant's fee necessitated by the insured's need to relocate due to the "unforeseeable destruction" of the insured's "principal location" listed in the Declarations during the policy period. The limit of insurance for this

coverage is $50,000 per policy period for all insureds combined.  No deductible applies to this coverage.

**E.  Fundraising Event Blackout**

We will reimburse the insured for "fundraising expenses" that are incurred due to the cancellation of a fundraising event caused by the lack of electric supply resulting in a power outage, provided the fundraising event is not re-scheduled.  The fundraising event must have been planned at least thirty (30) days prior to the power outage.  The limit of insurance for this coverage is $25,000 per policy period for all insureds combined.  No deductible applies to this coverage.

**F.  Identity Theft Expense**

We will reimburse any present director or officer of the named insured for "identity theft expenses" incurred as the direct result of any "identity theft" first discovered and reported during the policy period; provided that it began to occur subsequent to the effective date of the insured's first policy with us.  The limit of insurance for this coverage is $50,000 per policy period for all insureds combined.  No deductible applies to this coverage.

**G.  Image Restoration and Counseling**

We will reimburse the insured for expenses incurred for image restoration and counseling arising out of "improper acts" by any natural person.

Covered expenses are limited to:

1.  The costs of rehabilitation and counseling for the accused natural person insured, provided the natural person insured is not ultimately found guilty of criminal conduct; this reimbursement to occur after acquittal of the natural person insured;

2.  The costs charged by a recruiter or expended on advertising, for replacing an officer as a result of "improper acts"; and

3.  The costs of restoring the named insured's reputation and consumer confidence through image consulting.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined.  No deductible applies to this coverage.

**H.  Key Individual Replacement Expenses**

We will pay "key individual replacement expenses" if the Chief Executive Officer or Executive Director suffers an "injury" during the policy period which results in the loss of life during the policy period.  The limit of insurance for this coverage is the lesser of $50,000 or ten (10) times the annual premium paid for this policy.  No deductible applies to this coverage.

**I.  Kidnap Expense**

We will pay on behalf of any director or officer of the insured, reasonable fees incurred as a result of the kidnapping of them or their spouse, "domestic partner," parent or child during the policy period.  Coverage will not apply to any kidnapping by or at the direction of any present or former family member of the victim.

Reasonable fees will include:

PI-BELL-1 (11/09)

1.  Fees and costs of independent negotiators;

2.  Interest costs for any loan from a financial institution taken by you to pay a ransom demand or extortion threat;

3.  Travel costs and accommodations incurred by the named insured;

4.  Reward money paid to an informant which leads to the arrest and conviction of parties responsible for loss covered under this insurance; and

5.  Salary, commissions and other financial benefits paid by you to a director or officer.  Such compensation applies at the level in effect on the date of the kidnap and ends upon the earliest of:

    a.  Up to thirty (30) days after their release, if the director or officer has not yet returned to work;

    b.  Discovery of their death;

    c.  One hundred twenty (120) days after the last credible evidence following abduction that they are still alive; or

    d.  Twelve (12) months after the date of the kidnapping.

The limit of insurance for this coverage is $50,000 each policy period for all insureds combined. No deductible applies to this coverage.

**J.  Political Unrest Coverage**

We will reimburse any present director, officer, employee or volunteer of the named insured while traveling outside the United States of America for "emergency evacuation expenses" that are incurred as a result of an incident of "political unrest."  This "political unrest" must occur during the policy period.  No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel.  The limit of insurance for this coverage is $5,000 per covered person, subject to a maximum of $25,000 per policy period for all insureds combined.  No deductible applies to this coverage.

**K.  Temporary Meeting Space Reimbursement**

We will reimburse the insured for rental of meeting space which is necessitated by the temporary unavailability of the insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period.  Coverage will exist only for the renting of temporary meeting space required for meeting with parties who are not insured under this policy.  The limit of insurance for this coverage is $25,000 per policy period for all insureds combined.  No deductible applies to this coverage.

**L.  Terrorism Travel Reimbursement**

We will reimburse any present director or officer of the named insured in the event of a "certified act of terrorism" during the policy period which necessitates that he/she incurs "emergency travel expenses."  The limit of insurance for this coverage is $50,000 per policy period for all insureds combined.  No deductible applies to this coverage.

© 2009 Philadelphia Insurance Companies

**M. Travel Delay Reimbursement**

We will reimburse any present director or officer of the named insured for any "non-reimbursable expenses" they incur as a result of the cancellation of any regularly scheduled business travel on a common carrier. The limit of insurance for this coverage is $1,500 per policy period for all insureds combined. A seventy-two (72) hour waiting period deductible applies to this coverage.

**N. Workplace Violence Counseling**

We will reimburse the insured for emotional counseling expenses incurred directly as a result of a "workplace violence" incident at any of the insured's premises during the policy period. The emotional counseling expenses incurred must have been for:

1.  Your employees who were victims of, or witnesses to the "workplace violence";

2.  The spouse, "domestic partner," parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

3.  Any other person or persons who directly witnessed the "workplace violence" incident.

The limit of insurance for this coverage is $50,000 per policy period for all insureds combined. No deductible applies to this coverage.

**IV. DEFINITIONS**

For the purpose of this endorsement, the following definitions apply:

A.  "Certified act of terrorism" means any act so defined under the Terrorism Risk Insurance Act, and its amendments or extensions.

B.  "Communicable disease" means an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact, or contact with human fluids, waste, or similar agent, such as, but not limited to Meningitis, Measles or Legionnaire's Disease.

C.  "Domestic partner" means any person who qualifies as a domestic partner under the provisions of any federal, state or local statute or regulation, or under the terms and provisions of any employee benefit or other program established by the named insured.

D.  "Emergency evacuation expenses" mean:

1.  Additional lodging expenses;

2.  Additional transportation costs;

3.  The cost of obtaining replacements of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

4.  Translation services, message transmittals and other communication expenses.

provided that these expenses are not otherwise reimbursable.

E.  "Emergency travel expenses" mean:

© 2009 Philadelphia Insurance Companies

PI-BELL-1 (11/09)

1. Hotel expenses incurred which directly result from the cancellation of a scheduled transport by a commercial transportation carrier, resulting directly from and within forty-eight (48) hours of a "certified act of terrorism"; and

2. The increased amount incurred which may result from re-scheduling comparable transport, to replace a similarly scheduled transport canceled by a commercial transportation carrier in direct response to a "certified act of terrorism";

provided that these expenses are not otherwise reimbursable.

F. "Failed donation claim" means written notice to the insured during the policy period of:

1. The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured; or

2. The unemployment or incapacitation of a natural person donor preventing him/her from honoring a prior written pledge of funds or other measurable, tangible property to the insured.

G. "Fundraising expenses" mean deposits forfeited and other charges paid by you for catering services, property and equipment rentals and related transport, venue rentals, accommodations (including travel), and entertainment expenses less any deposits or other fees refunded or refundable to you.

H. "Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of any director or officer (or spouse or "domestic partner" thereof) of the named insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

I. "Identity theft expenses" mean:

1. Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

2. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors; and

3. Loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information.

J. "Improper acts" means any actual or alleged act of:

1. Sexual abuse;

2. Sexual intimacy;

3. Sexual molestation; or

4. Sexual assault;

committed by an insured against any natural person who is not an insured. Such "improper acts" must have been committed by the insured while in his or her capacity as an insured.

K. "Injury" whenever used in this endorsement, other than in Section **III. A. Business Travel**,

PI-BELL-1 (11/09)

means any physical damage to the body caused by violence, fracture or an accident.

**L.** "Key individual replacement expenses" mean the following necessary expenses:

    **1.** Costs of advertising the employment position opening;

    **2.** Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

    **3.** Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up an employment contract.

**M.** "Natural catastrophe" means hurricane, tornado, earthquake or flood.

**N.** "Non-reimbursable expenses" means the following travel-related expenses incurred after a seventy-two (72) hour waiting period, beginning from the time documented on the proof of cancellation, and for which your director or officer produces a receipt:

    **1.** Meals and lodging;

    **2.** Alternative transportation;

    **3.** Clothing and necessary toiletries; and

    **4.** Emergency prescription and non-prescription drug expenses.

**O.** "Political unrest" means:

    **1.** A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

    **2.** A long-term condition of disturbance, turmoil or agitation that makes a foreign country dangerous or unstable for citizens of the United States; or

    **3.** A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff

for which either an alert or travel warning has been issued by the United States Department of State.

**P.** "Principal location" means the headquarters, home office or main location where most business is substantially conducted.

**Q.** "Unforeseeable destruction" means damage resulting from a "certified act of terrorism," fire, collision or collapse which renders all of the insured's "principal locations" completely unusable.

**R.** "Workplace violence" means any intentional use of or threat to use deadly force by any person with intent to cause harm and that results in bodily "injury" or death of any person while on the insured's premises.

© 2009 Philadelphia Insurance Companies

PI-CME-1 (10/09)

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## **CRISIS MANAGEMENT ENHANCEMENT ENDORSEMENT**

Unless otherwise stated herein, the terms, conditions, exclusions and other limitations set forth in this endorsement are solely applicable to coverage afforded by this endorsement, and the policy is amended as follows:

Solely for the purpose of this endorsement: 1) The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. 2) The words "we," "us" and "our" refer to the company providing this insurance.

**I.   SCHEDULE OF ADDITIONAL COVERAGE AND LIMITS**

The following is the Limit of Liability provided by this endorsement. This endorsement is subject to the provisions of the policy to which it is attached.

Crisis Management Expense                                                      $25,000

**II.   CONDITIONS**

**A.  Applicability of Coverage**

Coverage provided by your policy and any endorsements attached thereto is amended by this endorsement where applicable. All other terms and conditions of the policy or coverage part to which this endorsement is attached remain unchanged.

**B.  Limits of Liability or Limits of Insurance**

When coverage is provided by this endorsement and any other coverage form or endorsement attached to this policy, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Liability or Limit of Insurance.

**C.  Claim Expenses**

Coverages provided herein are not applicable to the generation of claim adjustment costs by you; such as fees you may incur by retaining a public adjuster or appraiser.

**III.   ADDITIONAL COVERAGES**

**A.**  We will reimburse you for "crisis management emergency response expenses" incurred because of an "incident" giving rise to a "crisis" to which this insurance applies. The amount of such reimbursement is limited as described in Section **II. CONDITIONS, B. Limits of Liability or Limits of Insurance**. No other obligation or liability to pay sums or perform acts or services is covered.

**B.**  We will reimburse only those "crisis management emergency response expenses" which are incurred during the policy period as shown in the Declarations of the policy to which this coverage is attached and reported to us within six (6) months of the date the "crisis" was initiated.

PI-CME-1 (10/09)

**IV.  DEFINITIONS**

**A.**  "Crisis" means the public announcement that an "incident" occurred on your premises or at an event sponsored by you.

**B.**  "Crisis management emergency response expenses" mean those expenses incurred for services provided by a "crisis management firm."  However, "crisis management emergency response expenses" shall not include compensation, fees, benefits, overhead, charges or expenses of any insured or any of your employees, nor shall "crisis management emergency response expenses" include any expenses that are payable on your behalf or reimbursable to you under any other valid and collectible insurance.

**C.**  "Crisis management firm" means any service provider you hire that is acceptable to us.  Our consent will not be unreasonably withheld.

**D.**  "Incident" means an accident or other event, including the accidental discharge of pollutants, resulting in death or serious bodily injury to three or more persons.

**E.**  "Serious bodily injury" means any injury to a person that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

□

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 **IL 00 21 09 08** □

IL 02 50 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

     The refund will be pro rata if:

     **a.** We cancel; or

     **b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

     The refund may be less than pro rata if the first Named Insured cancels the policy.

     The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

   **2.** Your conviction of a crime increasing any hazard insured against;

   **3.** Discovery of fraud or material misrepresentation on the part of either of the following:

     **a.** You or your representative in obtaining this insurance; or

     **b.** You in pursuing a claim under this policy;

   **4.** Failure to comply with written loss control recommendations;

   **5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

   **6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

   **7.** Your violation or breach of any policy terms or conditions; or

   **8.** Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

   a. We have offered to issue a renewal policy; or

   b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.** The following is added to the **Premiums** Common Policy Condition:

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

© ISO Properties, Inc., 2007

**IL 02 50 09 08**

POLICY NUMBER: PHPK1274724

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| |
|---|
| **Terrorism Premium (Certified Acts) $**     2,828.00 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):** |
| |
| |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (i) Any insured; or

      (ii) Any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

   (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012  CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

  **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

  **(1)** On premises you own or rent;

  **(2)** On ways next to premises you own or rent; or

  **(3)** Because of your operations;

  provided that:

   **(a)** The accident takes place in the "coverage territory" and during the policy period;

   **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

   **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

  **(1)** First aid administered at the time of an accident;

  **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

  **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

  **a. Any Insured**

  To any insured, except "volunteer workers".

  **b. Hired Person**

  To a person hired to do work for or on behalf of any insured or a tenant of any insured.

  **c. Injury On Normally Occupied Premises**

  To a person injured on that part of premises you own or rent that the person normally occupies.

  **d. Workers' Compensation And Similar Laws**

  To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

  **e. Athletics Activities**

  To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

  **f. Products-Completed Operations Hazard**

  Included within the "products-completed operations hazard".

  **g. Coverage A Exclusions**

  Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

  **a.** All expenses we incur.

  **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

  **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

  **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

  **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

  **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

  (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

    (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

  (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

  (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

  (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

© Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – CLUB MEMBERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

WHO IS AN INSURED (Section II) is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf.

Copyright, Insurance Services Office, Inc.,  1984     **Page 1 of 1**     ☐

POLICY NUMBER: PHPK1274724

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Key Bank National Association<br>See Manuscript form for Full Name | 2155 Deercrest Ln &<br>2155 Sycamore View Rd<br>Memphis, TN 38134-8917 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 2

POLICY NUMBER: PHPK1274724

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Key Bank National Association<br>See Manuscript form for Full Name | 6111 Ridgeway Blvd<br>Memphis, TN 38115-5289 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: PHPK1274724

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| The City of Memphis, its officials, agents |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

COMMERCIAL GENERAL LIABILITY
CG 21 46 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to the proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

 Copyright, Insurance Services Office, Inc., 1997 ☐

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006 ☐

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003  **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 21 84 01 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** In the event of any incident of a "certified act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

© ISO Properties, Inc., 2007

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007

CG 21 84 01 08   □

COMMERCIAL GENERAL LIABILITY
CG 24 02 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

COMMERCIAL          GENERAL          LIABILITY          COVERAGE          PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED          OPERATIONS          LIABILITY          COVERAGE          PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If we and the insured do not agree whether coverage is provided under this Coverage Part for a claim made against the insured, then either party may make a written demand for arbitration.

When this demand is made, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

   **1.** Pay the expenses it incurs; and

   **2.** Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county or parish in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

POLICY NUMBER: PHPK1274724

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>Key Bank National Association, as Master Servicer in trust for U.S. Bank National Association, successor by merger to LaSalle Bank Through Certificates, Through Certificates, Series 2007-C1 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008        □

COMMERCIAL GENERAL LIABILITY
CG 24 16 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANOES OR ROWBOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Exclusion **g.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** does not apply to "bodily injury" or "property damage" arising out of any canoe or rowboat owned or used by or rented to the insured.

2. **Section II – Who Is An Insured** is amended to include as an insured any person or organization legally responsible for the use of any such canoe or rowboat you own, provided the actual use is with your permission.

PI-GL-001(8/94)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

1. "Bodily injury," "property damage," or "personal and advertising injury" arising out of or caused by the actual or alleged:

    a. Exposure to or existence of lead, paint containing lead, or any other material or substance containing lead;

    b. Manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of lead, paint containing lead, or any other material or substance containing lead;

    Whether or not the lead is or was at any time airborne as a particulate, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

2. Any legal obligation of any insured for indemnification or contribution due to damages arising out of "bodily injury," "property damage" or "personal and advertising injury" caused by lead, paint containing lead, or any other substance or material containing lead.

3. Any loss, cost, expense or damages, whether direct or consequential, arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, abate, contain, treat or neutralize lead, paint containing lead, or any other substance or material containing lead, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit related to, testing for, monitoring, cleaning up, removing, abating, containing, treating or neutralizing lead, paint containing lead, or any other substance or material containing lead or in any way responding to or assessing the effects of lead.

PI-GL-002 (8/94)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - ASBESTOS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

2. The use of asbestos in constructing or manufacturing any good, product or structure;

3. The removal of asbestos from any good, product or structure; or

4. The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss or "suit," injury or damage or any cost, fine or penalty or for any expense or claim or "suit" related to any of the above.

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987             ☐

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987 **CP 00 90 07 88** ☐

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2006

PI-ULT-007 11.98

# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read this entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words **"you"** and **"your"** refer to the Named Insured shown in the Declarations. The words **"we"**, **"us"** and **"our"** refer to the Company providing this Insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section G., Definitions.**

## A. Coverage

We will pay for direct physical **"loss"** to Covered Property caused by or resulting from any of the Covered Causes of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Form, means the following types of property for which a Limit of Insurance is shown in the Declarations.

**a. Your Business Personal Property,** and similar property of others in your care, custody or control:

**(1)** Located in or on the **"buildings"** described in the Declarations or within 1,000 feet of the described premises;

**(2)** In transit; and

**(3)** Property at locations not specifically identified, including property in the care, custody or control of salespersons, property at exhibitions, and trade shows;

Consisting of the following:

**(a)** Furniture and fixtures;

**(b)** Machinery and equipment;

**(c)** **"Stock"**;

**(d)** **"Fine Arts"**

If the total value of "**Fine Arts**" is over $25,000 they must be listed in a schedule on file with us;

**(e)** **"Computer Property"**;

**(f)** All other personal property owned by you and used in your business;

**(g)** Labor, materials or services furnished or arranged by you on personal property of others;

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

(h) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    (i) Made a part of the **"buildings"** you occupy but do not own; and

    (ii) You acquired or made at your expense but cannot legally remove;

(i) Building glass for which you have a contractual responsibility as tenant, including encasement frames, alarm tape, lettering and ornamentation;

(j) Communication towers, antennas or satellite dishes including their lead-in wiring, masts and guy wires; and

(k) Signs.

**b. "Buildings"** described in the Declarations including:

  **(1)** Building glass;

  **(2)** Completed additions;

  **(3)** Permanently installed;

    **(a)** Fixtures;

    **(b)** Machinery; and

    **(c)** Equipment;

  **(4)** Outdoor fixtures, including awnings;

  **(5)** Fences;

  **(6)** Personal property owned by you that is used to maintain or service the **"buildings"** or their premises, including:

    **(a)** Fire extinguishing equipment;

    **(b)** Outdoor furniture;

    **(c)** Floor coverings;

    **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

    **(e)** Alarm, communication and monitoring systems;

  **(7)** If not covered by other insurance:

    **(a)** Alterations within, or on the exterior of, the existing **"buildings"**;

    **(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making alterations to the existing **"buildings"**;

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**(8)** Foundations of covered **"buildings",** machinery and boilers and foundations of equipment and machinery, whether above or below ground;

**(9)** Underground pipes, flues and drains.

**(10)**Retaining walls that are not part of **"buildings"**;

**(11)**Bridges, roadways, walks, patios, and other paved surfaces, including in-ground pools.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, watercraft, or railroad rolling stock;

**b.** Animals, birds or fish;

**c.** Automobiles held for sale;

**d.** Pilings, piers, wharves or docks;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** **"Money"** or **"securities"**;

**g.** The cost of excavations, grading, filling or backfilling, all except as provided under the Coverage Extensions;

**h.** Land (including land on which the property is located), water, growing crops, standing timber or lawns;

**i.** Property that is covered under another Coverage Form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**j.** Vehicles or self-propelled machines that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse; or

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**k.** The following property while outside of **" buildings"**:

**(1)** Grain, hay, straw or other crops;

**(2)** Trees, shrubs or plants (other than **"stock"** of trees, shrubs or plants) except as provided in the Coverage Extensions;

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

l. Property that is covered under any import or export ocean marine insurance policy;

m. After delivery to customers, property that you have sold under a conditional sale or trust agreement, installment payment or other deferred payment plan;

n. Property of others for which you are responsible as a:

(1) Carrier for hire; or

(2) Carloader, consolidator, transportation broker, freight forwarder, shipping association or arranger of transportation.

o. **"Fine Arts"**, if the total value of such property is greater than $25,000, unless such property is listed in a Schedule on file with us;

p. **"Data"** and **"media"** which cannot be reproduced or replaced with others of the same kind or quality;

q. Property which is intended for installation at a premises you do not own, lease or control, after it has left your premises: and

r. (1) **"Buildings"**; or

(2) Additions to existing **"buildings"**;

In the course of construction, except as provided in the Additional Coverages.

**3. Covered Causes of Loss**

See the Causes of Loss Form.

**4. Additional Coverages**

The most we will pay in any one occurrence for each of the following Additional Coverages is as stated under each, unless a different limit is shown in the Superseding Limits section of the Additional Coverage Summary Declarations.

**a. Debris Removal**

**(1)** We will pay your expenses to remove debris of Covered Property caused by or resulting from any of the Covered Causes of Loss that occur during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical **"loss".**

**(2) (a)** The most we will pay under this Additional Coverage in any one occurrence is 25% of :

**(i)** The amount we pay for the direct physical **"loss"** to Covered Property; plus

**(ii)** The Deductible in this Coverage Form applicable to that **"loss".**

This limit does not increase any applicable Limits of Insurance provided by this Coverage Form.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**(b)** But if either:

    **(i)** The sum of direct physical **"loss"** and Debris Removal expenses exceeds the applicable Limit of Insurance; or

    **(ii)** The Debris Removal expenses exceed the amount payable under the 25% limitation in subparagraph **(2) (a)** above;

    We will pay up to an additional $250,000 for each described premises in any one occurrence.

This limit is in addition to the applicable Limits of Insurance provided by this Coverage Form.

**(3)** This Additional Coverage does not apply to costs to:

  **(a)** Extract **"pollutants"** from land or water; or

  **(b)** Remove, restore or replace polluted land or water.

**b. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from **"loss"** by any of the Covered Causes of Loss, we will pay for any direct physical **"loss"** to that property:

**(1)** While it is being moved or while temporarily stored at another premises; and

**(2)** Only if the **"loss"** occurs within 90 days after the property is first moved.

This Additional Coverage does not increase the Limits of Insurance provided under this Coverage Form.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from any of the Covered Causes of Loss, we will pay for your liability of fire department service charges:

**(1)** Assumed by contract or agreement prior to **"loss"**; or

**(2)** Required by local ordinance.

The most we will pay under this Additional Coverage in any one occurrence is $50,000.

This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

No deductible applies to this Additional Coverage.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**d. Fines for False Alarms**

We will pay any fines your are assessed that you are legally obligated to pay under local or state ordinances, regulations or laws, for any false alarms sent in to police or fire stations or to central monitoring stations by fire, burglar or sprinkler alarms installed to protect Covered Property at described premises or in safes or vaults on described premises.

The most we will pay in any one occurrence is $2,500, but no more than $5,000 in any one policy year. This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

No Deductible applies to this Additional Coverage.

**e. Fire, Sprinkler or Burglar Alarm Upgrade**

In the event of a total **"loss"** to covered fire, sprinkler or burglar alarm systems at described premises caused by or resulting from any of the Covered Causes of Loss, we will pay for the cost to purchase upgraded equipment.

The most we will pay in any one occurrence is $50,000.   This Additional Coverage does not increase the Limits of Insurance provided under this Coverage Form.

**f. Pollutant Clean Up and Removal**

We will pay your expenses to extract **"pollutants"** from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of  the **"pollutants"** is caused by or results from any of the Covered Causes of Loss that occur during the policy period.  The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Causes of Loss occur.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of **"pollutants".** But we will pay for testing which is performed in the course of extracting the **"pollutants"** from the land or water.

The most we will pay under this Additional Coverage for each described premises is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

This Additional Coverage is in addition to the applicable limits of insurance provided by this Coverage Form.

**g. Recharge or Refill of Fire Protection System**

We will pay your expenses to recharge or refill automatic fire protection systems when such systems are discharged as the result of any of the Covered Causes of Loss.

We will not pay recharging or refilling expenses if the discharge occurred while the system was being tested.

No Deductible applies to this Additional Coverage.

This Additional Coverage does not increase the Limits of Insurance provided by this Coverage Form.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**h. Theft Damage to "Buildings"**

We will pay for **"loss"** to **"buildings"** (including equipment within the **"buildings"** used to maintain or service the **"buildings"**) caused by theft or attempted theft of Covered Business Personal Property.

This Additional Coverage is applicable only to the premises where you are a tenant and are liable for such damage.

This Additional Coverage does not increase the Limits of Insurance provided by this Coverage Form.

**i. Brands and Labels**

If your **"stock"** is damaged as a result of any of the Covered Causes of Loss, you have two options when you do not want to sell it under your brand or label even though it has a salvage value. You can:

**(1)** Remove the brand or label and then relabel the **"stock"** to comply with the law; or

**(2)** Label the damaged **"stock"** as salvage but, in doing so, cause no further damage to the damaged **"stock"**.

We will pay the cost of removing and relabeling your **"stock"**.

In either case, we will pay the difference between the salvage value of the damaged **"stock"** with the brand and label attached, and the salvage value of the damaged **"stock"** with the brand and label removed.

This Additional Coverage does not increase the Limits of Insurance provided by this Coverage Form.

**j. Consequential Damage**

We will pay for **"consequential damage"** to covered Business Personal Property caused by or resulting from any of the Covered Causes of Loss.

The most we will pay under this Additional Coverage in any one occurrence is $25,000.

This Additional Coverage does not increase the Limits of Insurance provided by this Coverage Form.

**k. Arson Reward**

In the event that a covered fire **"loss"** was the result of an act of arson, we will reimburse you up to $25,000 for rewards you pay for information leading to conviction of the person or persons responsible for that act of arson. This is additional insurance. The Coinsurance Condition and Deductible do not apply to this Additional Coverage.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**l.  Computer Virus Extraction Expense**

We will pay:

Your expenses to extract a **"computer virus"** from covered electronic data processing **"hardware"**, **"data"** and **"media"**.

The most we will pay under this Coverage Extension in any one occurrence is $2,500.

This Additional Coverage is the only portion of this policy that provides coverage for a **"computer virus"** extraction loss, regardless of any other cause or event that contributes concurrently or in any sequence to the **"loss"**.

This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

**m. Computer Upgrade**

(1) In the event of **"loss"** to covered electronic data processing **"hardware"** caused by or resulting from a Covered Cause of Loss, we will allow you to use the amount we pay you for that  **"loss"** to purchase upgraded electronic data processing **"hardware"**.

(2) If you choose to upgrade that equipment, we will pay for the expenses you incur to convert your  **"data"** and  **"media"** to the upgraded system.

**n. Contract Penalty Clause**

We will pay for any contractual penalties you are required to pay to your customers as a result of any clause in your contracts for failure to timely deliver your product according to the contract terms.  The penalties must result solely from direct physical **"loss"** to Covered Property caused by or resulting from any of the Covered Causes of Loss.

The most we will pay for penalties for all contracts in any one occurrence is $25,000.

This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

**o. Claim Expenses**

In the event of a covered **"loss"**, we will pay for all reasonable expenses you incur at our request to assist us in:

(1) The investigation of a claim; or

(2) The determination of the amount of **"loss"**, such as taking inventory.

We will not pay for:

(1) Expenses to prove that **"loss"** is covered;

(2) Expenses incurred under Loss Condition **E.2., Appraisal**;  or

(3) Expenses billed by and payable to independent or public adjusters.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

The most we will pay under this Additional Coverage is $10,000. This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

No deductible applies to this Additional Coverage.

**p. Worldwide Coverage**

We will pay for **"loss"** to Covered Property:

**(1)** In transit, other than in the custody of a mail carrier, to or from:

**(a)** The United States of America;

   **(b)** Canada; or

   **(c)** Territories or possessions of the United States of America; and

Points worldwide, except those excluded below.  This coverage applies from the delivery of the Covered Property at the point of origin shown in the bill of lading until it is discharged at the destination shown in the bill of lading.

**(2)** At locations outside the Coverage Territory, while it is in the custody of directors, officers or employees who are traveling in the conduct of your business, except in those countries listed below.

**(3)** This Additional Coverage does not apply to property located in, or in transit to, from or within, Afghanistan, Albania, Cambodia, Cuba, El Salvador, Guatemala, Haiti, Honduras, Iraq, Iran, Laos, Lebanon, Libya, Myanmar, Nicaragua, North Korea, Syria, Republics formerly a part of the Union of Soviet Socialist Republics, Vietnam, or Yugoslavia or Republics formerly a part of Yugoslavia.

The most we will pay in any one occurrence is $25,000.  This Additional Coverage is in addition to the applicable Limits of Insurance under this Coverage Form.

**5. Coverage Extensions**

Except as otherwise provided, the following Coverage Extensions apply to property located in or on the **"buildings"** described in the  Declarations or within 1,000 feet of the described premises.

The most we will pay in any one occurrence for each of the following Coverage Extensions is as stated under each, unless a different limit is shown in the Superseding Limits column of the Additional Coverage Summary Declarations.

**a. Newly Acquired Property**

We will pay for direct physical **"loss"** to:

**(1)** **"Buildings"** and business personal property you acquire; and

**(2)** **"Buildings"** which you have had constructed after:

   **(a)** Construction is completed; and

   **(b)** You have accepted the **"buildings"** for occupancy; and

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**(c)** A Certificate of Occupancy has been issued by a civil or regulatory agency or authority that has jurisdiction over the **"buildings"**;

At any premises caused by or resulting from any of the Covered Causes of Loss.

The most we will pay under this Coverage Extension for **"loss"** to **"buildings"** and business personal property combined in any one occurrence is $1,000,000.

This Coverage Extension does not increase the Limit of Insurance for **"buildings"** and business personal property at unspecified premises.

This Coverage Extension for each Newly Acquired or Constructed Property will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 180 days expire after you acquire the property or have completed construction; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or construction is completed.

**b. New Construction**

We will pay for direct physical **"loss"** caused by or resulting from any of the Covered Causes of Loss to:

**(1)** **"Buildings"**; or

**(2)** Additions to existing **"buildings"**;

In the course of construction at any premises, if the construction began after the inception date of this policy. We do not cover **"buildings"** which you construct to sell to others or for the account of others.

The most we will pay in any one occurrence is $500,000.

This Additional Coverage will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 60 days expire after construction begins; or

**(3)** You report the new construction to us;

We will charge you additional premium for values reported from the date construction begins.

This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**c. Personal Effects**

**(1)**   We will pay for direct physical **"loss"** to cellular phones and other portable electronic equipment owned by your employees and used in your business, while they are away from described premises, caused by or resulting from any of the Covered Causes of Loss.  The most we will pay for such **"loss"** is $1,000 for property of any one employee and $2,500 in any one occurrence.

**(2)**   We will pay for direct physical **"loss"** to personal effects of your directors, officers, (partners) and employees, while they are traveling anywhere in the world in the conduct of your business, caused by or resulting from any of the Covered Causes of Loss. The most we will pay for such  **"loss"** in any one occurrence is $1,000.

**(3)**   We will pay for direct physical **"loss"** to personal effects owned by you, your officers, your partners or your employees caused by or resulting from any of the Covered Cause of Loss at a described premises.  The most we will pay for such **"loss"** is $25,000 at any one described premises.

No Deductible applies to this Coverage Extension.

**d. Personal Effects - Spouses**

We will pay for direct physical **"loss"** to personal effects belonging to spouses of your directors, officers or partners when such spouses are traveling with your directors, officers or partners who are traveling anywhere in the world in the conduct of your business, caused by or resulting from any of the Covered Causes of Loss.  The most we will pay for such **"loss"** is $500 for any one person or $1,000 in any one occurrence.

No Deductible applies to this Coverage Extension.

**e. Accounts Receivable**

We will pay the following loss and expenses which are the direct result of  **"loss"** to accounts receivable records caused by or resulting from any of the Covered Causes of Loss:

**(1)** All sums due you from customers, provided you are unable to collect;

**(2)** Interest charges on any loan to offset amounts you are unable to collect pending our payments of these accounts;

**(3)** Collection expenses in excess of your normal collection expenses made necessary because of **"loss"**; and

**(4)** Other reasonable expenses you incur to re-establish your records of accounts receivable following such **"loss"**.

We will not pay for **"loss"** that requires any audit of records or any inventory computation to prove its factual existence.

The most we will pay under this Coverage Extension in any one occurrence is $250,000.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**f. Excavations and Landscaping**

We will pay for:

(1) Your reasonable costs for excavations, grading, filling or backfilling at a described premises made necessary by direct physical **"loss"** to Covered Property caused by or resulting from any of the Covered Causes of Loss; and

(2) Direct physical **"loss"** to your outdoor trees, shrubs and plants, including debris removal expenses, caused by or resulting from any of the following Causes of Loss:

(a) Fire;

(b) Lightning;

(c) Explosion;

(d) Riot or Civil Commotion; or

(e) Aircraft.

This Coverage Extension does not apply to **"stock"** of trees, shrubs and plants.

The most we will pay under this Coverage Extension in any one occurrence is $25,000.

**g. Valuable Papers and Records - Cost of Research**

We will pay your expenses to research, replace, or restore the lost information on **"valuable papers and records"**, including those converted to electronic data format, that are lost or damaged as a result of any of the Covered Causes of Loss.

We will not pay for such expenses arising out of **"loss"** caused by or resulting from errors or omissions in processing or copying **"valuable papers and records"**. But we will pay for expenses arising out of **"loss"** caused by resulting fire or explosion.

The most we will pay under this Coverage Extension in any one occurrence is $250,000 at each described premises.

**h. Guard Dogs**

We will pay for direct death or destruction of a **"guard dog"** caused by or resulting from, or made necessary by, any of the following Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion

(4) Theft;

(5) Vandalism (including shooting or poisoning);

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**(6)** Vehicles; or

**(7)** Collision, upset or overturn of the vehicle transporting the **"guard dog"**.

The Cause of Loss must occur at described premises and during other than normal business hours, or while the **"guard dog"** is being transported to or from the described premises. This Additional Coverage does not apply to death or destruction of **"stock"** held for sale.

The most we will pay for any one **"guard dog"** is $500, but not more than $1,000 in any one occurrence.

No Deductible applies to this Coverage Extension.

**i. Fish in Aquariums**

We will pay for direct death or destruction of fish in aquariums caused by or resulting from, or made necessary by, any of the following Causes of Loss at the described premises:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Interruption of power supply service to the described premises, when the cause of the event occurs more than 1,000 feet from the premises.

This Coverage Extension does not apply to death or destruction of **"stock"** held for sale.

The most we will pay in any one occurrence is $1,000.

No deductible applies to this Coverage Extension.

**j. Ordinance or Law**

If a Covered Cause of Loss occurs to a covered **"building"**, we will pay for:

**(1)** Loss to the undamaged portion of the **"building"** caused by enforcement of any ordinance or law that:

**(a)** Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss; and

**(b)** Regulates the construction or repair of **"buildings"** or establishes zoning or land use requirements at the described premises.

This coverage is included within the Limit of Insurance applicable to the covered **"buildings"** shown in the UltimateCover Program Declarations.

**(2)** The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

Page 13 of 24
Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

The most we will pay for such demolition costs is $250,000 in any one occurrence.

**(3)** We will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law.  If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

However, we will not pay for the increased cost of construction if the **"building"** is not repaired or replaced.

The most we will pay for such increased cost of construction is $250,000 in any one occurrence.

Insurance under this Coverage Extension applies only with respect to an ordinance or law that is in effect at the time of **"loss"**.  Insurance under this Additional Coverage does not apply to costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way to respond to or assess the effects of **"pollutants"**.

**k. Lost Key Replacement**

In the event of the theft or disappearance of a master key to **"buildings"**, rooms or compartments at described premises in which covered Business Personal Property is located, we will pay the actual and necessary expenses you incur to:

**(1)** Replace the key; and

**(2) (a)** Adjust existing locks to accept the new key; or

**(b)** Replace the lock;

Whichever is less.

The most we will pay under this Coverage Extension is $2,500.

No deductible applies to this Coverage Extension.

Each of these Coverage Extensions is additional insurance, unless otherwise indicated.

The Additional Condition, Coinsurance (if applicable to this Coverage Form), does not apply to these Coverage Extensions.

**B. Exclusions**

See the Causes of Loss Form.

**C. Limits of Insurance**

The most we will pay for **"loss"** in any one occurrence:

**1.** For each Additional Coverage is the Limit of Insurance applicable to that Additional Coverage.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

   **2.** For each Coverage Extension is the Limit of Insurance applicable to that Coverage Extension;

   **3.** For **"Fine Arts"** is:

     **a.** $25,000; or

     **b.** The amount shown in the **"Fine Arts"** Schedule on file with us;

     Whichever is greater; and

   **4.** For all other coverage provided under this Coverage Form is the applicable Limit of Insurance shown in the Property Coverage Part Declarations.

**D. Deductible**

We will not pay for **"loss"** in any one occurrence until the amount of the **"loss"** exceeds the Deductible shown in the Declarations or schedules. We will then pay the amount of the **"loss"** in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by any of the following:

   **1.** Coinsurance Condition;

   **2.** Agreed Value Optional Coverage; or

   **3.** Reporting Endorsement.

If more than one Deductible is applicable under this Coverage Form to **"loss"** in any one occurrence, we will only apply the highest applicable Deductible.

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

   **1. Abandonment**

     There can be no abandonment of any property to us.

   **2. Appraisal**

     If we and you disagree on the value of the property or the amount of **"loss"**, either may make written demand for an appraisal of the **"loss"**. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of **"loss"**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

     **a.** Pay its chosen appraiser; and

     **b.** Bear the other expenses of the appraisal and umpire equally.

     If there is an appraisal, we will still retain our right to deny the claim.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

### 3. Duties in the Event of Loss

**a.** You must see that the following are done in the event of **"loss"** to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the **"loss"**. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the **"loss"** occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage by any of the Covered Causes of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

**(5)** At our request, give us complete inventories of the damaged and undamaged property, including quantities, costs, values and amount of **"loss"** claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property and records proving the **"loss"**.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Make no statement that will assume any liability, for any **"loss"** for which we may be liable, without our consent.

**(8)** Promptly send us any legal papers or notices received concerning the **"loss"**.

**(9)** Send us a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(10)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must signed.

### 4. Loss Payment

**a.** In the event of **"loss"** to Covered Property covered by this Coverage form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** We may adjust the **"loss"** with the owners of lost or damaged property if other than you.  If we pay the owners, such payments will satisfy your claims against us for the owners' property.  We will not pay the owners more than their financial interest in the Covered Property.

**e.** We may elect to defend you against suits arising from claims of owners of property.  We will do this at our expense.

**f.** We will pay for covered **"loss"** within 30 days after we receive the sworn proof of loss, if:

    **(1)** You have complied with all of the terms of this coverage form; and

    **(2) (a)** We have reached agreement with you on the amount of **"loss";**

        **(b)** An appraisal award has been made; or

        **(c)** Final judgment has been entered.

**5. a. Recovered Property**

If either you or we recover any property after  **"loss"** settlement, that party must give the other prompt notice.  At your option, the property will be returned to you.  You must then return to us the amount we paid to you for your property.  We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**b. Recoveries**

The following applies only to the Accounts Receivable Coverage Extension:

You will pay us the amount of all recoveries you receive for a loss paid by us.  But any recoveries in excess of the amount we have paid belong to you.

**6. Vacancy**

If the **"building"** where **"loss"** occurs has been vacant for more than 60 consecutive days before that **"loss,"** we will:

**a.** Not pay for any **"loss"** caused by any of the following even if they are Covered Causes of Loss:

    **(1)** Vandalism;

    **(2)** Sprinkler leakage, unless you have protected the system against freezing;

    **(3)** Building glass breakage;

    **(4)** Water damage;

    **(5)** Theft; or

    **(6)** Attempted theft.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

**b.** Reduce the amount we would otherwise pay for the **"loss"** by 15%.

**"Buildings"** are vacant when they do not contain enough business personal property to conduct customary operations.

**7. Valuation**

We will determine the value of Covered Property in the event of **"loss"** as follows:

**a.** At replacement cost (without deduction for depreciation) as of the time of **"loss"**, except as provided in **b., c., d., e., f., g.,** and **h.** below.

    **(1)** We will not pay more for **"loss"** on a replacement costs basis than the least of:

        **(a)** The Limit of Insurance applicable to the lost or damaged property;

        **(b)** The cost to replace the lost or damaged property with other property:

            **(i)**   Of comparable material and quality; and

            **(ii)**   Used for the same purpose; or

        **(c)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

    **(2)** We will not pay on a replacement cost basis for any **"loss"**:

        **(a)** Until the lost or damaged property is actually repaired or replaced; and

        **(b)** Unless the repairs or replacement are made as soon as reasonably possible after the **"loss"**.

    If the repairs or replacement are not made as soon as reasonably possible after the **"loss"**, the value of the property will be actual cash value.

**b.** **"Fine Arts"** as stated in a Schedule on file with us.  If there is no schedule on file, valuation will be at fair market value as of the time of  **"loss"**.

**c.** **"Stock"** as follows:

    **(1)** **"Finished Stock"** you have sold but not delivered, at selling price less discounts and expenses you otherwise would have had;

    **(2)** **"Merchandise"** you have sold but not delivered, at selling price less discounts and expenses you otherwise would have had;

    **(3)** **"Stock in process"** at the cost to replace plus labor and overhead expenses you have actually incurred.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** **"Valuable Papers and Records"** at the cost of:

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

(1) Blank materials for reproducing the records; and

(2) Labor to transcribe or copy the records when there is a duplicate.

f. **"Data"** and **"media"** (other than prepackaged software programs)

The value of the property will be either:

(1) The actual cost of reproducing or replacing the lost or damaged **"data"** and **"media"**, if you actually reproduce or replace them; or

(2) The cost to replace the blank **"media"** with substantially identical property.

g. Accounts Receivable

(1) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of the **"loss"** the following method will be used:

(a) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the **"loss"** occurred; and

(b) Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the **"loss"** occurred or any demonstrated variance from the average for that month.

(2) The following will be deducted from the total amount of accounts receivable, however that amount is established.

(a) The amount of the accounts for which there is no **"loss"**;

(b) The amount of the accounts that you are able to re-establish or collect;

(c) An amount to allow for probable bad debts that you are normally unable to collect; and

(d) All unearned interest and service charges.

h. Tenant's Improvements and Betterments at:

(1) Replacement cost (without deduction for depreciation) of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the **"loss"** to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

(3) Nothing, if others pay for repairs or replacement for your benefit and at no cost to you.

**8. Pair, Sets or Parts**

   **a.** Pair or set.  In case of **"loss"** to any part of a pair or set we may:

   **(1)** Repair or replace any part to restore the pair or set to its value before the **"loss"**; or

   **(2)** Pay the difference between the value of the pair or set before and after the **"loss"**

   **b.** Parts.  In case of  **"loss"** to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**F. General Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

   If a Coinsurance percentage is shown in the Premium Property Program Declarations, the following condition applies.

   **a.** We will not pay the full amount of any **"loss"** if the value of Covered Property (except property in transit and Business Personal Property of others in your care, custody or control) at the time of **"loss"** times the Coinsurance percentage shown in the Declarations is greater than the Limit of Insurance for that property.

   Instead, we will determine the most we will pay using the following steps:

   **(1)** Multiply the value of Covered Property at the time of **"loss"** by the Coinsurance percentage;

   **(2)** Divide the Limit of Insurance of the property by the figure determined in step (1);

   **(3)** Multiply the total amount of  **"loss"**, before the application of any deductible, by the figure determined in step (2); and

   **(4)** Subtract the deductible from the figure determined in step **(3)**.

   We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less.  For the remainder, you will either have to rely on other insurance or absorb the **"loss"** yourself.

   Step **(3)** will not apply to property in transit or to Business Personal Property of others in your care, custody or control.

   **Example No. 1** (Underinsurance)

   When:

   | | |
   |---|---|
   | The value of the property is | $250,000 |
   | The Coinsurance percentage for it is | 80% |
   | The Limit of Insurance for it is | $100,000 |
   | The Deductible is | $    250 |

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

The Amount of **"Loss"** is                                      $ 40,000

**Step (1)**    $250,000    X    80%    =    $200,000
(The minimum amount of insurance to meet your Coinsurance requirements.)
**Step (2)**    $100,000.    ÷    $200,000    =    .50
**Step (3)**    $40,000    X    .50    =    $ 20,000
**Step (4)**    $20,000.    −    $250    =    $ 19,750

We will pay no more than $19,750.  The remaining $20,250 is not covered.

**Example No. 2** (Adequate Insurance)

When:

The Value of the Property is                              $250,000
The Coinsurance percentage for it is                          80%
The Limit of Insurance for it is                          $200,000
The Deductible is                                        $     250
The Amount of **"Loss"** is                              $  40,000

**Step (1)**    $250,000    X    80%    =    $200,000
(The minimum amount of insurance to meet your Coinsurance requirements.)
**Step (2)**    $200,000    ÷    $200,000    =    1.00
**Step (3)**    $40,000    X    1.00    =    $ 40,000
**Step (4)**    $40,000    −    $250    =    $ 39,750

We will cover the $39,750 **"loss"** in excess of the Deductible.  No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

The Value of the property is:
   **"Building"** at Premises No. 1                    $ 75,000
   **"Building"** at Premises No. 2                    $100,000
Personal Property at Premises No. 2                   $ 75,000
                                                       $250,000
The Coinsurance percentage for it is                        90%
The Limit of Insurance for:
**"Buildings'"** and Personal Property at
   Premises No. 1 and 2.                              $180,000
The Deductible is                                     $   1,000
The Amount of **" Loss"** is:
**"Building"** at Premises No. 2                      $ 30,000
Personal Property at Premises No. 2                   $ 20,000
                                                       $ 50,000

**Step (1)**    $250,000    X    90%    =    $225,000
(The minimum amount of Insurance to meet your Coinsurance requirements)
**Step (2)**    $180,000    ÷    $225,000    =    .80
**Step (3)**    $50,000    X    .80    =    $ 40,000
**Step (4)**    $40,000    −    $1,000    =    $ 39,000

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

We will pay no more than $39,000.  The remaining $11,000  is not covered.

**2. Mortgage Holders**

   **a.** The term mortgage holder includes trustee.

   **b.** We will pay for covered **"loss"** to **"buildings"** to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

   **c.** The mortgage holder has the right to receive **"loss"** payment even if the mortgage holder has started foreclosure or similar action on the **"buildings"**.

   **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the mortgage holder will still have the right to receive **"loss"** payment if the mortgage holder:

     **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

     **(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

   All other terms of this Coverage Form will then apply directly to the mortgage holder.

   **e.** If we pay the mortgage holder for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form;

     **(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

     **(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest.  In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   **f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

     **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

     **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**3. Other Insurance**

   The following is added to subparagraph **2.** of Commercial Property Condition **G., Other Insurance**:

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

But this provision does not apply to **"loss"** to personal property of others in your care, custody or control.

**4. Policy Period, Coverage Territory**

Commercial Property Condition **H., Policy Period, Coverage Territory**, is replaced by the following:

**a.** We cover **"loss"** commencing:

**(1)** During the Policy Period shown in the UltimateCover Program Declarations; and

**(2)** Within the Coverage Territory.

**b.** The Coverage Territory is:

**(1)** The United States of America; and

**(2)** Canada.

**G. Definitions**

**1. "Buildings"** means buildings or structures.

**2. "Computer Virus"** means unauthorized intrusive codes or programming that are entered into covered **"hardware"**, **"data"** and **"media"** and interrupt your operations at the described premises.

**3. "Consequential Damage"** means the decrease in value to the undamaged part or parts of Business Personal Property which is unmarketable as a complete product.

**4. Computer Property** means **"data"**, **"hardware"** and **"media"**.

**a. "Data"** means facts, figures, concepts, or instructions that are in a form that can be communicated, interpreted or processed by computer systems (including records of accounts receivable and **"valuable papers and records"** when they are converted into **"data"** form).

**b. "Hardware"** means a network of equipment and components which accept information, process and analyze that information according to a plan, and then produces the desired results. It includes disk and tape drives, printers, display screens, remote terminals, computers which control manufacturing or production equipment or machinery, and computerized telephone systems, but it does not include computer **"media"**, or manufacturing or production machinery or equipment.

**c. "Media"** means materials on which **"data"** can be recorded, such as magnetic tapes, disk packs, paper tapes and cards.

**"Data"** and **"media"** include pre-packaged software and any instructional manuals for that software.

**5. "Fine Arts"** means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property, of rarity, historical value or artistic merit.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-007 11.98

6. **"Guard Dog"** means a dog that is trained to protect premises from intruders and kept on your premises when they are not open for business.

7. **"Loss"** means accidental loss or damage.

8. **"Money"** means:

   a. Currency, coins and bank notes whether or not in current use; and

   b. Travelers' checks, register checks and money orders held for sale to the public.

9. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or containment, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

10. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either **"money"** or other property and includes:

   a. Tokens, tickets, revenue and other stamps whether or not in current use;

   b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

   But does not include **"money"**.  Lottery tickets held for sale are not **"securities"**.

11. **"Stock"** means **"finished stock"**, **"merchandise"** and **"stock in process"**.

   a. **"Finished Stock** means property that you manufactured or processed which in the ordinary course of your business is ready for packing, shipment or sale.

   b. **"Merchandise"** means goods kept for sale by you that are not the product of your manufacturing or processing operations.

   c. **"Stock in Process"** means raw materials that have undergone any processing or manufacturing but which has not become **"finished stock."**

12. **"Valuable Papers and Records"** means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

   But **"valuable papers and records"** does not mean **"money"** or  **"securities"**.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-008 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAUSES OF LOSS FORM

Words and phrases that appear in quotation marks have special meaning.  Refer to Section **F., Definitions.**

**A. Covered Causes of Loss**

    **Covered Causes of Loss** means Risks of Direct Physical Loss unless the **"loss"** is:

      **1.** Excluded in Section **B., Exclusions**; or

      **2.** Limited in Section **C., Limitations;**

    that follow.

**B. Exclusions**

    **1.** We will not pay for **"loss"** caused directly or indirectly by any of the following.  Such **"loss"** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **"loss"**.

      **a. Ordinance or Law**

        The enforcement of any ordinance or law:

        **(1)** Regulating the construction, use or repair of any property; or

        **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

      **b. Earth Movement**

        Any earth movement (other than sinkhole collapse or volcanic action, eruption, explosion or effusion), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting.  But if  **"loss"** by fire or explosion results, we will pay for that resulting **"loss"**.

        This exclusion does not apply to the following:

        **(1)** Business Personal Property in transit or away from premises you own, lease, rent or control;

        **(2)** The Accounts Receivable Coverage Extension;  or

        **(3)** The Valuable Papers and Records - Cost to Research Coverage Extension.

      **c. Governmental Action**

        Seizure or destruction of property by order of governmental authority.

        But we will pay for **"loss"** caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Policy.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

### d. Nuclear Hazard

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause.

But we will pay for direct **"loss"** caused by resulting fire if the fire would be covered under this Policy.

### e. Utility Services

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if **"loss"** by a Covered Cause of Loss results, we will pay for that resulting **"loss"**.

This exclusion does not apply to the following Coverages:

(1) Accounts Receivable Coverage Extension;

(2) **"Computer Property"** for interruption of electrical power supply when the cause of such event occurs within 1,000 feet of the premises; or

(3) Utility Services - Direct Damage Additional Coverage Extension.

### f. War and Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### g. Flood

**"Flood"**.

But if **"loss"** by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting **"loss"**.

This exclusion does not apply to the following:

(1) Business Personal Property in transit or away from premises you own, lease rent or control;

(2) The Accounts Receivable Coverage Extension; or

(3) The Valuable Papers and Records - Cost to Research Coverage Extension.

**2.** We will not pay for **"loss"** caused by or resulting from any of the following:

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-008 11.98

a. Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if **"loss"** by fire or explosion results, we will pay for that resulting **"loss".**

This exclusion does not apply to **"computer property"** .

b. Delay, loss of use, loss of market or any other consequential loss.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.  This exclusion does not apply to **"computer property "**.

d. **(1)** Wear and tear;

    **(2)** Rust, corrosion, fungus, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    **(3)** Smog;

    **(4)** Settling, cracking, shrinking or expansion;

    **(5)** Insects, birds, rodents or other animals;

    **(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.  However, this does not apply to any resulting **"loss"** caused by elevator collision;

    **(7)** Dampness or dryness of atmosphere; changes in or extremes of temperature; freezing or thawing.

Paragraphs **d. (3), (4), (6)** and **(7)** do not apply to **"computer property"**.

But if **"loss"** by the **"specified causes of loss"** or building glass breakage results, we will pay for that resulting **"loss".**

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.  But if **"loss"** by fire or combustion explosion results, we will pay for that resulting **"loss"**.  We will also pay for **"loss"** caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air-conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    **(1)** You do your best to maintain heat in the **"buildings";** or

    **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

This exclusion does not apply to **"computer property"**.

g. Dishonest or criminal acts by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

    **(1)** Acting alone or in collusion with others; or

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-008 11.98

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to:

**(1)** Acts of destruction by your employees (but theft by employees is not covered);

**(2)** Property in the custody of a carrier for hire (provided the carrier is not in collusion with you, any of your partners, directors, trustees or authorized representatives); or

**(3)** **"Loss"** to **"computer property"** (provided your employees are not in collusion with you, any of your partners, directors, trustees or authorized representatives).

**h.** Rain, snow, ice or sleet to personal property in the open.

**i.** Collapse, except as provided below in the Additional Coverage for Collapse. But if **"loss"** by any of the Covered Causes of Loss results at the described premises, we will pay for that resulting **"loss"**.

**j.** Discharge, dispersal, seepage, migration, release or escape of **"pollutants"**.

But we will pay for resulting **"loss"** to Covered Property when the discharge, dispersal, seepage, migration, release or escape of **"pollutants"** is caused by any of the **"specified causes of loss"**.

**k.** Processing or work upon the property.

But we will pay for **"loss"** caused by resulting fire or explosion.

This exclusion does not apply to **"computer property"**.

**l.** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of **"money"**, **"securities"** or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**m.** Bookkeeping, accounting or billing errors or omissions.

**n.** Unexplained disappearance. This exclusion does not apply to **"computer hardware"**.

**o.** Shortage found upon taking inventory or audit. This exclusion does not apply to **"computer hardware"**.

**p.** Electrical or magnetic disturbance or erasure of records of accounts receivable that have been converted into electronic format, when such **"loss"** is caused by or results from:

**(1)** Programming errors or faulty machine instructions;

**(2)** Faulty installation or maintenance of data processing equipment or component parts; or

**(3)** An occurrence that took place more than 1,000 feet from your premises.

But we will pay for such **"loss"** caused by lightning.

**q.** Voluntary parting with any property by you, or by anyone else to whom you have entrusted the property, if induced to do so by any fraudulent scheme, trick, device or false pretense.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-008 11.98

    **r.** Changes in your electrical power supply to **"computer property"**, including interruption of power, power surge, blackout or brownout, if the cause of such event originates more than 1,000 feet from any of the premises listed in the Declarations, Extension of Declarations or attached Schedule.

**3.** We will not pay for **"loss"** caused by or resulting from any of the following.  But if **"loss"** by a Covered Cause of Loss results, we will pay for that resulting **"loss."**

    **a.** Weather conditions.  But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the **"loss"**.

    **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    **c.** Faulty, inadequate or defective:

        **(1)** Planning, zoning, development, surveying, siting;

        **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)** Materials used in repair, construction, renovation or remodeling; or

        **(4)** Maintenance;

        Of part or all of any property on or off the described premises.

        This exclusion does not apply to **"computer property"**.

**4.  Special Exclusions**

    The following provisions apply only to the Coverage Forms listed below, if these Coverage Forms are attached to this Policy.

    **a.  Business Income, Extra Expenses and Business Income with Extra Expenses Coverage Forms.**

        We will not pay for:

        **(1)** Any loss caused by or resulting from:

            **(a)** Damage or destruction of finished **"stock"**; or

            **(b)** The time required to reproduce finished **"stock"**.

        This exclusion does not apply to Extra Expenses.

        **(2)** Any loss caused by or resulting from direct physical **"loss"** to communication antennas or satellite dishes, including their lead-in wiring masts or towers.

        **(3)** Any increase of loss caused by or resulting from:

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-008 11.98

(a) Delay in rebuilding, repairing or replacing the property or resuming **"operations"** due to interference at the premises of the rebuilding, repair or    replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract.  But if the suspension, lapse or cancellation is directly caused by the suspension of **"operations"**, we will cover such loss that affects your Business Income during the **"period of restoration"**.

(4) Any Extra Expenses caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the **"period of restoration"**.

(5) Any other consequential loss.

(6) Any loss caused by or resulting from error in machine programming or instructions to any machine.

(7) Any loss caused by or resulting from direct physical **"loss"** to property at locations not specifically identified.  This exclusion does not apply to coverage provided to Business Income from Dependent Property - Additional Coverage.

(8) Any loss caused by or resulting from direct physical **"loss"** to:

(a) **"Buildings"**; or

(b) Additions to existing **"buildings"**;

That are under the course of construction.

**b. Legal Liability Coverage Form**

(1) The following Exclusions do not apply to insurance under this Coverage Form;

(a) Paragraph **B. 1.a.**, Ordinance or Law;

(b) Paragraph **B. 1. c.**, Governmental Action;

(c) Paragraph **B. 1.d.**, Nuclear Hazard;

(d) Paragraph **B.1.e.**, Utility Service; and

(e) Paragraph B. 1. f., War and Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or **"suit"** or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.

(b) **Nuclear Hazard**

We will not defend any claim or **"suit"** or pay any damages, **"loss"**, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-008 11.98

**C. Limitations**

1. We will not pay for **"loss"** to:

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for **"loss"** to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any **"buildings"**, or to personal property in **"buildings"**, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The **"buildings"** first sustain damage by a Covered Cause of Loss to their roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The **"loss"** is caused by or results from thawing of snow, sleet or ice on the **"buildings"**.

2. For **"loss"** by theft, the following types of property are covered only up to the Limits of Insurance shown:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This Limit of Insurance does not apply to jewelry and watches worth $100 or less per item.

   c. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

3. We will not pay for **"loss"** to property in transit caused by or resulting from breakage; leakage; contamination; being spotted, discolored, molded, rusted, frosted, rotted, soured, steamed or changed in flavor.

   But we will pay for such **"loss"** caused by: the **"specified causes of loss"**; an accident to the vehicle or railroad car carrying the Covered Property; burning, collision or crashing of the aircraft carrying the Covered Property; or the stranding, sinking, burning or collision of the vessel carrying the Covered Property.

**D. Additional Coverage - Collapse**

We will pay for **"loss"** caused by or resulting from risks of direct physical **"loss"** involving collapse of **"buildings"** or any part of **"buildings"** caused only by one or more of the following:

1. The **"specified causes of loss"** or breakage of building glass, all only as insured against in this form;

2. Hidden decay;

3. Hidden insect or vermin damage;

4. Weight of people or personal property;

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

**5.** Weight of rain that collects on a roof.

We will not pay for **"loss"** to the following types of property, if otherwise covered in this Policy, under items **2., 3., 4.** and **5.,** unless the **"loss"** is a direct result of the collapse of **"buildings";** outdoor communication antennas or satellite dishes, including their masts or lead - in wiring; awnings, gutters and downspouts; yard fixtures; outdoor swimming pools; fences; beach or diving platforms or appurtenances; retaining walls.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

This Additional Coverage will not increase the Limits of Insurance provided by this Policy.

## E. Additional Coverage Extensions

### 1. Water Damage, Other Liquids, Powder or Molten Material Damage

If **"loss"** caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of **"buildings"** to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system;  or

**b.** Is directly caused by freezing.

This Coverage Extension will not increase the Limits of Insurance provided by this Policy.

### 2. Utility Services - Direct Damage

We will pay for direct physical **"loss"** caused by interruption of utility service to the described premises.  The interruption must be caused by direct physical **"loss"** by any of the Covered Causes of Loss to the following types of property not on the described premises supplying water, communication and power to the described premises.

**Power Supply Services**, meaning the following types of property supplying electricity, steam or gas to the described premises.

**a.** Utility Generating Plants;

**b.** Switching stations;

**c.** Substations;

**d.** Transformers; and

**e.** Transmission Lines.

But not overhead transmission lines.

**Water Supply Services**, meaning the following types of property supplying water to the described premises.

**a.** Pumping Stations; and

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-008 11.98

**b.** Water mains.

**Communication Supply Services**, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**a.** Communication transmission lines, including optical fiber transmission lines;

**b.** Coaxial cables; and

**c.** Microwave radio relays except satellites.

But not overhead transmission lines.

The most we will pay under this Coverage Extension for the sum of all occurrences at all premises during each separate 12 month period of this policy is $10,000.

This Coverage Extension is in addition to the Limits of Insurance provided by this Policy.

**3. Voluntary Parting**

We will pay for **"loss"** caused by or resulting from voluntary parting with any property by you, or by anyone else to whom you have entrusted the property, if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay under this Coverage Extension in any one occurrence is $10,000.

This Coverage Extension will not increase the Limits of Insurance provided by this Policy.

**F. Definitions**

**1. "Buildings"** means buildings or structures.

**2. "Computer Property"** means **"data"**, **"hardware"** and **"media"**.

**a. "Data"** means facts, figures, concepts or instructions that are in a form that can be communicated, interpreted, or processed by computer systems (including records of accounts receivable and **"valuable papers and records"** when they are converted into **"data"** form).

It does not include Valuable Papers unless converted to electronic form.

**b. "Hardware"** means a network of equipment and components which accept information, process and analyze that information according to a plan, and then produces the desired results. It includes disk and tape drives, printers, display screens, remote terminals, computers which control manufacturing or production equipment or machinery, and computerized telephone systems, but it does not include computer **"media"**, or production machinery or equipment.

**c. "Media"** means materials on which **"data"** can be recorded, such as magnetic tapes, disk packs, paper tapes and cards.

**3. "Flood"** means:

**a.** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; or

PI-ULT-008 11.98

**b.** Mudslide or mudflow.

**4. "Loss"** means accidental loss or damage.

**5. "Money"** means:

   **a.** Currency, coins and bank notes whether or not in current use; and

   **b.** Travelers' checks, register checks and money orders held for sale to the public.

**6. "Operations"** means:

   **a.** Business activities you perform at the described premises; and

   **b.** The tenantability of the described premises, if coverage for Business Income including **"Rental Value"** or **"Rental Value"** applies.

**7. "Period Of Restoration"** means the period of time that:

   **a.** Begins:

      **(1)** 72 hours after the time of direct physical **"loss"** for Business Income Coverage; or;

      **(2)** Immediately after the time of direct physical **"loss"** for Extra Expense Coverage;

   **b.** Ends on the earlier of:

      **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(2)** The date when business is resumed at a new permanent location.

   **c.** **"Period of Restoration"** does not include any increased period required due to the enforcement of any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **"pollutants"**.

      The expiration date of this policy will not cut short the **"period restoration"**.

**8. "Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**9. "Rental Value"** means

   **a.** Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you; and

   **b.** Amount of all charges which are legal obligation of the tenant(s) and which would otherwise be your obligations; and

   **c.** Fair rental value of any portion of the described premises which is occupied by you.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-008 11.98

10. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either **"money"** or other property and includes:

   a. Tokens, tickets, revenue and other stamps whether or not in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue;

   But does not include **"money"**. Lottery tickets held for sale are not **"securities"**.

11. **"Specified Causes of Loss"** means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This Cause of Loss does not include:

   (1) The cost of filling sinkholes; or

   (2) Sinking or collapse of land man-made underground cavities.

   b. Falling objects does not include **"loss"** to:

   (1) Personal property in the open; or

   (2) The interior of **"buildings"**, or property inside **"buildings"**, unless the roof or an outside wall of the **"buildings"** is first damaged by a falling object.

   c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

12. **"Stock"** means **"finished stock"**, **"merchandise"**, and **"stock in process"**.

   a. **"Finished Stock"** means property that you manufactured or processed which in the ordinary course of your business is ready for packing, shipment or sale.

   b. **"Merchandise"** means goods kept for sale by you that are not the product of your manufacturing or processing operations.

   c. **"Stock in Process"** means raw materials that have undergone any processing or manufacturing but which have not become **"finished stock."**

13. **"Suit"** includes an arbitration proceeding to which you must submit or submit with our consent.

Includes copyrighted material of ISO Commercial Risk Services, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1990

PI-ULT-009 11.98

# CRIME COVERAGE FORM

Various provisions in the policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words **"you"** and **"your"** refer to the Named Insured shown in the Declarations.  The words **"we"**, **"us"**, and **"our"** refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **G., Definitions**.

## Coverage Summary

|  | Basic Limit Of Insurance | Basic Deductible | Superseding Limit Of Insurance | Superseding Deductible |
|---|---|---|---|---|
| **"Money"** and **"Securities"**- Inside the Premises | $ 5,000 | $ 500 | $ | $ |
| **"Money"** and **"Securities"**- Outside the Premises | $ 5,000 | $500 | $ | $ |
| Money Orders and Counterfeit Paper Currency | $ 5,000 | $500 | $ | $ |
| Kidnap and Ransom – Extortion | $25,000 | None |  |  |

## Optional Coverage Summary

|  | Limit of Insurance | Deductible |
|---|---|---|
| Forgery or Alteration | $ | $ |
| Computer Fraud | $ | $ |
| Employee Dishonesty | $ | $ |

☐  If this box is marked with **"X", Clause B.1.f., Coverage Extension - Welfare and Pension Plan ERISA Compliance**, applies to this policy.

## A. Coverage

### 1. Money and Securities

Covered Property, as used in this Coverage, means **"money"** and **"securities"** used in your business.

**a.** We will pay for all loss to Covered Property:

**(1) Inside the Premises** - while at a bank or savings institution, at the **"premises"**, or

**(2) Outside the Premises** - in transit between any of the places described in **1. a. (1)** above; resulting directly from:

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

PI-ULT-009 11.98

    **(a)**  Theft, meaning any act of stealing;

    **(b)**  Disappearance; or

    **(c)**  Destruction.

**b.** In addition to the General Exclusions of this Form, we will not pay for loss:

    **(1)** Resulting from accounting or arithmetical errors or omissions.

    **(2)** Due to the giving or surrendering of property in any exchange or purchase.

    **(3)** Of property contained in any money-operated device unless the amount of money deposited in it is recorded by a continuous recording instrument in the device.

    **(4)** Resulting from any dishonest or criminal act committed by any of your **"employees"**, directors, trustees or authorized representatives:

        **(a)**  Acting alone or in collusion with other persons; or

        **(b)**  While performing services for you or otherwise.

    **(5)** Of Covered Property after it has been transferred or surrendered to a person or place outside the **"premises"** or a bank or savings institution on the basis of unauthorized instructions.

    **(6)** Resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**c. Additional Definition**

As respects Money and Securities coverage:

**"Occurrence"** means an:

    **(1)**  Act or series of related acts involving one or more persons; or

    **(2)**  Act or event, or a series of related acts or events not involving any person.

**2. Money Orders and Counterfeit Paper Currency**

We will pay for loss due to the acceptance in good faith of Covered Property.

**a.** Covered Property, as used in this Coverage, means:

    **(1)** Any post office or express money order accepted in exchange for merchandise, **"money"** or services issued, or purporting to have been issued, by any post office or express company, if such money order is not paid upon presentation; or

    **(2)** Counterfeit United States or Canadian paper currency accepted in the regular course of business.

**b.** In addition to the General Exclusions of this Form, we will not pay for loss resulting from:

    **(1)** Any dishonest or criminal act committed by any of your **"employees"**, directors, trustees or authorized representatives:

PI-ULT-009 11.98

    **(a)** Acting alone or in collusion with other persons; or

    **(b)** While performing services for you or otherwise.

  **(2)** Your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**c. Additional Definition**

As respects Money Orders and Counterfeit Paper Currency coverage:

**"Occurrence"** means an:

**(1)** Act or series of related acts involving one or more persons; or

**(2)** Act or event, or a series of related acts or events not involving any person.

**3. Kidnap and Ransom-Extortion**

  **a.** We will pay for loss of **"money"**, **"securities"**, and **"property other than money and securities"** resulting directly from **"extortion"**.  Loss is covered only if:

    **(1)** The threat to do bodily harm is first communicated to you during the Policy Period; and

    **(2)** The capture or alleged capture takes place within the United States of America, U.S. Virgin Islands, Puerto Rico, Canal Zone or Canada.

  **b.** We will not pay for loss as specified below:

    **(1)** Loss resulting from any dishonest or criminal acts committed by any of your **"employees"**, directors, trustees, or authorized representatives:

      **(a)** Acting alone or in collusion with other persons; or

      **(b)** While performing services for you or otherwise.

  **(2)** Loss of property surrendered before a reasonable effort has been made to report an extortionist's demand to all the following:

    **(a)** An associate;

    **(b)** The Federal Bureau of Investigation; and

    **(c)** Local law enforcement authorities.

  **c.** The most we will pay for loss in any one **"occurrence"** is $25,000.

  **d. Additional Definition**

**"Occurrence"** means an:

**(1)** Act or series of related acts involving one or more persons; or

**(2)** Act or event, or a series of related acts or event not involving any person.

PI-ULT-009 11.98

## B. Optional Coverages

The following Optional Coverages for which a limit of insurance is shown in the Coverage Summary are also provided:

### 1. Employee Dishonesty

We will pay for loss of, and loss from damage to Covered Property resulting directly from **"employee dishonesty"**.

**a.** Covered Property, as used in this Coverage, means **"money"**, **"securities"** and **"property other than money and securities"**.

**b.** We will pay for loss caused by any **"employee"** while temporarily outside the Coverage Territory for a period not more than 90 days.

**c.** We will not pay for:

(1) Loss caused by any **"employee"** of yours, or predecessor in interest of yours, for whom similar prior insurance has been canceled and not reinstated since the last such cancellation.

(2) Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(a) An inventory computation; or

(b) A profit and loss computation.

### d. Additional Condition

The following applies in addition to the General Conditions of this Form.

**Cancellation As To Any Employee**

This insurance is canceled as to any **"employee"**:

(1) Immediately upon discovery by:

(a) You; or

(b) Any of your partners, officers or directors not in collusion with the **"employee"**;

of any dishonest act committed by that **"employee"** whether before or after becoming employed by you.

(2) On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing.

The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

PI-ULT-009 11.98

**e. Additional Definition**

As respects Employee Dishonesty coverage:

**"Occurrence"** means all loss caused by, or involving, one or more **"employees"**, whether the result of a single act or series of acts.

**f. Coverage Extension - Welfare and Pension Plan ERISA Compliance**

In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):

**(1)"Employee"** also includes any natural person who is:

   **(a)** A trustee, officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare or Pension Benefit Plan ( hereinafter called Plan) insured under this insurance; and

   **(b)** Your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.

**(2)**If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)**If the Insured first named in the Declarations is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

**(4)**If two or more Plans are insured under this insurance, any payment we make for loss:

   **(a)** Sustained by two or more Plans; or

   **(b)** Of commingled funds or other property of two or more Plans;

   that arises out of one **"occurrence"** is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required for each such Plan under ERISA provisions bears to the total of those amounts.

**(5)**The Deductible provision does not apply to loss sustained by any Plan subject to ERISA which is insured under this insurance.

**2. Forgery or Alteration**

We will pay for loss due to forgery or alteration of, on or in any Covered Property.

**a.** Covered Property, as used in this Coverage, means **"Covered Instruments"** that are:

   **(1)**Made or drawn by or drawn upon you;

   **(2)**Made or drawn by one acting as your agent;

   or that are purported to have been so made or drawn.

PI-ULT-009 11.98

**b.** If you are sued for refusing to pay any **"covered instrument"** on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount we will pay is in addition to the Limit of Insurance applicable to this insurance.

**c.** The following applies in addition to the General Exclusions of this Form:

We will not pay for loss resulting from any dishonest or criminal act committed by any of your **"employees"**, directors, trustees or authorized representatives:

**(1)** Acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise.

**d. Additional Conditions**

The following apply in addition to the General Conditions of this Form.

**(1) Facsimile Signatures**

We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**(2) Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**(3) Territory**

We will cover loss you sustain anywhere in the world.

The **Territory General Condition** does not apply to this Optional Coverage.

**e. Additional Definition**

As respects Forgery or Alteration coverage:

**"Occurrence"** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

**3. Computer Fraud**

We will pay for loss of, and loss from damage to, Covered Property resulting directly from **"computer fraud"**.

**a.** Covered Property, as used in this Coverage means **"money"**, **"securities"** and **"property other than money and securities"**.

**b.** The following apply in addition to the General Exclusions of this Form:

**(1)** We will not pay for loss resulting from any dishonest or criminal act committed by any of your **"employees"**, directors, trustees or authorized representatives:

**(a)** Acting alone or in collusion with other persons; or

PI-ULT-009 11.98

    **(b)** While performing services for you or otherwise.

    **(2)** We will not pay for loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

        **(a)** An inventory computation; or

        **(b)** A profit and loss computation.

**d. Additional Conditions**

    The following apply in addition to the General Conditions of this Form:

    **(1) Duties in the Event of Loss**

        If you have reason to believe that any loss of, or loss from damage to, Covered Property involves a violation of law, you must notify the police.

    **(2) Special Limit of Insurance for Specified Property**

        For loss of, or loss from damage to, manuscripts, drawings or records of any kind the most we will pay in any one **"occurrence"** is the lesser of the following amounts:

        **(a)** The cost of reconstructing such property or reproducing any information contained in such property; or

        **(b)** $5,000.

**e. Additional Definition**

    As respects Computer Fraud coverage:

    **"Occurrence"** means an:

    **(1)** Act or series of related acts involving one or more persons; or

    **(2)** Act or event, or a series of related acts or events not involving any person.

**C. Limits of Insurance**

    The most we will pay for loss in any one **"occurrence"** is the applicable Limit of Insurance shown in the Coverage Summary.

    **1.** For Money and Securities Coverage and for Money Orders and Counterfeit Paper Currency Coverage, the applicable Limit of Insurance is:

        **a.** The Basic Limit of Insurance shown in the Coverage Summary if no Superseding Limit of Insurance is shown; or

        **b.** The Superseding Limit of Insurance if a Superseding Limit is shown in the Coverage Summary.

    **2.** For all other coverages, the applicable Limit of Insurance is the Limit shown in the Coverage Summary.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

PI-ULT-009 11.98

### D. Deductible

We will not pay for loss in any one **"occurrence"** until the amount of the loss exceeds the applicable Deductible shown in the Coverage Summary.  We will then pay the amount of the loss in excess of the applicable Deductible, up to the applicable Limit of Insurance.

1. For Money and Securities Coverage and for Money Orders and Counterfeit Paper Currency Coverage, the applicable Deductible is:

   **a.** The Basic Deductible shown in the Coverage Summary if no Superseding Deductible is shown; or

   **b.** The Superseding Deductible if a Superseding Deductible is shown in the Coverage Summary.

2. For all other coverages, the applicable Deductible is the Deductible shown in the Coverage Summary.

### E. General Exclusions

Unless stated otherwise in any Coverage or Optional Coverage in this Crime  Coverage Form, the Policy Declarations or an endorsement, the following General Exclusions apply to all Coverages and Optional Coverages provided by this Coverage Form.

We will not pay for loss as specified below:

1. **Acts Committed by You or Your Partners**

   Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

2. **Governmental Action**

   Loss resulting from seizure or destruction of property by order of governmental authority.

3. **Indirect Loss**

   Loss that is an indirect result of any act or **"occurrence"** covered by this insurance including, but not limited to, loss resulting from;

   **a.** Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

   **b.** Payment of damages of any type for which you are legally liable.  But, we will pay compensatory damages arising directly from a loss covered under this insurance.

   **c.** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

4. **Legal Expenses**

   Expenses related to any legal action, except as provided in the Forgery or Alteration Optional Coverage, if the coverage is applicable to this policy.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

**5. Nuclear**

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**6. War and Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**F. General Conditions**

Unless stated otherwise in any Coverage or Optional Coverage in this Crime Coverage Form, the Policy Declarations or an endorsement, the following General Conditions apply to all Coverages and Optional Coverages provided by this Coverage Form:

**1. Concealment, Misrepresentation or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This insurance;

**b.** The Covered Property;

**c.** Your interest in the Covered property; or

**d.** A claim under this insurance.

**2. Consolidation - Merger**

If through consolidation or merger with, or purchase of assets of, some other entity:

**a.** Any additional persons become **"employee"**; or

**b.** You acquire the use and control of any additional **"premises"**;

Any insurance afforded for **"employees"** or **"premises"** also applies to those additional **"employees"** and **"premises"**, but only if you:

**a.** Give us written notice within 30 days thereafter; and

**b.** Pay us an additional premium.

**3. Discovery Period for Loss**

We will pay only for covered loss discovered no later than one year from the end of the policy period.

**4. Duties in the Event of Loss**

After you discover a loss or a situation that may result  in loss of, or loss from damage to, Covered Property you must:

a. Notify us as soon as possible.

b. Submit to examination under oath at our request and give us a signed statement of your answers.

c. Give us a detailed, sworn proof of loss within 120 days.

d. Cooperate with us in the investigation and settlement of any claim.

**5. Joint Insured**

a. If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next named Insured will become the first Named Insured.

b. If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

c. An **"employee"** of any Insured is considered to be an **"employee"** of every Insured.

d. If this insurance or any of its coverages is canceled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**6. Legal Action Against Us**

You may not bring any legal action against us involving loss:

a. Unless you have complied with all the terms of this insurance;

b. Until 90 days after you have filed proof of loss with us; and

c. Unless brought within 2 years from the date you discover the loss.

**7. Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

**8. Loss Covered Under More Than One Coverages Of This Insurance**

If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

a. The actual amount of loss; or

b. The sum of the limits of insurance applicable to those coverages.

**9. Loss Sustained During Prior Insurance**

a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

the time within which to discover loss had expired, we will pay for it under this insurance, provided:

**(1)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

**b.** The insurance under this Condition is part of, not in addition to the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

**(1)** This insurance as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**10. Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate**

If any loss is covered:

**a.** Partly by this insurance; and

**b.** Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

The most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

**11. Non-Cumulation of Limit of Insurance**

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance accumulates from year to year or period to period.

**12. Other Insurance**

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity.  However, if limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity.  However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Coverage Summary or the Optional Coverage Summary.

**13. Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

**a.** That you own or hold; or

**b.** For which you are legally liable.

However, this insurance is for your benefit only.  It provides no rights or benefits to any other person or organization.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

PI-ULT-009 11.98

**14. Policy Period**

   **a.** The Policy Period is shown in the Common Policy Declarations.

   **b.** Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**15. Records**

   You must keep records of all Covered Property so we can verify the amount of any loss.

**16. Recoveries**

   **a.** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

     **(1)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

     **(2)** Then to us, until we are reimbursed for the settlement made;

     **(3)** Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

   **b.** Recoveries do not include any recovery:

     **(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

     **(2)** Of original **"securities"** after duplicates of them have been issued.

**17. Territory**

   This insurance covers only acts committed or events occurring within the United States of America, and Canada.

**18. Transfer of Your Rights of Recovery Against Others to Us**

   You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**19. Valuation - Settlement**

   **a.** Subject to the applicable Limit of Insurance provision we will pay for:

     **(1)** Loss of **"money"** but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

       **(a)** At face value in the **"money"** issued by that country; or

       **(b)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

     **(2)** Loss of **"securities"** but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

(a) Pay the value of such **"securities"** or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those **"securities"**; or

(b) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **"securities"**.  However, we will be liable only for the payment of so much of the cost of the bond having a penalty not exceeding the lesser of the;

    (i)   Value of the **"securities"** at the close of business on the day the loss was discovered; or

    (ii)  Limit of Insurance.

(3) Loss of, or loss from damage to, **"property other than money and securities"** or loss from damage to the **"premises"** for not more than the;

    (a)  Actual cash value of the property on the day the loss was discovered;

    (b)  Cost of repairing the property or **"premises"**; or

    (c)  Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

b. We may, at our option, pay for loss of, or loss from damage to, property other than **"money"**:

    (1) In the **"money"** of the country in which the loss occurred; or

    (2) In the United States of America dollar equivalent of the **"money"** of   the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

    (3) Any property that we pay for or replace becomes our property.

## G. Definitions

1. **"Banking Premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. **"Computer Fraud"** means **"theft"** of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the **"premises"** or **"banking premises"** to a person (other than a **"messenger"**) outside those **"premises"** or to a place outside those **"premises"**.

3. **"Covered Instrument(s)"** means checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **"money"**.

4. **"Employee"** means:

    a. Any natural person:

        (1) While in your service (and for 30 days after termination of service); and

PI-ULT-009 11.98

**(2)** Whom you compensate directly by salary, wages or commissions; and

**(3)** Whom you have the right to direct and control while performing services for you; or

**b.** Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however any such person while having care and custody of property outside the **"premises"**.

But **"employee"** does not mean any:

**a.** Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**b.** Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

5. **"Employee Dishonesty"** means only dishonest acts committed by an **"employee"**, whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

   **a.** Cause you to sustain loss; and also

   **b.** Obtain financial benefit (other than employee benefits earned in the normal course of employment, including:  salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

      **(1)** The **"employee"**; or

      **(2)** Any person or organization intended by the **"employee"** to receive that benefit.

6. **"Extortion"** means the surrender of property away from the premises as a result of a threat communicated to you to do bodily harm to you or an **"employee"**, or to a relative or invitee of either, who is, or allegedly is, being held captive.

7. **"Messenger"** means you, any of your partners or any **"employee"** while having care and custody of the property outside the **"premises"**.

8. **"Money"** means:

   **a.** Currency, coins and bank notes in current use and having a face value; and

   **b.** Travelers checks, register checks and money orders held for sale to the public.

9. **"Premises"** means the interior of that portion of any building you occupy in conducting your business.

10. **"Property Other Than Money and Securities"** means any tangible property other than **"money"** and **"securities"** that has intrinsic value but does not include any property listed in any Crime Coverage Form as Property Not Covered.

11. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either **"money"** or other property and includes:

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include **"money"**.

**12. "Theft"** means any act of stealing.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc. 1989, 1994

PI-ULT-010 11.98

# BUSINESS INCOME WITH EXTRA EXPENSE COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **"you"** and **"your"** refer to the Named Insured shown in the Declarations.  The words **"we", "us",** and **"our"** refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.   Refer to Section **G., Definitions.**

## COVERAGE SUMMARY

**Coinsurance Option** - applicable only if a percentage is indicated in the schedule below.

| Premises No. | Building No. | Coverage | Limit of Insurance | Coinsurance Option |
|---|---|---|---|---|
| | | SEE SCHEDULE | | |

**Optional Coverages** - applicable only when entries are made in the schedule below.

| Premises No. | Building No. | Monthly Limit Of Indemnity (Fraction) | Maximum Period of Indemnity (X) | Extended Period of Indemnity (Days) | Agreed Value Amount ($) |
|---|---|---|---|---|---|
| | | | SEE SCHEDULE | | |

### A. Coverage

1.  Coverage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Coverage Summary above:

    **(i)**   Business Income including **"Rental Value."**
    **(ii)**  Business Income other than **"Rental Value."**
    **(iii)** **"Rental Value."**

    If option **(i)** above is selected, the term Business Income will include **"Rental Value."** If option **(iii)** above is selected, the term Business Income will mean **"Rental Value"** only.

    If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Form apply separately to each.

    We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your **"operations"** during the **"period of restoration"**.  The suspension must be caused by direct physical **"loss"** to property at the premises described in the Declarations, or within 1000  feet of the premises, caused by or resulting from any of the Covered Causes of Loss.

**Page 1 of 13**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

If you are a tenant, your premises is the portion of **"buildings"** which you rent, lease or occupy, including:

**a.** All routes within **"buildings"** to gain access to the described premises; and

**b.** Your personal property within 1000 feet of the premises.

**2. Business Income**

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

**3. Covered Causes Of Loss**

See the Causes of Loss Form.

**4. Additional Coverages**

**a. Extra Expenses**

Extra Expenses means necessary expenses you incur during the **"period of restoration"** that you would not have incurred if there had been no direct physical **"loss"** to property caused by or resulting from any of the Covered Causes of Loss.

**(1)** We will pay any Extra Expenses to avoid or minimize the suspension of business and to continue **"operations"**:

**(a)** At the described premises; or

**(b)** At replacement premises or at temporary locations, including:

**(i)** Relocation expenses; and

**(ii)** Costs to equip and operate the replacement or temporary locations.

**(2)** We will pay any Extra Expenses to minimize the suspension of business if you cannot continue **"operations"**.

**(3)** We will pay any Extra Expenses to:

**(a)** Repair or replace any property; or

**(b)** Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**b. Civil Authority**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

We will pay for the actual loss of Business Income you sustain and necessary Extra Expenses you incur caused by action of Civil Authority that prohibits access to the described premises due to direct physical **"loss"** to property other than at the described premises caused by or resulting from any of the Covered Causes of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

**(1)** Three consecutive weeks after the time of that action; or

**(2)** When your Business Income coverage ends;

Whichever is later.

**c. Alterations**

We will pay for the actual loss of Business Income you sustain due to direct physical **"loss"** at the described premises caused by or resulting from any of the Covered Causes of Loss to:

**(1)** Alterations within, or on the exterior of, existing **"buildings"**; and

**(2)** Machinery, equipment, supplies or building materials located on or within 1000 feet of the described premises and used in the alterations.

If such direct physical **"loss"** delays the start of **"operations,"** the **"period of restoration"** will begin on the date **"operations"** would have begun if the direct physical **"loss"** had not occurred.

This Additional Coverage does not increase the Limits of Insurance provided by this Coverage Form.

**d. Extended Business Income**

**(1)** Business Income Other Than **"Rental Value"**

If the necessary suspension of your **"operations"** produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except **"finished stock"**) is actually repaired, rebuilt or replaced and **"operations"** are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your **"operations"** with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical **"loss"** had occurred; or

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

**Page 3 of 13**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Causes of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical **"loss"** at the described premises caused by or resulting from any of the Covered Causes of Loss.

This Additional Coverage does not increase the Limits of Insurance provided by this Coverage Form.

**(2) "Rental Value"**

If the necessary suspension of your **"operations"** produces a **"Rental Value"** loss payable under this policy we will pay for the actual loss of **"Rental Value"** you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

    **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the **"Rental Value"** that would have existed if no direct physical **"loss"** had occurred; or

    **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of **"Rental Value"** incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of **"Rental Value"** must be caused by direct physical **"loss"** at the described premises caused by or resulting from any of the Covered Cause of Loss.

This Additional Coverage does not increase the Limits of Insurance provided by this Coverage Form.

**e. Business Income From Dependent Properties**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your **"operations"** during the **"period of restoration."** The suspension must be caused by direct physical **"loss"** at the premises of a **"contingent business property,"** caused by or resulting from any of the Covered Causes of Loss. But we will not pay more than .3% (three-tenths of one percent) of the Business Income Limit of Insurance for each day's suspension of **"operations"** at a described premises due to direct physical **"loss"** at any one **"contingent business property."**

The most we will pay under this Additional Coverage is $25,000 per Policy Period.

This Additional Coverage does not apply to **"contingent business property"** for which you have more specific insurance either under this policy or another.

This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

**Page 4 of 13**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**f.  Property in Transit**

In the event of direct physical **"loss"** to your property in transit within the Coverage Territory, we will pay for loss of Business Income and necessary Extra Expenses you incur during the **"period of restoration"**.

This Additional Coverage does not apply to property of others in your care, custody or control.

The most we will pay under this Additional Coverage in any one occurrence is $25,000.  This Additional Coverage is in addition to the applicable Limits of Insurance provided by this Coverage Form.

**5.  Coverage Extension - Newly Acquired Premises**

**a.**  We will pay for the actual loss of Business Income you sustain caused by direct physical **"loss"** to property at any premises you acquire other than at fairs or exhibitions.

**b.**  The most we will pay for loss under this Extension is 10% of the sum of the Limits of Insurance for Business Income shown in the Coverage Summary above, but not more than $100,000 at each premises.

**c.**  Insurance under this Coverage Extension for each newly acquired premises will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days expire after you acquire the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Coverage Extension is in addition to the applicable Limits of Insurance provided by this Coverage Form.  The Coinsurance Option does not apply to this Extension.

**B. Exclusions**

See the Causes of Loss Form.

**C. Limits of Insurance**

The most we will pay for loss in any one occurrence:

**1.**  For the Business Income From Dependent Properties Additional Coverage is the Limit of Insurance applicable to that Additional Coverage.

**2.**  For the Coverage Extension - Newly Acquired Premises is the Limit of Insurance applicable to that Coverage Extension.

**3.**  For all other coverages provided under this Coverage Form is the applicable Limit of Insurance shown in the Coverage Summary.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**D. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of net income and operating expenses or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of net income and operating expenses or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Loss**

You must see that the following are done in the event of loss:

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the direct physical **"loss"**. Include a description of the property involved.

**c.** As soon as possible, give us a description of how, when and where the direct physical **"loss"** occurred.

**d.** Take all reasonable steps to protect the Covered Property from further damage by any of the Covered Causes of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

**e.** As often as may be reasonably required, permit us to inspect the property proving the **"loss"** and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**f.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**g.** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**h.** Cooperate with us in the investigation or settlement of the claim.

**i.** If you intend to continue your business, you must resume all or part of your **"operations"** as quickly as possible.

## 3. Loss Determination

**a.** The amount of Business Income loss will be determined based on:

**(1)** The net income of the business before the direct physical **"loss"** occurred;

**(2)** The likely net income of the business if no physical **"loss"** occurred, but not including any net income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume **"operations"** with the same quality of service that existed just before the direct physical **"loss"**; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b. Resumption of Operations**

We will reduce the amount of your Business Income loss to the extent you can resume your **"operations,"** in whole or in part, by using:

**(1)** Damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere;

**(2)** Any other available sources of material or outlets for your product.

**c.** If you do not resume **"operations,"** or do not resume **"operations"** as quickly as possible, we will pay based on the length of time it would have taken to resume **"operations"** as quickly as possible.

## 4. Loss Payment

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if:

**a.** You have complied with all of the terms applicable to this Coverage Form; and

**b. (1)** We have reached agreement with you in the amount of loss; or

**(2)** An appraisal award has been made.

## E. Coinsurance Option

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

1. If a Coinsurance percentage is shown in the Coverage Summary, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

   a. We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

      (1) The Coinsurance percentage shown in the Coverage Summary; times

      (2) The sum of:

         (a) The net income (net profit or loss before income taxes); and

         (b) All operating expenses, including payroll expenses;

         that would have been earned or incurred (had no **"loss"** occurred) by your **"operations"** at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

   b. Instead, we will determine the most we will pay using the following steps:

      (1) Multiply the net income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

      (2) Divide the Limit of Insurance for the described premises by the figure determined in step **1**; and

      (3) Multiply the total amount of loss by the figure determined in step **2**.

      We will pay the amount determined in step **3.**, or the Limit of Insurance, whichever is less.  For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

2. In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

   a. Prepaid freight - outgoing;

   b. Returns and allowances;

   c. Discounts;

   d. Bad debts;

   e. Collection expenses;

   f. Cost of raw stock and factory supplies consumed (including transportation charges);

   g. Cost of merchandise sold (including transportation charges);

   h. Cost of other supplies consumed (including transportation charges);

   i. Cost of services purchased from outsider (not employees) to resell, that do not continue under contract;

   j. All ordinary payroll expense excluded (if form **PI-ULT-011** is attached); and

**Page 8 of 13**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**k.** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion--not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When:

The net income and operating expenses for the
12 months following the inception, or last
previous anniversary date, of this policy at the
described premises would have been                   $400,000
The Coinsurance percentage is                              50%
The Limit of Insurance is                               $150,000
The amount of loss is                                    $ 80,000

Step **1:**   $400,000   X   50%      =   $200,000
(the minimum amount of insurance to meet your Coinsurance requirements)
Step **2:**   $150,000   ÷   $200,000   =   .75
Step **3:**   $ 80,000   X   .75      =   $60,000

We will pay no more than $60,000.  The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When:

The net income and operating expenses for the
12 months following the inception, or last
previous anniversary date, of this policy at the
described premises would have been                   $400,000
The Coinsurance percentage is                              50%
The Limit of Insurance is                               $200,000
The amount of loss is                                    $ 80,000

Step **1:**   $400,000   X   50%      =   $200,000
(the minimum amount of insurance to meet your Coinsurance requirements)
Step **2:**   $200,000   ÷   $200,000   =   1.00
Step **3:**   $80,000   X   1.00      =   $80,000

We will pay the $80,000 loss.  No penalty applies.

This condition does not apply to the Extra Expense Additional Coverage.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**3. Agreed Value**

  **a.** To activate this Optional Coverage:

    **(1)** A Business Income Work Sheet must be made a part of this policy and must show financial data for your **"operations"**:

      **(a)** During the 12 months prior to the date of the Business Income  Work Sheet; and

      **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

    **(2)** An Agreed Value must be shown in the Coverage Summary.  The Agreed Value should be at least equal to:

      **(a)** The Coinsurance percentage shown in the Coverage Summary; multiplied by

      **(b)** The amount of Net Income and Operating Expenses for the following 12  months you report on the Business Income Work Sheet.

  **b.** The Coinsurance Option is suspended until the expiration date of this policy.

  **c.** We will reinstate the Coinsurance Option automatically if you do not submit a new Business Income Work  Sheet and Agreed Value:

    **(1)** Within 12 months of the effective date of this Optional Coverage; or

    **(2)** When you request a change in your Business Income Limit of Insurance.

  **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

    **(1)** The Business Income Limit of Insurance; divided by

    **(2)** The Agreed Value.

  **Example:**

  When:

| | |
|---|---|
| The Limit of Insurance is | $100,000 |
| The Agreed Value is | $200,000 |
| The amount of loss is | $ 80,000 |

| | | | | | |
|---|---|---|---|---|---|
| Step (a) | $100,000 | ÷ | $200,000 | = | .50 |
| Step (b) | .50 | X | $80,000 | = | $40,000 |

  We will pay $40,000.  The remaining $40,000 is not covered.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**F. Optional Coverages**

If shown in the Coverage Summary, the following Optional Coverages apply separately to each item.

**1. Maximum Period of Indemnity**

   **a.** The Coinsurance Option does not apply at the described premises to which this Optional Coverage applies.

   **b.** The most we will pay for loss of Business Income is the lesser of:

      **(1)** The amount of loss sustained during the 120 days immediately following the beginning of the **"period of restoration"**; or

      **(2)** The Limit of Insurance shown in the Coverage Summary.

**2. Monthly Limit of Indemnity**

   **a.** The Coinsurance Option does not apply at the described premises to which this Optional Coverage applies.

   **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the **"period of restoration"** is:

      **(1)** The Limit of Insurance, multiplied by

      **(2)** The fraction shown in the Coverage Summary for this Optional Coverage.

      **Example:**

      When:
      The Limit of Insurance is          $120,000
      The fraction shown in the Coverage
      Summary for this Optional Coverage is   1/4
      The most we will pay for loss in each period
      of 30 consecutive days is:
      $120,000    X      ¼     =     $30,000

      If, in this example, the actual amount of loss is:

      Days  1-30       $40,000
      Days 31-60      20,000
      Days 61-90      <u>30,000</u>
                     $90,000

      We will pay:

      Days  1-30       $30,000
      Days 31-60      20,000
      Days 61-90      <u>30,000</u>
                     $80,000

      The remaining $10,000 is not covered.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**3. Extended Period of Indemnity**

Under paragraph **A.4.d.**, Extended Business Income, the number "60" in subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Coverage Summary for this Optional Coverage.

**G. Definitions**

1. **"Buildings"** means buildings or structures.

2. **"Contingent Business Property"** means property operated by others you depend on to:

   a. Deliver materials or services (other than water, communications or power supply) to you, or to others for your account (Contributing Locations);

   b. Accept your products or services (Recipient Locations); or

   c. Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations).

   3. **"Finished Stock"** means stock you have manufactured.

   **"Finished Stock"** also includes whiskey and alcoholic products being aged.

   **"Finished Stock"** does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

4. **"Loss"** means accidental loss or damage.

5. **"Operations"** means:

   a. Business activities you perform at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income including **"Rental Value"** or **"Rental Value"** applies.

6. **"Period of Restoration"** means the period of time that:

   a. Begins:

      **(1)** 72 hours after the time of direct physical **"loss"** for Business Income coverage; or

      **(2)** Immediately after the time of direct physical **"loss"** for Extra Expense coverage; and

   b. Ends on the earlier of:

      **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(2)** The date when business is resumed at a new permanent location.

   c. **"Period of Restoration"** does not include any increased period required due to the enforcement of any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**Page 12 of 13**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

PI-ULT-010 11.98

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **"pollutants."**

The expiration date of this policy will not cut short the **"period of restoration."**

7. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

8. **"Rental Value"** means:

a. Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you; and

b. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

c. Fair rental value of any portion of the described premises which is occupied by you.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994.

**Policy Number:**   PHPK1274724
**Named Insured:**   6111 Ridgeway Group LLC

## SCHEDULE -
## Business Income with Extra Expense Coverage Form

### Coverage Summary

**Coinsurance Option** – applicable only if a percentage is indicated in the schedule below.

| Premises No. | Building No. | Coverage | Limit of Insurance | Coinsurance Option |
|---|---|---|---|---|
| 0001 | 0001 | (i) | BKT # 2 | 100% |
| 0001 | 0002 | (i) | BKT # 2 | 100% |
| 0001 | 0003 | (i) | BKT # 2 | 100% |
| 0001 | 0004 | (i) | BKT # 2 | 100% |
| 0001 | 0005 | (i) | BKT # 2 | 100% |
| 0001 | 0006 | (i) | BKT # 2 | 100% |
| 0001 | 0007 | (i) | BKT # 2 | 100% |
| 0001 | 0008 | (i) | BKT # 2 | 100% |
| 0001 | 0009 | (i) | BKT # 2 | 100% |
| 0001 | 0010 | (i) | BKT # 2 | 100% |
| 0001 | 0011 | (i) | BKT # 2 | 100% |
| 0001 | 0012 | (i) | BKT # 2 | 100% |
| 0001 | 0013 | (i) | BKT # 2 | 100% |
| 0001 | 0014 | (i) | BKT # 2 | 100% |
| 0001 | 0015 | (i) | BKT # 2 | 100% |
| 0001 | 0016 | (i) | BKT # 2 | 100% |
| 0001 | 0017 | (i) | BKT # 2 | 100% |
| 0001 | 0018 | (i) | BKT # 2 | 100% |
| 0001 | 0019 | (i) | BKT # 2 | 100% |
| 0001 | 0020 | (i) | BKT # 2 | 100% |
| 0001 | 0021 | (i) | BKT # 2 | 100% |
| 0001 | 0022 | (i) | BKT # 2 | 100% |
| 0001 | 0023 | (i) | BKT # 2 | 100% |
| 0001 | 0024 | (i) | BKT # 2 | 100% |
| 0001 | 0025 | (i) | BKT # 2 | 100% |
| 0001 | 0026 | (i) | BKT # 2 | 100% |
| 0001 | 0027 | (i) | BKT # 2 | 100% |
| 0001 | 0028 | (i) | BKT # 2 | 100% |
| 0001 | 0029 | (i) | BKT # 2 | 100% |
| 0001 | 0030 | (i) | BKT # 2 | 100% |
| 0001 | 0031 | (i) | BKT # 2 | 100% |
| 0001 | 0032 | (i) | BKT # 2 | 100% |
| 0001 | 0033 | (i) | BKT # 2 | 100% |
| 0001 | 0034 | (i) | BKT # 2 | 100% |
| 0001 | 0035 | (i) | BKT # 2 | 100% |
| 0001 | 0036 | (i) | BKT # 2 | 100% |
| 0001 | 0037 | (i) | BKT # 2 | 100% |
| 0001 | 0038 | (i) | BKT # 2 | 100% |
| 0001 | 0039 | (i) | BKT # 2 | 100% |
| 0001 | 0040 | (i) | BKT # 2 | 100% |

ULT10COV 11.98

Policy Number:   PHPK1274724
Named Insured:  6111 Ridgeway Group LLC

## SCHEDULE -
## Business Income with Extra Expense Coverage Form

### Coverage Summary

**Coinsurance Option** – applicable only if a percentage is indicated in the schedule below.

| Premises No. | Building No. | Coverage | Limit of Insurance | Coinsurance Option |
|---|---|---|---|---|
| 0001 | 0041 | (i) | BKT # 2 | 100% |
| 0001 | 0042 | (i) | BKT # 2 | 100% |
| 0001 | 0043 | (i) | BKT # 2 | 100% |
| 0001 | 0044 | (i) | BKT # 2 | 100% |
| 0001 | 0045 | (i) | BKT # 2 | 100% |
| 0001 | 0046 | (i) | BKT # 2 | 100% |
| 0001 | 0047 | (i) | BKT # 2 | 100% |
| 0001 | 0048 | (i) | BKT # 2 | 100% |
| 0001 | 0049 | (i) | BKT # 2 | 100% |
| 0001 | 0050 | (i) | BKT # 2 | 100% |
| 0001 | 0051 | (i) | BKT # 2 | 100% |
| 0001 | 0052 | (i) | BKT # 2 | 100% |
| 0001 | 0053 | (i) | BKT # 2 | 100% |
| 0001 | 0054 | (i) | BKT # 2 | 100% |
| 0001 | 0055 | (i) | BKT # 2 | 100% |
| 0001 | 0056 | (i) | BKT # 2 | 100% |
| 0001 | 0057 | (i) | BKT # 2 | 100% |
| 0001 | 0058 | (i) | BKT # 2 | 100% |
| 0001 | 0059 | (i) | BKT # 2 | 100% |
| 0001 | 0060 | (i) | BKT # 2 | 100% |
| 0001 | 0061 | (i) | BKT # 2 | 100% |
| 0001 | 0062 | (i) | BKT # 2 | 100% |
| 0001 | 0063 | (i) | BKT # 2 | 100% |
| 0001 | 0064 | (i) | BKT # 2 | 100% |
| 0001 | 0065 | (i) | BKT # 2 | 100% |
| 0001 | 0066 | (i) | BKT # 2 | 100% |
| 0001 | 0067 | (i) | BKT # 2 | 100% |
| 0001 | 0068 | (i) | BKT # 2 | 100% |
| 0001 | 0069 | (i) | BKT # 2 | 100% |
| 0001 | 0070 | (i) | BKT # 2 | 100% |
| 0001 | 0071 | (i) | BKT # 2 | 100% |
| 0001 | 0072 | (i) | BKT # 2 | 100% |
| 0001 | 0073 | (i) | BKT # 2 | 100% |
| 0001 | 0074 | (i) | BKT # 2 | 100% |
| 0002 | 0001 | (i) | BKT # 4 | 100% |
| 0002 | 0002 | (i) | BKT # 4 | 100% |
| 0002 | 0003 | (i) | BKT # 4 | 100% |
| 0002 | 0004 | (i) | BKT # 4 | 100% |
| 0002 | 0005 | (i) | BKT # 4 | 100% |
| 0002 | 0006 | (i) | BKT # 4 | 100% |

ULT10COV 11.98

**Policy Number:**  PHPK1274724
**Named Insured:**  6111 Ridgeway Group LLC

## SCHEDULE -
## Business Income with Extra Expense Coverage Form

### Coverage Summary

**Coinsurance Option** – applicable only if a percentage is indicated in the schedule below.

| Premises No. | Building No. | Coverage | Limit of Insurance | Coinsurance Option |
|---|---|---|---|---|
| 0002 | 0007 | (i) | BKT # 4 | 100% |
| 0002 | 0008 | (i) | BKT # 4 | 100% |
| 0002 | 0009 | (i) | BKT # 4 | 100% |

ULT10COV 11.98

**Policy Number:** PHPK1274724
**Named Insured:** 6111 Ridgeway Group LLC

## SCHEDULE -

## Business Income with Extra Expense Coverage Form

### Coverage Summary

**Optional Coverages** – applicable only when entries are made in the schedule below.

| Premises No. | Building No. | Monthly Limit Of Indemnity (Fraction) | Maximum Period of Indemnity (X) | Extended Period Of Indemnity (Days) | Agreed Value Amount ($) |
|---|---|---|---|---|---|
| 0001 | 0001 | NONE | | 180 | |
| 0001 | 0002 | NONE | | 180 | |
| 0001 | 0003 | NONE | | 180 | |
| 0001 | 0004 | NONE | | 180 | |
| 0001 | 0005 | NONE | | 180 | |
| 0001 | 0006 | NONE | | 180 | |
| 0001 | 0007 | NONE | | 180 | |
| 0001 | 0008 | NONE | | 180 | |
| 0001 | 0009 | NONE | | 180 | |
| 0001 | 0010 | NONE | | 180 | |
| 0001 | 0011 | NONE | | 180 | |
| 0001 | 0012 | NONE | | 180 | |
| 0001 | 0013 | NONE | | 180 | |
| 0001 | 0014 | NONE | | 180 | |
| 0001 | 0015 | NONE | | 180 | |
| 0001 | 0016 | NONE | | 180 | |
| 0001 | 0017 | NONE | | 180 | |
| 0001 | 0018 | NONE | | 180 | |
| 0001 | 0019 | NONE | | 180 | |
| 0001 | 0020 | NONE | | 180 | |
| 0001 | 0021 | NONE | | 180 | |
| 0001 | 0022 | NONE | | 180 | |
| 0001 | 0023 | NONE | | 180 | |
| 0001 | 0024 | NONE | | 180 | |
| 0001 | 0025 | NONE | | 180 | |
| 0001 | 0026 | NONE | | 180 | |
| 0001 | 0027 | NONE | | 180 | |
| 0001 | 0028 | NONE | | 180 | |
| 0001 | 0029 | NONE | | 180 | |
| 0001 | 0030 | NONE | | 180 | |
| 0001 | 0031 | NONE | | 180 | |
| 0001 | 0032 | NONE | | 180 | |
| 0001 | 0033 | NONE | | 180 | |
| 0001 | 0034 | NONE | | 180 | |
| 0001 | 0035 | NONE | | 180 | |
| 0001 | 0036 | NONE | | 180 | |
| 0001 | 0037 | NONE | | 180 | |
| 0001 | 0038 | NONE | | 180 | |
| 0001 | 0039 | NONE | | 180 | |
| 0001 | 0040 | NONE | | 180 | |

ULT10OPT  11.98

**Policy Number:** PHPK1274724
**Named Insured:** 6111 Ridgeway Group LLC

## SCHEDULE -
## Business Income with Extra Expense Coverage Form

### Coverage Summary

**Optional Coverages** – applicable only when entries are made in the schedule below.

| Premises No. | Building No. | Monthly Limit Of Indemnity (Fraction) | Maximum Period of Indemnity (X) | Extended Period Of Indemnity (Days) | Agreed Value Amount ($) |
|---|---|---|---|---|---|
| 0001 | 0041 | NONE | | 180 | |
| 0001 | 0042 | NONE | | 180 | |
| 0001 | 0043 | NONE | | 180 | |
| 0001 | 0044 | NONE | | 180 | |
| 0001 | 0045 | NONE | | 180 | |
| 0001 | 0046 | NONE | | 180 | |
| 0001 | 0047 | NONE | | 180 | |
| 0001 | 0048 | NONE | | 180 | |
| 0001 | 0049 | NONE | | 180 | |
| 0001 | 0050 | NONE | | 180 | |
| 0001 | 0051 | NONE | | 180 | |
| 0001 | 0052 | NONE | | 180 | |
| 0001 | 0053 | NONE | | 180 | |
| 0001 | 0054 | NONE | | 180 | |
| 0001 | 0055 | NONE | | 180 | |
| 0001 | 0056 | NONE | | 180 | |
| 0001 | 0057 | NONE | | 180 | |
| 0001 | 0058 | NONE | | 180 | |
| 0001 | 0059 | NONE | | 180 | |
| 0001 | 0060 | NONE | | 180 | |
| 0001 | 0061 | NONE | | 180 | |
| 0001 | 0062 | NONE | | 180 | |
| 0001 | 0063 | NONE | | 180 | |
| 0001 | 0064 | NONE | | 180 | |
| 0001 | 0065 | NONE | | 180 | |
| 0001 | 0066 | NONE | | 180 | |
| 0001 | 0067 | NONE | | 180 | |
| 0001 | 0068 | NONE | | 180 | |
| 0001 | 0069 | NONE | | 180 | |
| 0001 | 0070 | NONE | | 180 | |
| 0001 | 0071 | NONE | | 180 | |
| 0001 | 0072 | NONE | | 180 | |
| 0001 | 0073 | NONE | | 180 | |
| 0001 | 0074 | NONE | | 180 | |
| 0002 | 0001 | NONE | | 180 | |
| 0002 | 0002 | NONE | | 180 | |
| 0002 | 0003 | NONE | | 180 | |
| 0002 | 0004 | NONE | | 180 | |
| 0002 | 0005 | NONE | | 180 | |
| 0002 | 0006 | NONE | | 180 | |

ULT10OPT 11.98

**Policy Number:** PHPK1274724
**Named Insured:** 6111 Ridgeway Group LLC

## SCHEDULE -
## Business Income with Extra Expense Coverage Form

### Coverage Summary

**Optional Coverages** – applicable only when entries are made in the schedule below.

| Premises No. | Building No. | Monthly Limit Of Indemnity (Fraction) | Maximum Period of Indemnity (X) | Extended Period Of Indemnity (Days) | Agreed Value Amount ($) |
|---|---|---|---|---|---|
| 0002 | 0007 | NONE | | 180 | |
| 0002 | 0008 | NONE | | 180 | |
| 0002 | 0009 | NONE | | 180 | |

ULT10OPT 11.98

PI-ULT-015 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AGREED VALUE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Property Coverage Form**

**Schedule**

| Premises No. | Building No. | Description of Covered Property |
|---|---|---|
| 0001 | 0001 | Building |
| 0001 | 0002 | Building |
| 0001 | 0003 | Building |
| 0001 | 0004 | Building |
| 0001 | 0005 | Building |
| 0001 | 0006 | Building |
| 0001 | 0007 | Building |
| 0001 | 0008 | Building |
| 0001 | 0009 | Building |
| 0001 | 0010 | Building |
| 0001 | 0011 | Building |
| 0001 | 0012 | Building |
| 0001 | 0013 | Building |
| 0001 | 0014 | Building |
| 0001 | 0015 | Building |

**Agreed Value Effective Date**   12/28/2014

**Agreed Value Expiration Date**   12/28/2015

**A.** The Additional Condition, Coinsurance, does not apply to Covered Property listed and described above.

**B.** If the Agreed Value Expiration Date shown above is not extended, the Additional Condition, Coinsurance, is reinstated and this Endorsement expires.

**C.** The terms of this Endorsement apply only to **"loss"** that occurs:

   **(1)** On or after the Agreed Value Effective Date shown above; and

   **(2)** Before the Agreed Value Expiration Date shown above or the policy expiration date, whichever occurs first.

Include copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc. 1990

PI-ULT-015 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AGREED·VALUE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Property Coverage Form**

**Schedule**

| Premises No. | Building No. | Description of Covered Property |
|---|---|---|
| 0001 | 0016 | Building |
| 0001 | 0017 | Building |
| 0001 | 0018 | Building |
| 0001 | 0019 | Building |
| 0001 | 0020 | Building |
| 0001 | 0021 | Building |
| 0001 | 0022 | Building |
| 0001 | 0023 | Building |
| 0001 | 0024 | Building |
| 0001 | 0025 | Building |
| 0001 | 0026 | Building |
| 0001 | 0027 | Building |
| 0001 | 0028 | Building |
| 0001 | 0029 | Building |
| 0001 | 0030 | Building |

**Agreed Value Effective Date**      12/28/2014

**Agreed Value Expiration Date**    12/28/2015

**A.** The Additional Condition, Coinsurance, does not apply to Covered Property listed and described above.

**B.** If the Agreed Value Expiration Date shown above is not extended, the Additional Condition, Coinsurance, is reinstated and this Endorsement expires.

**C.** The terms of this Endorsement apply only to **"loss"** that occurs:

   **(1)** On or after the Agreed Value Effective Date shown above; and

   **(2)** Before the Agreed Value Expiration Date shown above or the policy expiration date, whichever occurs first.

Include copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc. 1990

PI-ULT-015 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AGREED VALUE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Property Coverage Form**

**Schedule**

| Premises No. | Building No. | Description of Covered Property |
|---|---|---|
| 0001 | 0031 | Building |
| 0001 | 0032 | Building |
| 0001 | 0033 | Building |
| 0001 | 0034 | Building |
| 0001 | 0035 | Building |
| 0001 | 0036 | Building |
| 0001 | 0037 | Building |
| 0001 | 0038 | Building |
| 0001 | 0039 | Building |
| 0001 | 0040 | Building |
| 0001 | 0041 | Building |
| 0001 | 0042 | Building |
| 0001 | 0043 | Building |
| 0001 | 0044 | Building |
| 0001 | 0045 | Building |

**Agreed Value Effective Date**   12/28/2014

**Agreed Value Expiration Date**   12/28/2015

A. The Additional Condition, Coinsurance, does not apply to Covered Property listed and described above.

B. If the Agreed Value Expiration Date shown above is not extended, the Additional Condition, Coinsurance, is reinstated and this Endorsement expires.

C. The terms of this Endorsement apply only to **"loss"** that occurs:

   **(1)** On or after the Agreed Value Effective Date shown above; and

   **(2)** Before the Agreed Value Expiration Date shown above or the policy expiration date, whichever occurs first.

Include copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc. 1990

PI-ULT-015 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AGREED VALUE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Property Coverage Form**

**Schedule**

| Premises No. | Building No. | Description of Covered Property |
|---|---|---|
| 0001 | 0046 | Building |
| 0001 | 0047 | Building |
| 0001 | 0048 | Building |
| 0001 | 0049 | Building |
| 0001 | 0050 | Building |
| 0001 | 0051 | Building |
| 0001 | 0052 | Building |
| 0001 | 0053 | Building |
| 0001 | 0054 | Building |
| 0001 | 0055 | Building |
| 0001 | 0056 | Building |
| 0001 | 0057 | Building |
| 0001 | 0058 | Building |
| 0001 | 0059 | Building |
| 0001 | 0060 | Building |

**Agreed Value Effective Date**　　12/28/2014

**Agreed Value Expiration Date**　　12/28/2015

**A.** The Additional Condition, Coinsurance, does not apply to Covered Property listed and described above.

**B.** If the Agreed Value Expiration Date shown above is not extended, the Additional Condition, Coinsurance, is reinstated and this Endorsement expires.

**C.** The terms of this Endorsement apply only to "**loss**" that occurs:

**(1)** On or after the Agreed Value Effective Date shown above; and

**(2)** Before the Agreed Value Expiration Date shown above or the policy expiration date, whichever occurs first.

Include copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc. 1990

PI-ULT-015 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AGREED VALUE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Property Coverage Form**

**Schedule**

| Premises No. | Building No. | Description of Covered Property |
|---|---|---|
| 0001 | 0061 | Building |
| 0001 | 0062 | Building |
| 0001 | 0063 | Building |
| 0001 | 0064 | Building |
| 0001 | 0065 | Building |
| 0001 | 0066 | Building |
| 0001 | 0067 | Building |
| 0001 | 0068 | Building |
| 0001 | 0069 | Building |
| 0001 | 0070 | Building |
| 0001 | 0071 | Building |
| 0001 | 0072 | Building |
| 0001 | 0073 | Building |
| 0001 | 0074 | Building |
| 0001 | 0075 | Personal Property |

**Agreed Value Effective Date**      12/28/2014

**Agreed Value Expiration Date**     12/28/2015

**A.** The Additional Condition, Coinsurance, does not apply to Covered Property listed and described above.

**B.** If the Agreed Value Expiration Date shown above is not extended, the Additional Condition, Coinsurance, is reinstated and this Endorsement expires.

**C.** The terms of this Endorsement apply only to **"loss"** that occurs:

**(1)** On or after the Agreed Value Effective Date shown above; and

**(2)** Before the Agreed Value Expiration Date shown above or the policy expiration date, whichever occurs first.

Include copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc. 1990

PI-ULT-015 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AGREED VALUE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Property Coverage Form**

**Schedule**

| Premises No. | Building No. | Description of Covered Property |
|---|---|---|
| 0001 | 0075 | Building |
| 0002 | 0001 | Building |
| 0002 | 0002 | Building |
| 0002 | 0003 | Building |
| 0002 | 0004 | Building |
| 0002 | 0005 | Building |
| 0002 | 0006 | Building |
| 0002 | 0007 | Building |
| 0002 | 0008 | Building |
| 0002 | 0009 | Building |
| 0002 | 0010 | Personal Property |
| 0002 | 0010 | Building |

**Agreed Value Effective Date**      12/28/2014

**Agreed Value Expiration Date**     12/28/2015

A. The Additional Condition, Coinsurance, does not apply to Covered Property listed and described above.

B. If the Agreed Value Expiration Date shown above is not extended, the Additional Condition, Coinsurance, is reinstated and this Endorsement expires.

C. The terms of this Endorsement apply only to **"loss"** that occurs:

  (1) On or after the Agreed Value Effective Date shown above; and

  (2) Before the Agreed Value Expiration Date shown above or the policy expiration date, whichever occurs first.

Include copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc. 1990

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0001 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0002 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0003 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

## A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

## B. Lender's Loss Payable

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0004 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

     All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

      **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0005 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

  (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

  (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

  (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

  a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  a. Adjust **"loss"** with you; and

  b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0006 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

     **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

     All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

     **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

     **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

     At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0007 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust **"loss"** with you; and

   b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0008 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0009 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| | | | | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0010 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

## A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

## B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0011 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

    (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

    a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    a. Adjust **"loss"** with you; and

    b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| | | | | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0012 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

      **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0013 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

## A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

## B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

     (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

     (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

     All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

     (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

     (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

     At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

  4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust **"loss"** with you; and

   b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  3. The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| | | | | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0014 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

**Provision**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
|-----------|------|-------------------------|------------|-------------|
| 0001 | 0015 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

## A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

## B. Lender's Loss Payable

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

     All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

      **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

     At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0016 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

(1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust **"loss"** with you; and

b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0017 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

### A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

### B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0018 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

  **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

  **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of this Coverage Form will then apply directly to the Loss Payee.

  **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  **a.** Adjust **"loss"** with you; and

  **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|------|-------------------------|------------|----------|
| 0001 | 0019 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

### C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| | | | | Provision |
|---|---|---|---|---|
| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | (Indicate<br>A, B, or C) |
| 0001 | 0020 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission<br>Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

<u>**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**</u>

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0021 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

     **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

     **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

     **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

     At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0022 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

     **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

     **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

     **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

     At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0023 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

Provision

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0024 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

### A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

### B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0025 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust **"loss"** with you; and

b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

|  |  |  |  | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0026 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0027 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0028 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    a. Adjust **"loss"** with you; and

    b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

---

## SCHEDULE

| | | | | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0029 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0030 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

   For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

   **1.** Adjust **"loss"** with you; and

   **2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

   **1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

   **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

  a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  a. Adjust **"loss"** with you; and

  b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0031 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0032 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

## A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

## B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

|  |  |  |  | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0033 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

<u>**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**</u>

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

<u>**SCHEDULE**</u>

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0034 | As their interest may appear | Key Bank National Association | A |
| | | | See Manuscript form for Full Name | |
| | | | 11501 Outlook St Ste 300 | |
| | | | Overland Park, KS 66211-1807 | |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

 **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

 **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

 **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

 All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

 **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

 **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

 At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

 **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

 **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

 **a.** Adjust **"loss"** with you; and

 **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

 For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

|  |  |  |  | **Provision** |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0035 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

(1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

PI-ULT-016 11.98

**<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0036 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0037 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

    For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

    **1.** Adjust **"loss"** with you; and

    **2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

    **1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

        **a.** Warehouse receipts;

        **b.** A contract for deed;

        **c.** Bills of lading;

        **d.** Financing statements; or

        **e.** Mortgages, deeds of trust, or security agreements.

    **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

        **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0038 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

     All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

      **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0039 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

    For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

    **1.** Adjust **"loss"** with you; and

    **2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

    **1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

        **a.** Warehouse receipts;

        **b.** A contract for deed;

        **c.** Bills of lading;

        **d.** Financing statements; or

        **e.** Mortgages, deeds of trust, or security agreements.

    **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

        **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0040 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0041 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0042 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|------|-------------------------|------------|------------|
| 0001 | 0043 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

### A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

### B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

     **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

     **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

     **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

     At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0044 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

 **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

 **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

 **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

 **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

 **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|----------------------|-------------------------|------------|----------------------------------|
| 0001 | 0045 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

|  |  |  |  | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0046 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

   For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

     **1.** Adjust **"loss"** with you; and

     **2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

     **1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

       **a.** Warehouse receipts;

       **b.** A contract for deed;

       **c.** Bills of lading;

       **d.** Financing statements; or

       **e.** Mortgages, deeds of trust, or security agreements.

     **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

       **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0047 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

    For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

    **1.** Adjust **"loss"** with you; and

    **2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

    **1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

        **a.** Warehouse receipts;

        **b.** A contract for deed;

        **c.** Bills of lading;

        **d.** Financing statements; or

        **e.** Mortgages, deeds of trust, or security agreements.

    **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

        **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0048 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

(1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust **"loss"** with you; and

b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

### SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|----------------------|--------------------------|------------|-----------------------------------|
| 0001 | 0049 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

### A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

### B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust **"loss"** with you; and

   b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0050 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

### A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

### B. Lender's Loss Payable

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0051 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

 For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

 **1.** Adjust **"loss"** with you; and

 **2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

 **1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

  **a.** Warehouse receipts;

  **b.** A contract for deed;

  **c.** Bills of lading;

  **d.** Financing statements; or

  **e.** Mortgages, deeds of trust, or security agreements.

 **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

  **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

(1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust **"loss"** with you; and

b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

Provision

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
|-----------|----------------------|-------------------------|------------|------------------------|
| 0001 | 0052 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

      **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0053 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0054 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|----------------------|-------------------------|------------|--------------------------------|
| 0001 | 0055 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B," or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0056 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|----------------------|-------------------------|------------|----------------------------------|
| 0001 | 0057 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

(1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0058 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0059 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment,** as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0060 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

## A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

## B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0061 | As their interest may appear | Key Bank National Association | A |
| | | | See Manuscript form for Full Name | |
| | | | 11501 Outlook St Ste 300 | |
| | | | Overland Park, KS 66211-1807 | |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|----------------------|-------------------------|------------|----------------------------------|
| 0001 | 0062 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St. Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A"**, **"B"**, or **"C"** in Schedule:

### A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

### B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

  **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  **a.** Adjust **"loss"** with you; and

  **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0063 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

  **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

  **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of this Coverage Form will then apply directly to the Loss Payee.

  **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

 **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

 **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

 **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

 **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  **a.** Adjust **"loss"** with you; and

  **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

 **3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0064 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

  **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  **a.** Adjust **"loss"** with you; and

  **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

PI-ULT-016 11.98

**<u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0065 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0066 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

|  |  |  |  | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0067 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0068 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust **"loss"** with you; and

   b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| | | | | Provision |
|---|---|---|---|---|
| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
| 0001 | 0069 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|-----------|------|-------------------------|------------|--------------------------------|
| 0001 | 0070 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

    a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    a. Adjust **"loss"** with you; and

    b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0071 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

   For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

    **1.** Adjust **"loss"** with you; and

    **2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

    **1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

      **a.** Warehouse receipts;

      **b.** A contract for deed;

      **c.** Bills of lading;

      **d.** Financing statements; or

      **e.** Mortgages, deeds of trust, or security agreements.

    **2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

      **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

  **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  **a.** Adjust **"loss"** with you; and

  **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

<u>**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**</u>

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | Provision<br>(Indicate<br>A, B, or C) |
|---|---|---|---|---|
| 0001 | 0072 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Page 2 of 2

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0073 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

　　**(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

　　**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

　　**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

　　All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

　　**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

　　**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

　　At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust **"loss"** with you; and

**b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0074 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0001 | 0075 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0001 | As their interest may appear | Key Bank National Association | A |
| | | | See Manuscript form for Full Name | |
| | | | 11501 Outlook St Ste 300 | |
| | | | Overland Park, KS 66211-1807 | |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

  For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0002 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

**Provision**

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
|-----------|----------------------|------------------------|-----------|------------------------|
| 0002 | 0003 | As their interest may appear | Key Bank National Association | A |
| | | | See Manuscript form for Full Name | |
| | | | 11501 Outlook St Ste 300 | |
| | | | Overland Park, KS 66211-1807 | |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

### A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

### B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

**SCHEDULE**

Provision

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0004 | As their interest may appear | Key Bank National Association | A |
|  |  |  | See Manuscript form for Full Name |  |
|  |  |  | 11501 Outlook St Ste 300 |  |
|  |  |  | Overland Park, KS 66211-1807 |  |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0005 | As their interest may appear | Key Bank National Association See Manuscript form for Full Name 11501 Outlook St Ste 300 Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Form will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust **"loss"** with you; and

b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0006 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0007 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

    d. Financing statements; or

    e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

    a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust **"loss"** with you; and

   **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0008 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**1.** Adjust **"loss"** with you; and

**2.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

    **b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

    **d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

        **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

        **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

        At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

|  |  |  |  | Provision |
|---|---|---|---|---|
| Prem.<br>No. | Applicable<br>Bldg.<br>No. | Description of Property | Loss Payee | (Indicate<br>A, B, or C) |
| 0002 | 0009 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Page 1 of 2
Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**b.** The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

    **(1)** Pays any premium due under this Coverage Form at our request if you have failed to do so;

    **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

    All of the terms of this Coverage Form will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

## C. Contract of Sale

**1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    **a.** Adjust **"loss"** with you; and

    **b.** Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

    For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**UltimateCover Policy**

## SCHEDULE

| Prem. No. | Applicable Bldg. No. | Description of Property | Loss Payee | Provision (Indicate A, B, or C) |
|---|---|---|---|---|
| 0002 | 0010 | As their interest may appear | Key Bank National Association<br>See Manuscript form for Full Name<br>11501 Outlook St Ste 300<br>Overland Park, KS 66211-1807 | A |

The following is added to the Loss Conditions, **Loss Payment**, as shown by an **"A", "B", or "C"** in Schedule:

## A. Loss Payable

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1. Adjust **"loss"** with you; and

2. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

## B. Lender's Loss Payable

1. The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in the Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered **"loss"** to each Loss Payee in their order or precedence, as interests may appear.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-016 11.98

   b. The Loss Payee has the right to receive **"loss"** payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Form, the Loss Payee will still have the right to receive **"loss"** payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Form at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

     All of the terms of this Coverage Form will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any **"loss"** and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

      (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

  **3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

  **4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract of Sale**

  **1.** The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

  **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust **"loss"** with you; and

   b. Pay any claim for **"loss"** jointly to you and the Loss Payee, as interests may appear.

  **3.** The following is added to the **Other Insurance** Condition:

     For Covered Property that is the subject of a contract of sale, the word **"you"** includes the Loss Payee.

Includes copyrighted material of Commercial Risk Services, Inc., with its permission
Copyright, ISO Commercial Risk Services, Inc., 1995

PI-ULT-072 (10/10)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LIMITATIONS ON FUNGUS, WET ROT, DRY ROT AND BACTERIA

This endorsement modifies insurance provided under the following:

**PROPERTY COVERAGE FORM**
**CAUSES OF LOSS FORM**

**I.**  **CAUSES OF LOSS FORM,** Section **E. Additional Coverage Extensions** is amended to include the following:

  **A.  Coverage**

  **1.**  We will pay for **"loss"** or damage by **"fungus,"** wet or dry rot or bacteria that is the result of fire or lightning.

  **2. a.**  We will also pay for loss or damage by **"fungus,"** wet or dry rot or bacteria that is the result of one or more of the following causes that occurs during the policy period.  Coverage applies only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

  **(1)**  A **"specified cause of loss"** other than fire or lightning;

  **(2)**  Water that backs up or overflows from a sewer, drain or sump; or

  **(3)**  Water under the ground surface pressing on, or flowing or seeping through:

  **(a)**  Foundations, walls, floors or paved surfaces;

  **(b)**  Basements, whether paved or not;

  **(c)**  Doors, windows or other openings; or

  **(4)**  **"Flood,"** if the Flood Endorsement applies to the affected premises.

  **b.**  The term loss or damage as used in Item **2.a.** means:

  **(1)**  Direct physical **"loss"** or damage to Covered Property caused by **"fungus,"** wet or dry rot or bacteria, including the cost of removal of the **"fungus,"** wet or dry rot or bacteria;

  **(2)**  The cost to tear out and replace any part of the building or other property as needed to gain access to the **"fungus,"** wet or dry rot or bacteria; and

  **(3)**  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that **"fungus,"** wet or dry rot or bacteria are present.

  **3.**  The amount we will pay for coverage described in **2.a.** above is limited as described in **B. Limits of Insurance** and **C. Additional Conditions – Business Income and/or Extra Expense.**

PI-ULT-072 (10/10)

**B. Limits of Insurance**

1.  The most we will pay for all **"loss"** or damage for coverage described in **A.1.** above is the Limit of Insurance for Covered Property shown in the Declarations.

2.  **a.** The most we will pay for all loss or damage for coverage described in **A. 2.** above is limited to $15,000:

    **(1)** Regardless of the number of claims arising out of all occurrences which take place in a 12 month period, starting with the beginning of the present annual policy period; and

    **(2)** Even if the **"fungus,"** wet or dry rot or bacteria continues to be present or active, or recurs in a later policy period.

    **b.** The $15,000 Limit of Insurance is included within, and is not in addition to, the applicable Limit of Insurance for any Covered Property.

    **c.** If there is covered **"loss"** or damage to Covered Property not caused by **"fungus,"** wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that **"fungus,"** wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this endorsement.

    **d.** The terms of this Limited Coverage do not increase or reduce the coverage provided under:

    **(1)** Paragraph **D. Additional Coverage – Collapse**; or

    **(2)** Paragraph **E. 1. Water Damage, Other Liquids, Powder or Molten Material Damage**

    In the **CAUSES OF LOSS FORM**.

**C. Additional Conditions – Business Income and/or Extra Expense**

Under Item **A. 2.** above, the following applies only if the Business Income and/or Extra Expense coverage applies to the described premises and only if the suspension of **"operations"** satisfies all terms and conditions of the applicable **BUSINESS INCOME (WITH EXTRA EXPENSE) COVERAGE FORM**:

1.  If the **"specified cause of loss"** which resulted in **"fungus,"** wet or dry rot or bacteria does not in itself necessitate a suspension of **"operations,"** but such suspension is necessary due to loss or damage to property caused by **"fungus,"** wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

2.  If a covered suspension of **"operations"** was caused by **"loss"** or damage other than **"fungus,"** wet or dry rot or bacteria, but remediation of **"fungus,"** wet or dry rot or bacterial prolongs the **"period of restoration,"** we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the **"period of restoration"**), but such coverage is limited to 30 days. The days need not be consecutive.

**II.  CAUSES OF LOSS FORM**, Section **B. Exclusions**, is amended as follows:

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-ULT-072 (10/10)

**A.** Exclusion **2.d. (2)** is deleted in its entirety and replaced with the following:

> **(2)** Rust, corrosion, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**B.** The following exclusions are added:

**1.** Unless as provided for in Section **I.A. Coverage** above, we will not pay for **"loss"** or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of **"fungus,"** wet or dry rot or bacteria. Such **"loss"** or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **"loss."**

But if **"fungus,"** wet or dry rot or bacteria results in a cause of loss covered by this endorsement, we will pay for the **"loss"** or damage caused by that covered cause of loss.

**2.** We will not pay for **"loss"** or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay under:

**a.** The **Ordinance or Law** coverage extension in the **PROPERTY COVERAGE FORM**; or

**b.** The **ORDINANCE OR LAW COVERAGE** endorsement, if it applies to this policy:

For:

> **(1)** **"Loss"** or expense sustained due to the enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of **"fungus,"** wet or dry rot or bacteria; or

> **(2)** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **"fungus,"** wet or dry rot or bacteria.

**III. CAUSES OF LOSS FORM**, Section **C. Limitations**, Paragraph **3.** is deleted and replaced by the following:

**3.** We will not pay for **"loss"** to property in transit caused by or resulting from breakage; leakage; contamination; being spotted, discolored, frosted, rotted, soured, steamed, or changed in flavor.

But we will pay for such **"loss"** caused by: the **"specified causes of loss"**; an accident to the vehicle or railroad car carrying the Covered Property; burning, collision or crashing of the aircraft carrying the Covered Property; or the stranding, sinking, burning or collision of the vessel carrying the Covered Property.

**IV. CAUSES OF LOSS FORM**, Section **F. Definitions**, is amended by adding the following:

**"Fungus"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

© 2010 Philadelphia Indemnity Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-ULT-83 (04/01)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

# LOSS OF INCOME DUE TO WORKPLACE VIOLENCE

This endorsement modifies and is subject to the insurance provided under the following:

**ULTIMATECOVER PROGRAM - BUSINESS INCOME WITH EXTRA EXPENSE COVERAGE FORM**

The following is added to **Section A. Coverage, 4. Additional Coverages:**

**g.  Workplace Violence**

    **(1)  Coverage:**

        Loss of Business Income:

        We will pay for the actual loss of Business Income you sustain due to the suspension of your **"operations"** caused by any intentional use, or threat to use, deadly force by any person.

        The most we will pay under this coverage is $100,000.

        Extra Expense:

        Coverage is extended to include the cost of public relations consultants or other specialists to restore the insured's reputation following an incident of workplace violence.  Additionally, coverage includes mental health counseling for employees.

        The most we will pay under this coverage is $5,000.

    **(2)  Loss Determination:**

        Determination of the Business Income loss under this additional coverage will be calculated only for the location where the workplace violence occurred. Coverage will only be for the **"period of restoration"**.

        Extra expense will apply even though operations have resumed. However, they will not apply after 60 days following the incident.

All other terms and conditions remain the same.

PI-ULT-088 (02/2004)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES – ELECTRONIC DATA

This endorsement modifies insurance provided under the following:

ULTIMATECOVER PROPERTY COVERAGE PART

**A.** Under this endorsement, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.   The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.  For the purpose of this endorsement, the term electronic data does not include your "stock" of prepackaged software.

**B.** This section, **B.**, and the following sections **C.** and **D.**, apply to the UltimateCover Property Coverage Form, Condominium Association Coverage Endorsement, Commercial Condominium Unit-Owner's Coverage Endorsement, and the UltimateCover Causes of Loss Form.   Paragraphs **B.1.** and **B.2.** supersede any provisions relating to electronic data, electronic media or valuable papers or records, including any such provisions under Property Not Covered, Coverage Extensions, Valuation Conditions or Limitations in the aforementioned forms.

   **1.** Covered Property does not include electronic data, except as provided below in **C.**, Limited Coverage – Electronic Data.

   **2.** Covered Property does not include the cost to replace or restore the information on valuable papers and records, including those which exist as electronic data.  Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems.  However, limited coverage for valuable papers and records, other than those which exist as electronic data, is provided below in **D.**, Limited Coverage – Valuable Papers And Records (Other Than Electronic Data).

**C. Limited Coverage – Electronic Data**

   **1.** Subject to the provisions of this Limited Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss.   To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

   **2.** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Limited Coverage – Electronic Data, subject to the following:

      **a.** If the Ultimate Cover Causes of Loss Form applies, coverage under this Limited Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that Form, and Collapse as set forth in that Form.

      **b.** If the Causes of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Limited Coverage – Electronic Data.

      **c.** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

Includes copyright material of the Insurance Services Office, Inc. used with its permission

PI-ULT-088 (02/2004)

3. The most we will pay under this Limited Coverage – Electronic Data is $250,000 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved.  If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**D. Limited Coverage – Valuable Papers And Records (Other Than Electronic Data)**

1. You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist.  But this Limited Coverage does not apply to valuable papers and records which exist as electronic data.

2. If the Ultimate Cover Causes of Loss Form applies, coverage under this Limited Coverage is limited to the "specified causes of loss" as defined in that Form, and Collapse as set forth in that Form.

3. Under this Limited Coverage, the most we will pay to replace or restore the lost information is $250,000 at each described premises.  We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records.  The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**E.** With respect to the UltimateCover Business Income and/or Extra Expense Coverage Forms, the following exclusion is added:

Exclusion – Interruption Of Computer Operations

1. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided below in **F.**, Limited Coverage – Interruption Of Computer Operations.

2. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided below in **F.**, Limited Coverage – Interruption Of Computer Operations.

**F. Limited Coverage – Interruption Of Computer Operations**

This Limited Coverage applies only to the UltimateCover Business Income and/or Extra Expense Coverage Forms.

1. Subject to all provisions of this Limited Coverage, you may extend the insurance that applies to Business Income and/or Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss.

2. With respect to the coverage provided under this Limited Coverage, the Covered Causes of Loss are subject to the following:

   a. If the Ultimate Cover Causes of Loss Form applies, coverage under this Limited Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that Form, and Collapse as set forth in that Form.

   b. If the Causes of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Limited Coverage – Interruption Of Computer Operations.

   c. The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.  But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

Includes copyright material of the Insurance Services Office, Inc. used with its permission

PI-ULT-088 (02/2004)

3. The most we will pay under this Limited Coverage -Interruption Of Computer Operations is $250,000 for the total of all loss sustained and/or expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

4. This Limited Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in 3. above has not been exhausted.

G. Under the Legal Liability Coverage Form, Covered Property does not include electronic data.

H. If this policy is endorsed to cover damage to Covered Property or Business Income loss or Extra Expense caused by or related to interruption in utility service, such coverage does not apply to destruction or corruption of (or any loss or damage to) electronic data.

I. If this policy is endorsed to cover Business Income loss or Extra Expense related to "suspension" of "operations" due to loss or damage to a "dependent property", such coverage does not apply when the only loss to "dependent property" is destruction or corruption of (or any loss or damage to) electronic data. If the "dependent property" sustains loss or damage to electronic data and other property, coverage under the "dependent property" endorsement will not continue once the other property is repaired, rebuilt or replaced.

Includes copyright material of the Insurance Services Office, Inc. used with its permission

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0001 | 15000 | (2) |
| 0001 | 0001 | 25000 | (5) |
| 0001 | 0002 | 15000 | (2) |
| 0001 | 0002 | 25000 | (5) |
| 0001 | 0003 | 15000 | (2) |
| 0001 | 0003 | 25000 | (5) |
| 0001 | 0004 | 15000 | (2) |
| 0001 | 0004 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0005 | 15000 | (2) |
| 0001 | 0005 | 25000 | (5) |
| 0001 | 0006 | 15000 | (2) |
| 0001 | 0006 | 25000 | (5) |
| 0001 | 0007 | 15000 | (2) |
| 0001 | 0007 | 25000 | (5) |
| 0001 | 0008 | 15000 | (2) |
| 0001 | 0008 | 25000 | (5) |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY</u>

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0009 | 15000 | (2) |
| 0001 | 0009 | 25000 | (5) |
| 0001 | 0010 | 15000 | (2) |
| 0001 | 0010 | 25000 | (5) |
| 0001 | 0011 | 15000 | (2) |
| 0001 | 0011 | 25000 | (5) |
| 0001 | 0012 | 15000 | (2) |
| 0001 | 0012 | 25000 | (5) |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
### ULTIMATE COVER PROPERTY COVERAGE FORM

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|---------------------------|
| 0001 | 0013 | 15000 | (2) |
| 0001 | 0013 | 25000 | (5) |
| 0001 | 0014 | 15000 | (2) |
| 0001 | 0014 | 25000 | (5) |
| 0001 | 0015 | 15000 | (2) |
| 0001 | 0015 | 25000 | (5) |
| 0001 | 0016 | 15000 | (2) |
| 0001 | 0016 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0017 | 15000 | (2) |
| 0001 | 0017 | 25000 | (5) |
| 0001 | 0018 | 15000 | (2) |
| 0001 | 0018 | 25000 | (5) |
| 0001 | 0019 | 15000 | (2) |
| 0001 | 0019 | 25000 | (5) |
| 0001 | 0020 | 15000 | (2) |
| 0001 | 0020 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY</u>

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|---------------------------|
| 0001 | 0021 | 15000 | (2) |
| 0001 | 0021 | 25000 | (5) |
| 0001 | 0022 | 15000 | (2) |
| 0001 | 0022 | 25000 | (5) |
| 0001 | 0023 | 15000 | (2) |
| 0001 | 0023 | 25000 | (5) |
| 0001 | 0024 | 15000 | (2) |
| 0001 | 0024 | 25000 | (5) |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

#### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|----------------------------|
| 0001 | 0025 | 15000 | (2) |
| 0001 | 0025 | 25000 | (5) |
| 0001 | 0026 | 15000 | (2) |
| 0001 | 0026 | 25000 | (5) |
| 0001 | 0027 | 15000 | (2) |
| 0001 | 0027 | 25000 | (5) |
| 0001 | 0028 | 15000 | (2) |
| 0001 | 0028 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|---------------------------|
| 0001 | 0029 | 15000 | (2) |
| 0001 | 0029 | 25000 | (5) |
| 0001 | 0030 | 15000 | (2) |
| 0001 | 0030 | 25000 | (5) |
| 0001 | 0031 | 15000 | (2) |
| 0001 | 0031 | 25000 | (5) |
| 0001 | 0032 | 15000 | (2) |
| 0001 | 0032 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0033 | 15000 | (2) |
| 0001 | 0033 | 25000 | (5) |
| 0001 | 0034 | 15000 | (2) |
| 0001 | 0034 | 25000 | (5) |
| 0001 | 0035 | 15000 | (2) |
| 0001 | 0035 | 25000 | (5) |
| 0001 | 0036 | 15000 | (2) |
| 0001 | 0036 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0037 | 15000 | (2) |
| 0001 | 0037 | 25000 | (5) |
| 0001 | 0038 | 15000 | (2) |
| 0001 | 0038 | 25000 | (5) |
| 0001 | 0039 | 15000 | (2) |
| 0001 | 0039 | 25000 | (5) |
| 0001 | 0040 | 15000 | (2) |
| 0001 | 0040 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

#### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|---------------------------|
| 0001 | 0041 | 15000 | (2) |
| 0001 | 0041 | 25000 | (5) |
| 0001 | 0042 | 15000 | (2) |
| 0001 | 0042 | 25000 | (5) |
| 0001 | 0043 | 15000 | (2) |
| 0001 | 0043 | 25000 | (5) |
| 0001 | 0044 | 15000 | (2) |
| 0001 | 0044 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

   **(1)** All Covered Causes of Loss

   **(2)** All Covered Causes of Loss **except** those listed separately

   **(3)** Water damage

   **(4)** Lightning

   **(5)** Windstorm or Hail

   **(6)** Theft

   **(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0045 | 15000 | (2) |
| 0001 | 0045 | 25000 | (5) |
| 0001 | 0046 | 15000 | (2) |
| 0001 | 0046 | 25000 | (5) |
| 0001 | 0047 | 15000 | (2) |
| 0001 | 0047 | 25000 | (5) |
| 0001 | 0048 | 15000 | (2) |
| 0001 | 0048 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0049 | 15000 | (2) |
| 0001 | 0049 | 25000 | (5) |
| 0001 | 0050 | 15000 | (2) |
| 0001 | 0050 | 25000 | (5) |
| 0001 | 0051 | 15000 | (2) |
| 0001 | 0051 | 25000 | (5) |
| 0001 | 0052 | 15000 | (2) |
| 0001 | 0052 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0053 | 15000 | (2) |
| 0001 | 0053 | 25000 | (5) |
| 0001 | 0054 | 15000 | (2) |
| 0001 | 0054 | 25000 | (5) |
| 0001 | 0055 | 15000 | (2) |
| 0001 | 0055 | 25000 | (5) |
| 0001 | 0056 | 15000 | (2) |
| 0001 | 0056 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming".

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
### ULTIMATE COVER PROPERTY COVERAGE FORM

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|---------------------------|
| 0001 | 0057 | 15000 | (2) |
| 0001 | 0057 | 25000 | (5) |
| 0001 | 0058 | 15000 | (2) |
| 0001 | 0058 | 25000 | (5) |
| 0001 | 0059 | 15000 | (2) |
| 0001 | 0059 | 25000 | (5) |
| 0001 | 0060 | 15000 | (2) |
| 0001 | 0060 | 25000 | (5) |

*  Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY</u>

This endorsement modifies insurance provided under the following:
> **ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0061 | 15000 | (2) |
| 0001 | 0061 | 25000 | (5) |
| 0001 | 0062 | 15000 | (2) |
| 0001 | 0062 | 25000 | (5) |
| 0001 | 0063 | 15000 | (2) |
| 0001 | 0063 | 25000 | (5) |
| 0001 | 0064 | 15000 | (2) |
| 0001 | 0064 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
### ULTIMATE COVER PROPERTY COVERAGE FORM

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|---------------------------|
| 0001 | 0065 | 15000 | (2) |
| 0001 | 0065 | 25000 | (5) |
| 0001 | 0066 | 15000 | (2) |
| 0001 | 0066 | 25000 | (5) |
| 0001 | 0067 | 15000 | (2) |
| 0001 | 0067 | 25000 | (5) |
| 0001 | 0068 | 15000 | (2) |
| 0001 | 0068 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
### ULTIMATE COVER PROPERTY COVERAGE FORM

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0001 | 0069 | 15000 | (2) |
| 0001 | 0069 | 25000 | (5) |
| 0001 | 0070 | 15000 | (2) |
| 0001 | 0070 | 25000 | (5) |
| 0001 | 0071 | 15000 | (2) |
| 0001 | 0071 | 25000 | (5) |
| 0001 | 0072 | 15000 | (2) |
| 0001 | 0072 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** those listed separately

(3) Water damage

(4) Lightning

(5) Windstorm or Hail

(6) Theft

(7) "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
### ULTIMATE COVER PROPERTY COVERAGE FORM

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|----------------------------|
| 0001 | 0073 | 15000 | (2) |
| 0001 | 0073 | 25000 | (5) |
| 0001 | 0074 | 15000 | (2) |
| 0001 | 0074 | 25000 | (5) |
| 0001 | 0075 | 15000 | (2) |
| 0001 | 0075 | 25000 | (5) |
| 0001 | 0075 | 15000 | (2) |
| 0001 | 0075 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

 **(1)** All Covered Causes of Loss

 **(2)** All Covered Causes of Loss **except** those listed separately

 **(3)** Water damage

 **(4)** Lightning

 **(5)** Windstorm or Hail

 **(6)** Theft

 **(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0002 | 0001 | 15000 | (2) |
| 0002 | 0001 | 25000 | (5) |
| 0002 | 0002 | 15000 | (2) |
| 0002 | 0002 | 25000 | (5) |
| 0002 | 0003 | 15000 | (2) |
| 0002 | 0003 | 25000 | (5) |
| 0002 | 0004 | 15000 | (2) |
| 0002 | 0004 | 25000 | (5) |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
**ULTIMATE COVER PROPERTY COVERAGE FORM**

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|---|---|---|---|
| 0002 | 0005 | 15000 | (2) |
| 0002 | 0005 | 25000 | (5) |
| 0002 | 0006 | 15000 | (2) |
| 0002 | 0006 | 25000 | (5) |
| 0002 | 0007 | 15000 | (2) |
| 0002 | 0007 | 25000 | (5) |
| 0002 | 0008 | 15000 | (2) |
| 0002 | 0008 | 25000 | (5) |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

**(1)** All Covered Causes of Loss

**(2)** All Covered Causes of Loss **except** those listed separately

**(3)** Water damage

**(4)** Lightning

**(5)** Windstorm or Hail

**(6)** Theft

**(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-089 (06.05)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:
### ULTIMATE COVER PROPERTY COVERAGE FORM

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

### SCHEDULE *

The Deductibles applicable to any one occurrence are shown below:

| Prem. No. | Bldg. No. | Deductible | Covered Causes of Loss ** |
|-----------|-----------|------------|---------------------------|
| 0002 | 0009 | 15000 | (2) |
| 0002 | 0009 | 25000 | (5) |
| 0002 | 0010 | 15000 | (2) |
| 0002 | 0010 | 25000 | (5) |
| 0002 | 0010 | 15000 | (2) |
| 0002 | 0010 | 25000 | (5) |

  * Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

** For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

  **(1)** All Covered Causes of Loss

  **(2)** All Covered Causes of Loss **except** those listed separately

  **(3)** Water damage

  **(4)** Lightning

  **(5)** Windstorm or Hail

  **(6)** Theft

  **(7)** "Ice Damming"

The following is added to the DEDUCTIBLE section:

A. In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

B. The terms of this endorsement do not apply to any Earthquake Deductible or to any Windstorm or Hail Percentage Deductible provided elsewhere in this policy.

The following is added to the DEFINITIONS section:

"Ice Damming" means water leaking into the interior of the unit, as a result of the weight of snow, ice, or sleet or damage caused by thawing and/or re-freezing of snow, ice or sleet.

PI-ULT-142 (08/13)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COLLAPSE – EXCLUSION AND ADDITIONAL COVERAGE RE-STATED

This endorsement modifies insurance provided under the following:

**CAUSES OF LOSS FORM**

I.   Section **B. Exclusions**, **2.i.** is deleted in its entirety and replaced with the following:

  i.   Collapse, including any of the following conditions of property or any part of the property:

   **(1)** An abrupt falling down or caving in;

   **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

   But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the **"loss"** or damage caused by that Covered Cause of Loss.

   This exclusion **i.** does not apply:

   **(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

   **(b)** To collapse caused by one or more of the following:

    **(i)**   The **"specified causes of loss"**;

    **(ii)**   Breakage of building glass;

    **(iii)**   Weight of rain that collects on a roof; or

    **(iv)**   Weight of people or personal property.

II.   Section **D. Additional Coverage – Collapse** is deleted in its entirety and replaced with the following:

  **D.   Additional Coverage – Collapse**

   The coverage provided under this Additional Coverage – Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

   **1.**   For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a **"building"** or any part of a **"building"** with the result that the **"building"** or part of the **"building"** cannot be occupied for its intended purpose.

   **2.**   We will pay for direct physical **"loss"** or damage to Covered Property, caused by abrupt collapse of a **"building"** or any part of a **"building"** that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

Page 1 of 3
Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-ULT-142 (08/13)

   **a.** "Building" decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation;

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.**;

      **(2)** One or more of the **"specified causes of loss"**;

      **(3)** Breakage of **"building"** glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

**3.** This Additional Coverage – Collapse does not apply to:

   **a.** A **"building"** or any part of a **"building"** that is in danger of falling down or caving in;

   **b.** A part of a **"building"** that is standing, even if it has separated from another part of the **"building"**; or

   **c.** A **"building"** that is standing or any part of a **"building"** that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   **b.** Awnings, gutters and downspouts;

   **c.** Yard fixtures;

   **d.** Outdoor swimming pools;

   **e.** Fences;

   **f.** Piers, wharves and docks;

   **g.** Beach or diving platforms or appurtenances;

   **h.** Retaining walls; and

   **i.** Walks, roadways and other paved surfaces;

Includes copyrighted material of Insurance Services Office, Inc., with permission.

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for **"loss"** or damage to that property only if:

    **(1)** Such **"loss"** or damage is a direct result of the abrupt collapse of a **"building"** insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a **"building,"** we will pay for **"loss"** or damage to Covered Property caused by such collapse of personal property only if:

    **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

    **b.** The personal property which collapses is inside a **"building"**; and

    **c.** The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage – Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage – Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage – Collapse, as described and limited in **D.1.** through **D.7.**

Includes copyrighted material of Insurance Services Office, Inc., with permission.

POLICY NUMBER: PHPK1274724                                      PIC-ULT-NBC-1 (01/08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL TERRORISM; CAP ON COVERED CERTIFIED ACTS LOSSES

This endorsement modifies insurance provided under the following:

ULTIMATECOVER PROPERTY COVERAGE PART

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**LIMITED EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the terrorism was to release such material; or

3. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical material; or

4. Pathogenic or poisonous biological or chemical material is released, and it appears that one purpose of the terrorism was to release such material.

When this terrorism exclusion applies in accordance with the terms of Paragraph **B.1.** or **B.2.**, the terrorism exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Part or Policy.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" excluded under Paragraph **B.** results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**D. Cap On Certified Terrorism Losses**

The following limitation applies to coverage for any one or more "certified acts of terrorism" that are not excluded by the terms of the exclusion in Paragraph **B.** and to any loss or damage that is covered and to which the exception in Paragraph **C.** applies:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**E. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the non-applicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the War And Military Action Exclusion.

Includes copyrighted material of the Insurance Services Office Inc., used with its permission.

PI-MANU-1 (01/00)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

### Mtgee/Loss Payee/Addl Ins-Key Bank National Association

Key Bank National Association as Master Servicer in trust for U.S. Bank
National Association, successor to Bank of America, National Association,
successor by merger to LaSalle Bank National Association, as Trustee for the
registered holders of Structure d Asset Securities Corporation II, LB-UBS
Commercial Mortgage Trust 2007-C1, Commercial Mortgage Pass-Through
Certificates, Series 2007-C1, c/o Berkadia Commercial Mortgage as
Subservicer on behalf of Key Bank National Association
11501 Outlook St Ste 300
Overland Park, KS 66211

All other terms and conditions of this Policy remain unchanged.

Page 1 of 1

| | | | |
|---|---|---|---|
| Insured: | DEERCREST/RIDGEWAY WIND | | |
| Property: | 2155 SYCAMORE VIEW | | |
| | MEMPHIS, TN | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Richard Gary Sharp | Business: | (615) 231-6688 x 222 |
| Business: | 555 Marriott dr,Suite 120 | E-mail: | rsharp@cl-na.com |
| | Nashville``, TN 37214 | | |

| | | | |
|---|---|---|---|
| Estimator: | Richard Gary Sharp | Business: | (615) 231-6688 x 222 |
| Business: | 555 Marriott dr,Suite 120 | E-mail: | rsharp@cl-na.com |
| | Nashville``, TN 37214 | | |

| | | | |
|---|---|---|---|
| Claim Number: | | Policy Number: | Type of Loss: |

| | | | |
|---|---|---|---|
| Date Contacted: | 1/26/2015 | | |
| Date of Loss: | 10/2/2014 | Date Received: | 1/26/2015 |
| Date Inspected: | 1/28/2015 | Date Entered: | 1/29/2015 1:22 PM |

| | |
|---|---|
| Price List: | TNME8X_OCT14 |
| | Restoration/Service/Remodel |
| Estimate: | RIDGEWAYDEERFIELDWIN |

Abbreviated - Carrier Estimate.pdf                                                              Page 3 of 5

| DESCRIPTION | QTY | UNIT PRICE | TOTAL |
|---|---|---|---|
| 27. Remove 3 tab - 20 yr. - composition shingle roofing - incl. felt | 7.50 SQ @ | 34.93 = | 261.98 |
| 28. 3 tab - 20 yr. - composition shingle roofing - incl. felt | 7.67 SQ @ | 143.98 = | 1,104.33 |
| 29. Ridge cap - composition shingles | 105.00 LF @ | 3.19 = | 334.95 |
| 30. Apply mastic around vent pipes to repair leakage | 2.00 EA @ | 13.46 = | 26.92 |
| 31. Dumpster load - Approx. 30 yards, 5-7 tons of debris | 1.00 EA @ | 523.25 = | 523.25 |

RIDGEWAYDEERFIELDWIN                                    2/9/2015        Page: 3

### Summary for Dwelling

| | |
|---|---|
| Line Item Total | 33,186.55 |
| Material Sales Tax | 1,079.19 |
| Replacement Cost Value | $34,265.74 |
| Net Claim | $34,265.74 |

Richard Gary Sharp

RIDGEWAYDEERFIELDWIN                                    2/9/2015        Page: 4

**Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

| | |
|---|---|
| Insured: | Deerfield Apartments |
| Property: | 2155 Sycamore View |
| | Memphis , TN 38134 |
| Business: | |
| | Memphis, TN |

| | | | |
|---|---|---|---|
| Claim Rep.: | Brian Haden | Business: | (866) 582-4591 |
| Business: | 3515-B Longmire Dr. Ste 294 | E-mail: | bhaden@insspecialists.com |
| | College Station, TX 77845 | | |
| Estimator: | Rickey Eubank | Business: | (731) 343-2933 |
| Business: | 25 Buckthron | | |
| | Jackson, TN 38305 | | |
| Contractor: | | Business: | (731) 609-5800 |
| Company: | LMC Construction TIN#62-1652110 | | |
| Business: . | 13 Brunning Tree Cv. | | |
| | Jackson, TN 38305 | | |

| | | | | | |
|---|---|---|---|---|---|
| Claim Number: UNKNOWN | | Policy Number: UNKNOWN | | Type of Loss: Hail | |
| Date of Loss: | 10/2/2014 | Date Received: | | | |
| Date Inspected: | | Date Entered: | 2/18/2015 | | |
| Price List: | TNME8X_OCT14 | | | | |
| | Restoration/Service/Remodel | | | | |
| Estimate: | DEERFIELD_WIND | | | | |

This estimate was produced with information available at the time it was written. Any information not provided or unknown to the adjuster or estimator shall not be held against them. The adjuster and/or estimator carriers the right to make any necessary revisions as information become available.

This estimate is NOT a guarantee of settlement and should NOT be construed as a authorization to begin work. The insurance company maintains it's rights to enforce any and all policy provisions.

Before you begin any work on your structure, you should have your contractor review this estimate and advise us of any concerns BEFORE work begins.

**ICS**  **Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

### DEERFIELD_WIND

### SKETCH1

### Main Level

#### 5728

| | |
|---|---|
| 8617.87 Surface Area | 86.18 Number of Squares |
| 575.40 Total Perimeter Length | 198.00 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Remove Laminated - comp. shingle rfg. - w/ felt | 94.18 SQ | 36.10 | 0.00 | 679.98 | 4,079.88 | (0.00) | 4,079.88 |
| 2. Laminated - comp. shingle rfg. - w/ felt | 114.33 SQ | 165.45 | 983.96 | 3,979.97 | 23,879.83 | (1,513.79) | 22,366.04 |
| 3. Remove Additional charge for high roof (2 stories or greater) | 94.18 SQ | 3.35 | 0.00 | 63.10 | 378.60 | (0.00) | 378.60 |
| 4. Additional charge for high roof (2 stories or greater) | 114.03 SQ | 10.01 | 0.00 | 228.29 | 1,369.73 | (0.00) | 1,369.73 |
| 5a. Remove Roof vent - turtle type - Metal | 8.00 EA | 5.70 | 0.00 | 9.12 | 54.72 | (0.00) | 54.72 |
| 5b. Roof vent - turtle type - Metal | 8.00 EA | 39.62 | 14.06 | 66.20 | 397.23 | (21.64) | 375.59 |
| 6a. Remove Flashing - pipe jack | 36.00 EA | 4.46 | 0.00 | 32.11 | 192.67 | (0.00) | 192.67 |
| 6b. Flashing - pipe jack | 36.00 EA | 21.92 | 20.11 | 161.85 | 971.08 | (30.94) | 940.14 |
| 7a. Remove Continuous ridge vent - aluminum | 120.00 LF | 0.54 | 0.00 | 12.96 | 77.76 | (0.00) | 77.76 |
| 7b. Continuous ridge vent - aluminum | 120.00 LF | 5.49 | 32.76 | 138.31 | 829.87 | (50.40) | 779.47 |
| 8a. Remove Drip edge | 575.40 LF | 0.22 | 0.00 | 25.32 | 151.91 | (0.00) | 151.91 |
| 8b. Drip edge | 575.40 LF | 1.39 | 31.42 | 166.25 | 997.47 | (48.33) | 949.14 |

| Totals: 5728 | | | 1,082.31 | 5,563.46 | 33,380.75 | 1,665.10 | 31,715.65 |
|---|---|---|---|---|---|---|---|

#### Right Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 9a. Remove Fiber cement lap siding - 8" | 836.00 SF | 0.28 | 0.00 | 46.82 | 280.90 | (0.00) | 280.90 |
| 9b. Fiber cement lap siding - 8" | 836.00 SF | 3.22 | 136.94 | 565.77 | 3,394.63 | (561.79) | 2,832.84 |
| 10. Seal & paint wood siding | 836.00 SF | 0.80 | 28.53 | 139.47 | 836.79 | (117.04) | 719.75 |
| 11a. Remove Aluminum window, single hung 13-19 sf | 1.00 EA | 14.31 | 0.00 | 2.86 | 17.17 | (0.00) | 17.17 |
| 11b. Aluminum window, single hung 13-19 sf | 1.00 EA | 173.75 | 11.92 | 37.13 | 222.80 | (48.89) | 173.91 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12a. Remove 1" x 4" lumber (.333 BF per LF) | 60.00 LF | 0.61 | 0.00 | 7.32 | 43.92 | (0.00) | 43.92 |

DEERFIELD_WIND                                                                7/1/2015      Page: 2

**Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

### CONTINUED - Right Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 12b. 1" x 4" lumber (.333 BF per LF) | 60.00 LF | 1.52 | 2.11 | 18.66 | 111.97 | (8.64) | 103.33 |
| 13. Seal & paint trim - two coats | 60.00 LF | 0.74 | 0.59 | 9.00 | 53.98 | (2.40) | 51.58 |
| 14a. Remove 2" x 8" lumber (1.33 BF per LF) | 22.00 LF | 0.51 | 0.00 | 2.24 | 13.46 | (0.00) | 13.46 |
| 14b. 2" x 8" lumber (1.33 BF per LF) | 22.00 LF | 2.25 | 2.06 | 10.31 | 61.87 | (8.45) | 53.42 |
| The 2x8 fascia broad was broke when tree hit building | | | | | | | |
| 15a. Remove Clothes dryer vent - installed | 1.00 EA | 3.19 | 0.00 | 0.64 | 3.83 | (0.00) | 3.83 |
| 15b. Clothes dryer vent - installed | 1.00 EA | 52.16 | 2.60 | 10.95 | 65.72 | (10.68) | 55.04 |
| 16. Prime & paint exterior fascia - wood, 6"- 8" wide | 44.00 LF | 1.13 | 0.86 | 10.12 | 60.69 | (3.52) | 57.17 |
| 17. Electrician - per hour | 3.00 HR | 85.99 | 0.00 | 51.59 | 309.56 | (0.00) | 309.56 |
| At ground right elev; elec box is damaged | | | | | | | |
| 18. Scaffold - per section (per week) | 84.00 WK | 48.00 | 0.00 | 806.40 | 4,838.40 | (0.00) | 4,838.40 |
| Six sets for 14 days | | | | | | | |
| 19. Scaffolding Setup & Take down - per hour | 8.00 HR | 27.11 | 0.00 | 43.38 | 260.26 | (0.00) | 260.26 |
| Four men for two hours to set up and tear down | | | | | | | |
| 20. Fall protection harness and lanyard - per week | 56.00 WK | 22.00 | 0.00 | 246.40 | 1,478.40 | (0.00) | 1,478.40 |
| Four men fourteen days to work on siding | | | | | | | |
| **Totals: Right Elevation** | | | 185.59 | 2,009.06 | 12,054.35 | 761.41 | 11,292.94 |
| **Total: Main Level** | | | 1,267.91 | 7,572.52 | 45,435.11 | 2,426.51 | 43,008.60 |
| **Total: SKETCH1** | | | 1,267.91 | 7,572.52 | 45,435.11 | 2,426.51 | 43,008.60 |

### SKETCH2

**Main Level**

5716

| | |
|---|---|
| 8617.87 Surface Area | 86.18 Number of Squares |
| 575.40 Total Perimeter Length | 198.00 Total Ridge Length |

DEERFIELD_WIND                                                    7/1/2015        Page: 3

**ICS** **Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 21. Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 94.18 SQ | 34.93 | 0.00 | 657.94 | 3,947.65 | (0.00) | 3,947.65 |
| 22. 3 tab - 25 yr. - composition shingle roofing - incl. felt | 103.67 SQ | 148.41 | 762.53 | 3,229.64 | 19,377.83 | (1,173.13) | 18,204.70 |
| 23. Remove Additional charge for high roof (2 stories or greater) | 94.18 SQ | 3.35 | 0.00 | 63.10 | 378.60 | (0.00) | 378.60 |
| 24. Additional charge for high roof (2 stories or greater) | 103.60 SQ | 10.01 | 0.00 | 207.41 | 1,244.45 | (0.00) | 1,244.45 |
| 25a. Remove Roof vent - turtle type - Metal | 8.00 EA | 5.70 | 0.00 | 9.12 | 54.72 | (0.00) | 54.72 |
| 25b. Roof vent - turtle type - Metal | 8.00 EA | 39.62 | 14.06 | 66.20 | 397.23 | (21.64) | 375.59 |
| 26a. Remove Flashing - pipe jack | 36.00 EA | 4.46 | 0.00 | 32.11 | 192.67 | (0.00) | 192.67 |
| 26b. Flashing - pipe jack | 36.00 EA | 21.92 | 20.11 | 161.85 | 971.08 | (30.94) | 940.14 |
| 27a. Remove Continuous ridge vent - shingle-over style | 198.00 LF | 0.54 | 0.00 | 21.38 | 128.30 | (0.00) | 128.30 |
| 27b. Continuous ridge vent - shingle-over style | 198.00 LF | 5.65 | 55.02 | 234.74 | 1,408.46 | (84.65) | 1,323.81 |
| 28a. Remove Drip edge | 575.40 LF | 0.22 | 0.00 | 25.32 | 151.91 | (0.00) | 151.91 |
| 28b. Drip edge | 575.40 LF | 1.39 | 31.42 | 166.25 | 997.47 | (48.33) | 949.14 |
| **Totals: 5716** | | | 883.15 | 4,875.06 | 29,250.38 | 1,358.69 | 27,891.69 |
| **Total: Main Level** | | | 883.15 | 4,875.06 | 29,250.38 | 1,358.69 | 27,891.69 |
| **Total: SKETCH2** | | | 883.15 | 4,875.06 | 29,250.38 | 1,358.69 | 27,891.69 |

**SKETCH3**

**Main Level**

**2145**

8617.87 Surface Area              86.18 Number of Squares
575.40 Total Perimeter Length     198.00 Total Ridge Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 29. Remove Laminated - comp. shingle rfg. - w/ felt | 104.50 SQ | 36.10 | 0.00 | 754.49 | 4,526.94 | (0.00) | 4,526.94 |
| 30. Laminated - comp. shingle rfg. - w/ felt | 115.00 SQ | 165.45 | 989.73 | 4,003.30 | 24,019.77 | (10.15) | 24,009.62 |
| 31. Remove Additional charge for high roof (2 stories or greater) | 104.50 SQ | 3.35 | 0.00 | 70.02 | 420.10 | (0.00) | 420.10 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| roof (2 stories or greater) | | | | | | | |
| 32. Additional charge for high roof (2 stories or greater) | 114.95 SQ | 10.01 | 0.00 | 230.13 | 1,380.78 | (0.00) | 1,380.78 |

DEERFIELD_WIND     7/1/2015     Page: 4

ℹ︎∪⅙   **Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

### CONTINUED - 2145

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 33a. Remove Roof vent - turtle type - Metal | 8.00 EA | 5.70 | 0.00 | 9.12 | 54.72 | (0.00) | 54.72 |
| 33b. Roof vent - turtle type - Metal | 8.00 EA | 39.62 | 14.06 | 66.20 | 397.23 | (28.85) | 368.38 |
| 34a. Remove Flashing - pipe jack | 36.00 EA | 4.46 | 0.00 | 32.11 | 192.67 | (0.00) | 192.67 |
| 34b. Flashing - pipe jack | 36.00 EA | 21.92 | 20.11 | 161.85 | 971.08 | (41.26) | 929.82 |
| 35a. Remove Continuous ridge vent - shingle-over style | 196.00 LF | 0.54 | 0.00 | 21.17 | 127.01 | (0.00) | 127.01 |
| 35b. Continuous ridge vent - shingle-over style | 196.00 LF | 5.65 | 54.46 | 232.37 | 1,394.24 | (111.72) | 1,282.52 |
| 36a. Remove Drip edge | 575.40 LF | 0.22 | 0.00 | 25.32 | 151.91 | (0.00) | 151.91 |
| 36b. Drip edge | 575.40 LF | 1.39 | 31.42 | 166.25 | 997.47 | (48.33) | 949.14 |
| **Totals: 2145** | | | 1,109.78 | 5,772.32 | 34,633.91 | 240.31 | 34,393.60 |

### Rear Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 37a. Remove Aluminum window, single hung 13-19 sf | 1.00 EA | 14.31 | 0.00 | 2.86 | 17.17 | (0.00) | 17.17 |
| 37b. Aluminum window, single hung 13-19 sf | 1.00 EA | 173.75 | 11.92 | 37.13 | 222.80 | (55.00) | 167.80 |
| 38a. Remove 1" x 4" lumber (.333 BF per LF) | 15.00 LF | 0.61 | 0.00 | 1.83 | 10.98 | (0.00) | 10.98 |
| 38b. 1" x 4" lumber (.333 BF per LF) | 15.00 LF | 1.52 | 0.53 | 4.67 | 27.99 | (2.16) | 25.83 |
| 39. Seal & paint trim - two coats | 15.00 LF | 0.74 | 0.15 | 2.25 | 13.50 | (0.60) | 12.90 |
| **Totals: Rear Elevation** | | | 12.59 | 48.74 | 292.44 | 57.76 | 234.68 |
| **Total: Main Level** | | | 1,122.37 | 5,821.06 | 34,926.35 | 298.07 | 34,628.29 |
| **Total: SKETCH3** | | | 1,122.37 | 5,821.06 | 34,926.35 | 298.07 | 34,628.29 |

### SKETCH4

**Main Level**

DEERFIELD_WIND                                                    7/1/2015          Page: 5

 **Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

### Maintenance

|  | 8617.87  Surface Area | | | 86.18  Number of Squares | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | 575.40  Total Perimeter Length | | | 198.00  Total Ridge Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 40  Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 94.18 SQ | 34.93 | 0.00 | 657.94 | 3,947.65 | (0.00) | 3,947.65 |
| 41.  3 tab - 25 yr. - composition shingle roofing - incl. felt | 103.67 SQ | 148.41 | 762.53 | 3,229.64 | 19,377.83 | (1,173.13) | 18,204.70 |
| 42.  Remove Additional charge for high roof (2 stories or greater) | 94.18 SQ | 3.35 | 0.00 | 63.10 | 378.60 | (0.00) | 378.60 |
| 43  Additional charge for high roof (2 stories or greater) | 103.60 SQ | 10.01 | 0.00 | 207.41 | 1,244.45 | (0.00) | 1,244.45 |
| 44a.  Remove Roof vent - turtle type - Metal | 8.00 EA | 5.70 | 0.00 | 9.12 | 54.72 | (0.00) | 54.72 |
| 44b.  Roof vent - turtle type - Metal | 8.00 EA | 39.62 | 14.06 | 66.20 | 397.23 | (21.64) | 375.59 |
| 45a  Remove Flashing - pipe jack | 36.00 EA | 4.46 | 0.00 | 32.11 | 192.67 | (0.00) | 192.67 |
| 45b  Flashing - pipe jack | 36.00 EA | 21.92 | 20.11 | 161.85 | 971.08 | (30.94) | 940.14 |
| 46a.  Remove Continuous ridge vent - shingle-over style | 196.00 LF | 0.54 | 0.00 | 21.17 | 127.01 | (0.00) | 127.01 |
| 46b.  Continuous ridge vent - shingle-over style | 196.00 LF | 5.65 | 54.46 | 232.37 | 1,394.24 | (83.79) | 1,310.45 |
| 47a  Remove Drip edge | 575.40 LF | 0.22 | 0.00 | 25.32 | 151.91 | (0.00) | 151.91 |
| 47b  Drip edge | 575.40 LF | 1.39 | 31.42 | 166.25 | 997.47 | (48.33) | 949.14 |
| **Totals:  Maintenance** |  |  | **882.59** | **4,872.48** | **29,234.86** | **1,357.83** | **27,877.03** |
| **Total:  Main Level** |  |  | **882.59** | **4,872.48** | **29,234.86** | **1,357.83** | **27,877.03** |
| **Total:  SKETCH4** |  |  | **882.59** | **4,872.48** | **29,234.86** | **1,357.83** | **27,877.03** |

### SKETCH5

#### Main Level

 **Office**

|  | 3046.35  Surface Area | | | 30.46  Number of Squares | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | 230.55  Total Perimeter Length | | | 67.75  Total Ridge Length | | |

103.18 Total Hip Length



DEERFIELD_WIND                                                          7/1/2015        Page: 6

**Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 48. Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 30.46 SQ | 34.93 | 0.00 | 212.79 | 1,276.76 | (0.00) | 1,276.76 |
| 49. 3 tab - 25 yr. - composition shingle roofing - incl. felt | 35.33 SQ | 148.41 | 259.87 | 1,100.64 | 6,603.84 | (399.79) | 6,204.05 |
| 50. Additional charge for steep roof greater than 12/12 slope | 35.03 SQ | 45.04 | 0.00 | 315.55 | 1,893.30 | (0.00) | 1,893.30 |
| 51a. Remove Continuous ridge vent - shingle-over style | 90.00 LF | 0.54 | 0.00 | 9.72 | 58.32 | (0.00) | 58.32 |
| 51b. Continuous ridge vent - shingle-over style | 90.00 LF | 5.65 | 25.01 | 106.70 | 640.21 | (38.48) | 601.73 |
| 52a. Remove Furnace vent - rain cap and storm collar, 8" | 1.00 EA | 6.79 | 0.00 | 1.36 | 8.15 | (0.00) | 8.15 |
| 52b. Furnace vent - rain cap and storm collar, 8" | 1.00 EA | 65.04 | 3.26 | 13.66 | 81.96 | (5.02) | 76.94 |
| 53a. Remove Flashing - pipe jack | 5.00 EA | 4.46 | 0.00 | 4.46 | 26.76 | (0.00) | 26.76 |
| 53b. Flashing - pipe jack | 5.00 EA | 21.92 | 2.79 | 22.48 | 134.87 | (4.30) | 130.57 |
| 54a. Remove Drip edge | 230.55 LF | 0.22 | 0.00 | 10.14 | 60.86 | (0.00) | 60.86 |
| 54b. Drip edge | 230.55 LF | 1.39 | 12.59 | 66.61 | 399.66 | (19.37) | 380.29 |
| **Totals: Office** | | | **303.52** | **1,864.12** | **11,184.70** | **466.96** | **10,717.74** |

### Right Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 55a. Remove Gutter / downspout - aluminum - 6" | 24.00 LF | 0.32 | 0.00 | 1.54 | 9.22 | (0.00) | 9.22 |
| 55b. Gutter / downspout - aluminum - 6" | 24.00 LF | 6.99 | 11.16 | 35.78 | 214.71 | (28.62) | 186.09 |
| Tree limb damaged roof and gutter | | | | | | | |
| **Totals: Right Elevation** | | | **11.16** | **37.32** | **223.92** | **28.62** | **195.31** |
| **Total: Main Level** | | | **314.68** | **1,901.44** | **11,408.62** | **495.58** | **10,913.04** |
| **Total: SKETCH5** | | | **314.68** | **1,901.44** | **11,408.62** | **495.58** | **10,913.04** |

### General Conditions

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 56. Dumpster load - Approx. 20 yards, 4 | 2.00 EA | 481.00 | 0.00 | 192.40 | 1,154.40 | (0.00) | 1,154.40 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| tons of debris | | | | | | | |
| 57. Safety Coordinator | 120.00 EA | 54.68 | 0.00 | 1,312.32 | 7,873.92 | (0.00) | 7,873.92 |
| Due to this being an active apartment complex with people coming and going and vehicles moving around, a safety coordinator is required. | | | | | | | |
| 58. Telehandler/forklift and operator | 120.00 HR | 72.93 | 0.00 | 1,750.32 | 10,501.92 | (0.00) | 10,501.92 |

DEERFIELD_WIND                                                     7/1/2015          Page: 7

 **Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station, TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

**CONTINUED - General Conditions**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 2 Telehandlers for the project. One for demolition and one for loading the materials and equipment. | | | | | | | |
| **Totals: General Conditions** | | | 0.00 | 3,255.04 | 19,530.24 | 0.00 | 19,530.24 |
| **Line Item Totals: DEERFIELD_WIND** | | | 4,470.70 | 28,297.59 | 169,785.55 | 5,936.68 | 163,848.87 |

## Grand Total Areas:

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls and Ceiling |
| 0.00 SF Floor | 0.00 SY Flooring | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 0.00 LF Ceil. Perimeter |
| 0.00 Floor Area | 0.00 Total Area | 0.00 Interior Wall Area |
| 4,853.49 Exterior Wall Area | 0.00 Exterior Perimeter of Walls | |
| 37,517.84 Surface Area | 375.18 Number of Squares | 5,064.32 Total Perimeter Length |
| 859.75 Total Ridge Length | 103.18 Total Hip Length | |

DEERFIELD_WIND                                                          7/1/2015          Page: 8

**Insurance Claims Specialists LLC**

3515 - B Longmire Dr.
Ste. 294
College Station. TX 77845
(O)1-866-582-4591
(F) 1-904-339-9966

### Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 137,017.26 |
| Material Sales Tax | 4,470.70 |
| Subtotal | 141,487.96 |
| Overhead | 14,148.80 |
| Profit | 14,148.80 |
| **Replacement Cost Value** | **$169,785.56** |
| Less Depreciation | (5,936.68) |
| **Actual Cash Value** | **$163,848.88** |
| **Net Claim** | **$163,848.88** |
| Total Recoverable Depreciation | 5,936.68 |
| **Net Claim if Depreciation is Recovered** | **$169,785.56** |

Rickey Eubank

DFERFIELD_WIND                                                              7/1/2015        Page: 9