IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| 6111 RIDGEWAY GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 15-2561-STA-cgc |
| | ) | |
| PHILADELPHIA INDEMNITY | ) | |
| INSURANCE COMPANY and | ) | |
| CUNNINGHAM LINDSEY U.S., INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

ORDER GRANTING DEFENDANT PHILADELPHIA INDEMNITY INSURANCE
COMPANY'S PARTIAL MOTION TO DISMISS

---

Before the Court is Defendant Philadelphia Indemnity Insurance Company's Partial Motion to Dismiss (ECF No. 22) filed on December 28, 2015. Plaintiff 6111 Ridgeway Group, LLC has responded in opposition, and Defendant has filed a reply brief. For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

For purposes of Defendant's Rule 12(b)(6) Motion, the Court accepts the following well pleaded factual allegations of Plaintiff's Verified Complaint as true. An October 2014 hail and wind storm caused significant damage to ten buildings at the Deerfield Apartments in Memphis, Tennessee, an apartment complex owned by Plaintiff 6111 Ridgeway Group, LLC. (Compl. ¶ 9.) Plaintiff filed a claim for the property damage with its property insurer Defendant Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity"). (*Id.* ¶ 11.) Philadelphia Indemnity hired Defendant Cunningham Lindsey U.S., Inc. ("Cunningham Lindsey") to inspect the damage at the Deerfield Apartments. (*Id.* ¶ 12.) Cunningham Lindsey inspected only two of

1

the damaged buildings, and Philadelphia Indemnity offered to pay the itemized replacement cost value of $34,265.74 for the two buildings. (*Id.* ¶ 16.) Plaintiff concluded that the storm had damaged ten–not two–of the buildings and therefore retained a second appraiser, Rickey Eubank, to inspect the damage. (*Id.* ¶ 17.) Eubank agreed with Plaintiff that all ten of the buildings suffered similar damage and should be covered under the policy. (*Id.* ¶¶ 18, 20.)

Plaintiff provided Philadelphia Indemnity with a detailed report and repair itemization for the damage with a total request for reimbursement under the policy of $169,785.56. (*Id.* ¶ 19.) Plaintiff also submitted Mr. Eubank's itemized report of the damage to the ten buildings. (*Id.*) The Verified Complaint alleges that both appraisers, Cunningham Lindsey and Mr. Eubank, were consistent as to the per-building replacement valuations; the appraisers differed only on the number of buildings sustaining damage, two according to Cunningham Lindsey but ten according Mr. Eubanks. (*Id.* ¶ 20.) Without acknowledging the demand for $169,785.56 or communicating with Plaintiff in any way, Philadelphia Indemnity engaged a third appraiser to inspect the damage at the Deerfield Apartments. (*Id.* ¶ 23). Robert Aynett of Rimkus Consulting estimated a replacement cost of $21,627.69, a reduction of more than one-third from the replacement cost stated in Philadelphia Indemnity's first appraisal and offer. (*Id.*)

After more than thirty days passed without a response to Plaintiff's demand from Philadelphia Indemnity, Plaintiff formally demanded an appraisal of the loss pursuant to the insurance contract and designated Toby Johnson of Cornerstone Public Adjuster Consulting as its impartial designated appraiser. (*Id.* ¶ 21.) Despite the dispute over the underlying appraisal by Cunningham Lindsey, Philadelphia Indemnity again designated Cunningham Lindsey as its chosen "impartial" appraiser. (*Id.* ¶ 24.) Plaintiff objected to the re-appointment of Cunningham Lindsey, though Philadelphia Indemnity has yet to respond to that objection. (*Id.* ¶ 27.) Under

the circumstances Plaintiff has not received any insurance payment for the damage to its buildings from the October 2014 hail storm. (*Id.* ¶ 43). Plaintiff alleges that Philapdelphia Indemnity failed to act in good faith and hired Cunningham Lindsey in an effort to undermine and reduce any payment on Plaintiff's valid claims. (*Id.* ¶¶ 34-50.)

Based on these allegations, Plaintiff filed suit in the Chancery Court for the Thirtieth Judicial District in Shelby County, Tennessee on July 30, 2015. The Verified Complaint alleged eight separate causes of action against Philadelphia Indemnity for breach of contract, bad faith, breach of fiduciary duty, fraud, constructive fraud, negligent misrepresentation, conspiracy to commit fraud, violations of the Tennessee Consumer Protection Act ("TCPA"), and breach of the common law duty of good faith and fair dealing.[1] In its Partial Motion to Dismiss, Philadelphia Indemnity only requests the dismissal of the Verified Complaint's TCPA and bad faith claims. First, Defendant argues that TCPA claims are no longer available against an insurer and that for claims accruing after April 29, 2011, Tenn. Code Ann. § 56-8-103 provides the exclusive remedy for allegations of unfair or deceptive acts or practices in connection with a contract for insurance. The alleged loss at issue in this case occurred as a result of storm damage in October 2014. The Court should hold then that the Verified Complaint fails to state a claim for violations of the TCPA.

Second, Defendant argues that Plaintiff has failed to state any claim for bad faith. The Verified Complaint alleges a claim for bad faith and cites for support Tenn. Code Ann. § 56-8-105, a provision of the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of

---

[1] As for Cunningham Lindsey, the Verified Complaint alleged claims for breach of fiduciary duty, fraud, conspiracy to commit fraud, and breach of the common law duty of good faith and fair dealing. On September 1, 2015, Cunningham Lindsey filed a motion to dismiss the claim for breach of the common law duty of good faith and fair dealing, which Plaintiff did not oppose. On October 21, 2015, the Court entered an order granting the unopposed motion to dismiss the good faith and fair dealing claim.

2009.  However, Tenn. Code Ann. § 56-8-101(c) vests the exclusive authority to bring a claim under this section of the Act with the Commissioner of Commerce and Insurance.  Defendant argues then that the code section on which Plaintiff relies for its bad faith claim does not provide a private right of action.  Moreover, the Verified Complaint does not allege any other basis for the bad faith claim.  The pleadings do not reference Tenn. Code Ann. § 56-7-105 or allege a statutory bad faith claim based on that code section.  It is well-settled under Tennessee law that no common law cause of action for bad faith between an insured and its insurer exists outside of § 56-7-105.  Even if the Verified Complaint had pleaded the correct source of a bad faith claim, Plaintiff has failed to allege the elements of the claim in its pleadings.  The Verified Complaint fails to allege that Plaintiff made a formal demand for payment, that Plaintiff waited 60 days after its formal demand to file suit, or that the policy was due and payable.  Therefore, the Court should hold that the Verified Complaint fails to state a TCPA claim or claim for bad faith.

Plaintiff has responded in opposition to the Partial Motion to Dismiss.  At the outset, Plaintiff concedes Defendant's argument concerning the Verified Complaint's claims for violations of the TCPA.  Plaintiff agrees that the Unfair Trade Practices and Unfair Claims Settlement Act of 2009 precludes any TCPA claim based on an insurance contract.  Plaintiff does not, however, concede its bad faith claims.  Plaintiff argues that the Verified Complaint has pleaded the elements of a statutory claim for bad faith under Tenn. Code Ann. § 56-7-105. Plaintiff contends that its multiple demands for payment satisfies the formal demand element of the claim.  The fact that the separate appraisals obtained by Plaintiff and Philadelphia Indemnity differed so dramatically further suggests the possibility of bad faith.  The Verified Complaint also alleges that the insurance became due and payable.  Under the terms of the policy, the loss becomes due and payable, among other ways, when an appraisal award has been made.

According to Plaintiff, Cunningham Lindsey's appraisal and Philadelphia Indemnity's assessment of the loss at a value of $34,265.74 constituted "an appraisal award," as that term is used in the insurance contract. And the loss became due and payable upon Philadelphia Indemnity's "appraisal award." Plaintiff maintains then that the Verified Complaint has alleged all of the elements of the statutory bad faith claim.

Finally, Plaintiff disputes Defendant's argument that a common law bad faith claim is not available under Tennessee law in the context of an insurance contract. Plaintiff argues that punitive damages may be appropriate in breach of contract cases where the party acts intentionally, fraudulently, maliciously, or recklessly. This common law rule survived the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009. The Verified Complaint essentially alleges that Defendant has acted egregiously and in bad faith by failing to inspect eight of the ten apartment building sustaining damage, by nominating Cunningham Lindsey as a neutral appraiser for the re-inspection of the property and otherwise failing to agree to an independent appraisal, and by failing to pay at least the minimum, undisputed amount of Plaintiff's loss. Therefore, the Court should deny Defendant's request for dismissal of the bad faith claims.

Defendant has filed a reply brief. Defendant first argues that in light of Plaintiff's concession of the issue, the Court should dismiss the Verified Complaint's TCPA claim. Defendant next argues that the availability of punitive damages as a remedy for willful conduct in a breach of contract case has no bearing on the settled fact that Tennessee does not recognize a common law bad faith claim against an insurer. The great weight of the authority holds that Tenn. Code Ann. § 56-7-105 is the exclusive remedy for an insured alleging bad faith. As for the statutory claim for bad faith, the Verified Complaint fails to allege all of the elements of the

cause of action. Plaintiff has not alleged that it made a formal demand for payment. The pleadings show that Plaintiff merely forwarded Defendant a copy of the estimate prepared by Mr. Eubank. Nothing about the estimate, which is attached as an exhibit to the Verified Complaint, purported to notify Defendant that Plaintiff would pursue a bad faith claim in the event Defendant failed to pay the loss. Defendant points out that an estimate is clearly distinguishable from an appraisal, as the term is used in the policy. The Verified Complaint also shows that both parties were in communication and a process to resolve the claim was underway, undermining any allegation that Defendant was acting in bad faith.

And Defendant reiterates its argument that the loss had not become due and payable. Plaintiff's argument to the contrary not withstanding, Defendant's act of forwarding Cunningham Lindsey's estimate of the loss to Plaintiff did not constitute an "appraisal award." Defendant argues that an "appraisal award" under the policy is an umpire's final determination of the loss after both sides had nominated their own appraisers and, failing to reach an agreement, submitted the dispute to an umpire. Rather than pursue this process to a conclusion, Plaintiff elected to file suit. As such, no "appraisal award" was ever made, and so the loss had not become due and payable. Therefore, the Court should hold that the Verified Complaint fails to state a statutory bad faith claim.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.[2]

---

[2] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

However, legal conclusions or unwarranted factual inferences need not be accepted as true.[3] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[4] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[6] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

## ANALYSIS

**I. Tennessee Consumer Protection Act**

Defendant first seeks the dismissal of Plaintiff's claim for violations of the TCPA, arguing that the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009

---

[3] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[4] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[5] Fed. R. Civ. P. 8(a)(2).

[6] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[7] *Twombly*, 550 U.S. at 555, 570.

[8] *Iqbal*, 556 U.S. at 678.

abrogated any such claim by an insured against its insurer. In its response to this argument, Plaintiff has affirmatively conceded the issue and acknowledged that no such claim lies. The Court holds that the Verified Complaint fails to state a TCPA claim. Therefore, Defendant's Partial Motion to Dismiss is **GRANTED** as to this claim.

**II. Bad Faith**

Defendant next seeks the dismissal of Plaintiff's claim for bad faith, both a statutory claim for bad faith as well as a common law tort claim. The Court can easily dispose of any bad faith claim derived from Tenn. Code Ann. § 56-8-105 or Tennessee common law. The Verified Complaint refers to Tenn. Code Ann. § 56-8-105 and the Tennessee Unfair Settlement Practices Act as authority for the claims alleged in the pleading.[9] As Defendant correctly argues in its opening brief, however, the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009, Tenn. Code Ann. § 56-8-101 et seq., vests exclusive enforcement authority for the Act with the Tennessee Commissioner of Commerce and Insurance.[10] Furthermore, Tenn. Code Ann. § 56-7-105, not § 56-8-105, "provides the exclusive remedy for extra-contractual damages resulting from an insurer's bad faith processing of a claim."[11] To the extent that the Verified Complaint can be read to allege a claim pursuant to Tenn. Code Ann. § 56-8-105, the Verified Complaint has failed to state a claim.

---

[9] Verified Compl. ¶ 51 ("This suit is being brought, in part, under the Tennessee Unfair Settlement Practices Act . . . .").

[10] Tenn. Code Ann. § 56-8-101(c) ("Notwithstanding any other state law to the contrary, the commissioner shall have sole enforcement authority for this part, and nothing in this part shall be construed to create or imply a private cause of action for a violation of this part.").

[11] *Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 260 (6th Cir. 1994).

Likewise, Tennessee common law does not provide a claim for tortious bad faith against an insurer. The Tennessee Court of Appeals has held that no "tort of bad faith independent of the contract between the parties" exists in cases between an insured and its insurer.[12] Plaintiff points out that *Chandler* and its progeny were decided by the Tennessee Court of Appeals. Plaintiff does not actually argue that *Chandler* was decided incorrectly, and the Court finds *Chandler* to be persuasive authority on how Tennessee courts would view the common law tort of bad faith. The Court's task in this case is to apply the substantive law of Tennessee as if the action had been brought in the courts of that state.[13] Under the *Erie* doctrine, this means the Court must apply the substantive law of Tennessee as it has been determined by the highest court of the state.[14] And because the Tennessee Supreme Court has not answered the question, the Court must discern or predict how Tennessee courts would respond if confronted with the same question.[15] In this regard, the decisions of the Tennessee Court of Appeals "are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently."[16] Tennessee courts have followed *Chandler* for thirty years, and the Sixth Circuit has recognized *Chandler*'s holding on the common tort of bad faith as the law in Tennessee.[17] Under the

---

[12] *Chandler v. Prudential Ins. Co.,* 715 S.W.2d 615 (Tenn. Ct. App. 1986).

[13] *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[14] *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003).

[15] *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1365 (6th Cir. 1984); *Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir. 1981).

[16] *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 289 (6th Cir. 2015).

[17] *Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 259 (6th Cir. 1994) (following *Chandler*).

circumstances, the Court finds that *Chandler* controls. To extent that the Verified Complaint alleges a common law tort claim for bad faith, the Verified Complaint fails to state such a claim.

In an attempt to distinguish *Chandler*, Plaintiff argues that the Verified Complaint makes a number of allegations about Defendant's intentional conduct and that the same intentional conduct supporting Plaintiff's breach of contract claim for punitive damages also supports a tort claim for bad faith. Plaintiff cites for support this Court's recent decision in *Carroll v. Nationwide Property & Casualty Co.* where a defendant insurance company sought the dismissal of an insured's breach of contract claim for punitive damages and the undersigned held that a breach of contract claim for punitive damages against an insurer remains available under Tennessee law.[18] But *Carroll* has little relevance to the issue presented here, whether a tort claim for bad faith exists under Tennessee common law. *Carroll* never addressed that question and only concluded that an insured may still pursue punitive damages against his insurer for breach of contract as a matter of Tennessee contract law. Here by contrast, Plaintiff has alleged a claim for bad faith under the common law of Tennessee torts. Regardless of the fact that a breach of contract claim for punitive damages and a tort claim for bad faith may involve similar standards of proof, the two claims are distinct. The first is good at law in Tennessee, the second is not. In fact, the Verified Complaint in the case at bar pleads separate counts for breach of contract, including a prayer for punitive damages, and the tort of bad faith. Defendant's Partial Motion to Dismiss does not even address the breach of contract claim or the prayer for punitive damages, and the Court has no reason to consider the contract claim here. As a result, *Carroll* does not alter the outcome in this instance.

---

[18] No. 2:14-CV-02902-STA, 2015 WL 3607654, at *5 (W.D. Tenn. June 8, 2015).

This leaves the Verified Complaint's statutory claim for bad faith under Tenn. Code Ann. § 56-7-105. The Court notes as a threshold matter that the Verified Complaint never actually invokes the correct statute and instead refers to Tenn. Code Ann. § 56-8-105.[19] For the reasons already discussed herein, there is no private right of action under Tenn. Code Ann. § 56-8-105. Defendant notes this critical omission in its opening brief, and Plaintiff has not responded to the argument in its response in opposition. Even so, construing the Verified Complaint in a light most favorable to Plaintiff and assuming that Plaintiff has alleged a statutory claim for bad faith under the correct code section, the issue presented is whether the Verified Complaint pleads all of the elements of the claim under Tenn. Code Ann. § 56-7-105.

The Court holds that the Verified Complaint does not state a statutory bad faith claim. Pursuant to Tenn. Code Ann. § 56-7-105, the cause of action requires Plaintiff to establish each of the following elements: (1) that the insurance policy, by its terms, became due and payable; (2) that a formal demand for payment was made; (3) that the insured waited sixty days after making demand before filing suit; and (4) that the insurer's refusal to pay was not in good faith.[20] Defendant argues that the Verified Complaint fails to allege three of the four elements: that the policy had become due and payable, that Plaintiff had made a formal demand, and that Plaintiff waited 60 days to file suit. The Court need not reach all of Defendant's arguments in order to decide the Partial Motion to Dismiss. The Court concludes that Plaintiff has not alleged facts plausibly showing that a loss had become due and payable under the terms of the policy.

---

[19] Verified Compl. ¶¶ 51, 62(d).

[20] *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 378 (6th Cir. 2007) (citing *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)).

The policy states in the Property Coverage Form's "Loss Conditions" section under a subsection titled "Loss Payment" that a loss becomes payable within 30 days after Philadelphia Indemnity receives a sworn proof of loss from the insured. But Defendant's obligation to pay arises only after two conditions are met: (1) the insured has complied with all of the terms of the agreement, and (2) the parties reach an agreement on the amount of the "loss;" an appraisal award has been made; or final judgment has been entered.[21] Obviously, Plaintiff does not allege the existence of an agreement between the parties concerning the amount of the loss or the entry of a final judgment. The Verified Complaint alleges that the parties disagree over the amount of the loss, and there is no allegation about the entry of a judgment establishing the amount of the loss or Defendant's duty to pay. As such, the Verified Complaint does not allege how the loss became due and payable under either of these conditions.

This leaves only an appraisal award. The same "Loss Conditions" section of the policy contains the following provision for "Appraisal":

> If we and you disagree on the value of the property or the amount of "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.[22]

While the policy does not specifically refer to the "decision agreed to by any two" of the appraisers and umpire as an "appraisal award," the Tennessee Court of Appeals has construed

---

[21] Property Coverage Form, ex. A to Verified Compl., ECF No. 1-2, Page ID 147.

[22] *Id.* at 145.

12

nearly identical contractual language and referred to such a decision as an "appraisal award."[23] In this case, the Verified Complaint contains no allegations to show that the parties had exhausted this process and that an appraisal award had been made. On the contrary, Plaintiff alleges that each side nominated an appraiser but without ever moving on to select an umpire. Without proceeding with the selection of an umpire, the parties did not complete the appraisal process required in the policy, and no "appraisal award" could have been made. The Verified Complaint fails to allege then that an "appraisal award" was made and thus fails to allege that the loss had become due and payable. Therefore, the Verified Complaint fails to state all of the required elements of a statutory bad faith claim under Tenn. Code Ann. § 56-7-105.

In its response brief, Plaintiff argues that Defendant's assessment of the loss following Cunningham Lindsey's initial appraisal constitutes an "appraisal award," as the policy uses the term. Plaintiff cites no authority to support this construction of the policy. And even viewing the Verified Complaint's allegations in a light most favorable to Plaintiff, Cunningham Lindsey's initial appraisal was only was the first step in arriving at a possible "appraisal award," not the "appraisal award" itself described in the "Loss Conditions" section and "Appraisal" subsection of the policy. The Verified Complaint alleges that both parties nominated an appraiser and that Plaintiff objected to Defendant's selection of Cunningham Lindsey as its appraiser for this step of the appraisal process. The Verified Complaint makes no allegation about the selection of an umpire, the parties' participation in an appraisal reconciliation process, or any other facts to establish the making of an "appraisal award." In short, there are no facts to

---

[23] *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 206 (Tenn. Ct. App. 2013) (reciting identical contractual language and describing the decision of the appraiser and umpire "as a binding appraisal award"); *see also Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 686-87 (6th Cir. 2012) (reciting identical contractual language and applying Michigan law).

show that the loss had become due and payable under the terms of the policy. Therefore, Defendant is entitled to the dismissal of Plaintiff's statutory bad faith claim under Tenn. Code Ann. § 56-7-105.

## CONCLUSION

The Verified Complaint fails to state a claim for violations of the Tennessee Consumer Protection Act and any claim for bad faith, either under the Tennessee common law of torts or as a statutory violation of Tenn. Code Ann. § 56-7-105. Therefore, Defendant's Partial Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 15, 2016.